**LOWENSTEIN SANDLER LLP**
Reynold Lambert, Esq.
Wojciech F. Jung, Esq.
Gavin J. Rooney, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel for Plaintiffs*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| TRI HARBOR HOLDINGS CORPORATION (*f/k/a* ACETO CORPORATION), *et al.*,[1] | Case No. 19-13448 (VFP) |
| Debtors. | (Jointly Administered) |
| KAVOD PHARMACEUTICALS LLC (*f/k/a* RISING PHARMACEUTICALS, LLC, *f/k/a* RISING PHARMACEUTICALS, INC.) and TRI HARBOR HOLDINGS CORPORATION (*f/k/a* ACETO CORPORATION), | Adv. Pro. No.: 19-02053-VFP |
| Plaintiffs, | Re: Docket No. 133 |
| v. | |
| SIGMAPHARM LABORATORIES, LLC, | |
| Defendant. | |

**PLAINTIFFS' OBJECTION TO DEFENDANT'S "*MOTION FOR SANCTIONS AND FOR SPOLIATION OF EVIDENCE AND FOR AN EVIDENTIARY HEARING*"**

---

[1] The Liquidating Debtors in the chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Tri Harbor Holdings Corporation (f/k/a/ Aceto Corporation) (0520); Tri Harbor Chemical Holdings LLC (f/k/a Aceto Agricultural Chemicals LLC f/k/a Aceto Agricultural Chemicals Corporation) (3948); Tri Harbor Realty LLC (f/k/a Aceto Realty LLC) (7634); Kavod Pharmaceuticals LLC (f/k/a Rising Pharmaceuticals, LLC, f/k/a Rising Pharmaceuticals, Inc.) (7959); Kavod Health LLC (f/k/a Rising Health, LLC) (1562); Kavris Health LLC (f/k/a Acetris Health, LLC) (3236); KAVACK Pharmaceuticals LLC (f/k/a PACK Pharmaceuticals, LLC) (2525); Arsynco, Inc. (7392); and Acci Realty Corp. (4433).

## TABLE OF CONTENTS

**PAGES**

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL BACKGROUND ...........................................................................................3

    A.    Sigmapharm's False and Misleading Assertions About Events That Supposedly Happened Before Sigmapharm Unlawfully Terminated and Breached the Agreement. ........................................................................3

    B.    Sigmapharm's False and Misleading Assertions About Plaintiffs' Willingness to Commence an Audit After Sigmapharm Unlawfully Terminated The Agreement. ..........................................................................4

    C.    Sigmapharm's False and Misleading Assertions About Discovery, Which Closed Nearly Two Years Ago. ....................................................8

    D.    Sigmapharm's False and Misleading Assertions about the Shore Suven Sale. ...................................................................................................12

    E.    Sigmapharm's False and Misleading Assertions About Plaintiffs' Productions in Response to Sampling Requests. ......................................14

ARGUMENT .................................................................................................................19

I.    THE COURT NEED NOT CONSIDER THE MOTION BECAUSE SIGMAPHARM UNREASONABLY WAITED UNTIL THE EVE OF TRIAL TO FILE IT. ...............................................................................19

II.    EVEN IF THE COURT WAS INCLINED TO CONSIDER THE MOTION, THE COURT SHOULD REJECT IT AS MERITLESS. ...............................21

CONCLUSION..............................................................................................................27

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Am. Nat. Prop. & Cas. Co. v. Campbell Ins., Inc.*,
No. 3:08-CV-00604, 2011 WL 3021399 (M.D. Tenn. July 22, 2011) ...................................20

*Bensel v. Allied Pilots Ass'n*,
263 F.R.D. 150 (D.N.J. 2009)...............................................................................................22

*Brown v. Certain Underwriters at Lloyds, London*,
No. 16-CV-02737, 2017 WL 2536419 (E.D. Pa. June 12, 2017)...........................................26

*Bull v. United Parcel Serv., Inc.*,
665 F.3d 68 (3d Cir. 2012).......................................................................................21, 24, 25

*Capogrosso v. 30 River Ct. E. Urb. Renewal Co.*,
482 F. App'x 677 (3d Cir. 2012) ...........................................................................................26

*Clientron Corp. v. Devon IT, Inc.*,
310 F.R.D. 262 (E.D. Pa. 2015).............................................................................................26

*Collins v. Easynews, Inc.*,
No. A-06-CA-451, 2008 WL 11405990 (W.D. Tex. Feb. 6, 2008) ........................................23

*Cottle-Banks v. Cox Commc'ns, Inc.*,
No. 10CV2133-GPC WVG, 2013 WL 2244333 (S.D. Cal. May 21, 2013)...........................19

*Durst v. FedEx Express*,
No. CIV.A. 03-5186 (JBS), 2006 WL 1541027 (D.N.J. June 2, 2006)...................................23

*Eur. v. Equinox Holdings, Inc.*,
No. 20CV7787JGKKHP, 2022 WL 832027 (S.D.N.Y. Mar. 21, 2022) ................................25

*Flanders v. Dzugan*,
No. CIV.A. 12-1481, 2015 WL 5022734 (W.D. Pa. Aug. 24, 2015) ...............................22, 23

*Glenn v. Scott Paper Co.*,
No. CIV. A. 92-1873, 1993 WL 431161 (D.N.J. Oct. 20, 1993)............................................19

*GN Netcom, Inc. v. Plantronics, Inc.*,
930 F.3d 76 (3d Cir. 2019).....................................................................................................25

*Jay v. Spectrum Brands Holdings, Inc.*,
No. 13 CIV. 8137 LTS DF, 2015 WL 6437581 (S.D.N.Y. Oct. 20, 2015).............................26

*Kavanagh v. Refac Optical Grp.*,
No. CV 15-4886 (JHR/JS), 2017 WL 6395848 (D.N.J. Dec. 14, 2017) ................................22

*Kuhar v. Petzl Co.*,
No. CV 16-0395 (JBS/JS), 2018 WL 6363747, at *5 (D.N.J. Nov. 16, 2018),
*report and recommendation adopted*, No. CV 16-395 (JBS-JS), 2018 WL
6331675 (D.N.J. Dec. 4, 2018) ............................................................................................24

*Larios v. Lunardi*,
442 F. Supp. 3d 1299 (E.D. Cal. 2020), *aff'd*, 856 F. App'x 704 (9th Cir.
2021) .....................................................................................................................................19

*Larios v. Lunardi*,
856 F. App'x 704 (9th Cir. 2021) .........................................................................................19

*Manning v. Safelite Fulfillment, Inc.*,
No. CV 17-2824 (RMB/MJS), 2021 WL 3557582, at *4 (D.N.J. Apr. 29,
2021), *report and recommendation adopted*, 2021 WL 3542808 (D.N.J. Aug.
11, 2021) ......................................................................................................................21, 22, 25

*Media Comm. Inc. v. Multimedia, Sign Up., Inc.*,
No. 99 C 5009, 1999 WL 1212652 (N.D. Ill. 1999)............................................................19

*Mosaid Techs. Inc. v. Samsung Elecs. Co.*,
348 F. Supp. 2d 332 (D.N.J. 2004) ......................................................................................25

*Muhammad v. Jenkins*,
No. CV 19-7970 JAK (PVC), 2022 WL 4292341, at *9 (C.D. Cal. Aug. 26,
2022), *report and recommendation adopted*, 2022 WL 4292308 (C.D. Cal.
Sept. 15, 2022) .....................................................................................................................20

*Orologio of Short Hills Inc. v. Swatch Grp. (U.S.)*,
653 F. App'x 134 (3d Cir. 2016) .........................................................................................24

*Philips Elecs. N. Am. Corp. v. BC Tech.*,
773 F. Supp. 2d 1149 (D. Utah 2011)..................................................................................25

*Schmid v. Milwaukee Elec. Tool Corp.*,
13 F.3d 76 (3d Cir. 1994) .....................................................................................................24

*Travelers Prop. Cas. Co. of Am. v. Cooper Crouse-Hinds, LLC*,
No. CIV. 05-CV-6399, 2007 WL 2571450 (E.D. Pa. Aug. 31, 2007) .................................25

*In re Tri Harbor*,
2021 WL 4877265 ......................................................................................................2, 3, 4

*Weber Mfg. Techs., Inc. v. Plasan Carbon Composites, Inc.*,
No. 14-12488, 2016 WL 8114507 (E.D. Mich. July 26, 2016).............................................20

**RULES**

Fed. R. Civ. P. 37...........................................................................................................21, 22, 25, 26

Plaintiffs Kavod Pharmaceuticals LLC (*f/k/a* Rising Pharmaceuticals, LLC, *f/k/a* Rising Pharmaceuticals, Inc.) ("Rising") and Tri Harbor Holdings Corporation (*f/k/a* Aceto Corporation) ("Aceto," and together with Rising, "Plaintiffs"), submit this Objection (the "Objection") to Defendant Sigmapharm Laboratories, LLC's ("Sigmapharm") "*Motion for Sanctions for Spoliation of Evidence and for an Evidentiary Hearing*." In support of their Objection, Plaintiffs submit the *Declaration of Reynold Lambert, Esq.* (the "Lambert Decl."), and respectfully state as follows:

## PRELIMINARY STATEMENT

1.      Truth places no limit on the zeal of Sigmapharm's advocacy. In this latest motion, filed on the eve of trial, Sigmapharm baldly asserts that Plaintiffs "failed to produce the underlying records in support of an audit trail for virtually all of the selected transactions," which must mean that Plaintiffs either "never had" them or "destroyed what they had." (SP Br. at 2.) In fact, Plaintiffs provided Sigmapharm with nearly *1,300* of those underlying records, which verify and corroborate *every single one* of those sampled transactions. There is not a shred of evidence to back up Sigmapharm's half-serious assertion that anything was "destroyed."

2.      To add insult to injury, Sigmapharm asks this Court to cancel the trial, scrap this Court's decision on summary judgment finding that Sigmapharm unlawfully terminated and breached the Agreement, absolve Sigmapharm from having to pay Rising damages for its many breaches, dismiss Plaintiffs' adversary complaint, and – even worse – enter judgment in Sigmapharm's favor and order Debtors to write Sigmapharm a $4 million check. Sigmapharm demands all of that without presenting this Court with any evidence whatsoever demonstrating that Plaintiffs lost, destroyed, or concealed even a single document.

3.      Sigmapharm's motion underscores what is already obvious:[2]    Sigmapharm's slanted and self-serving factual and legal assertions lack credibility.   The present motion, in particular, is an outrageous over-reach that cannot be taken seriously.

4.      The Court should deny the motion without even considering the merits.   Courts routinely reject as untimely motions seeking sanctions filed on the eve of trial, and the Court should do the same here.   Sigmapharm presents nothing new.   Its brief is an amalgamation of prior motions that were rejected by this Court or have nothing to do with Sigmapharm's frivolous charge of spoliation.   Sigmapharm relies on ancient history.   It advances false and misleading assertions about the parties' historical business dealings (dating from four to seven years ago); the parties' discovery dealings (from two to three years ago); Plaintiffs' sale of assets to Shore Suven, conducted under the auspices of this Court (closed more than two years ago); and Plaintiffs' written submission and productions pursuant to the Court' audit order (due more than one year ago).

5.      Even if the Court was inclined to consider the motion, the Court should still reject it as meritless.   Again, Sigmapharm's motion cannot leave the starting gate because Sigmapharm presents no evidence that Plaintiffs destroyed, lost, or concealed any documents.   In the face of that obvious fatal flaw, it goes without saying that Sigmapharm failed to present clear and convincing proof that Plaintiffs destroyed, lost, or concealed any documents in bad faith and with the specific intent to deprive Sigmapharm of evidence, as Sigmapharm must do to even approach the showing required to secure the drastic sanctions it seeks.

---

[2] The Court's opinion on summary judgment is replete with examples of Sigmapharm's underhanded tactics. *See, e.g., In re Tri Harbor*, 2021 WL 4877265, at *7 ("Sigma cites as the source of its interpretation the very same email just quoted, but that is not what the email says."); *id.* at *11 ("But [Sigmapharm's] timeline is slanted"); *id.* at *32 (agreeing that documents cited by Sigmapharm "do not address or support many of the broad and compound opinions and conclusions in this paragraph"); *id.* at *33 ("Plaintiffs properly respond that Sigmapharm has mischaracterized that email").

6.     The parties have been litigating this dispute for more than four years.  This Court has already found Sigmapharm liable for breaching the Agreement, and the time for delays and gamesmanship is over.  The Court should reject this motion and direct the parties to proceed to trial.

## FACTUAL BACKGROUND

**A.**     **Sigmapharm's False and Misleading Assertions About Events That Supposedly Happened Before Sigmapharm Unlawfully Terminated and Breached the Agreement.**

7.     Sigmapharm kicks off its fantastical tale with its distorted view of the parties' historical business dealings (*see, e.g.*, SP Br. at 3-6), pretending as if this Court had not already found Sigmapharm liable for breaching and unlawfully terminating the Agreement and denied Sigmapharm's motion for summary judgment in its entirety.  *See In re Tri Harbor Holdings Corp.*, No. 19-13448, 2021 WL 4877265, at *2, *29-30 (Bankr. D.N.J. Oct. 5, 2021).  One year after losing on summary judgment, and on the eve of trial, Sigmapharm recycles its failed summary judgment motion under the guise of a sanctions motion.  (*See, e.g.*, SP Br. at 3-6.)

8.     Regardless, Sigmapharm's claims about the parties' historical business dealings before it unlawfully terminated the Agreement are demonstrably false and contradicted by this Court's opinion on summary judgment.  For instance, Sigmapharm contends that, in December 2015, it asked for "back-up support" (SP Br. at 5 (citing Ex. 6)), and that "[n]one of the data provided was original source documents" (*id.* at 4).  Exhibit 6, however, merely asks for electronic ***"listings"*** of data, not "back-up support."  As this Court found on summary judgment, the only "source documents" Sigmapharm requested during its first audit completed in December 2016 were invoices and credit memos, and Rising provided those documents.  *See In re Tri Harbor Holdings*, 2021 WL 4877265, at *25, 30-31.  Sigmapharm goes so far as to resurrect its claim that

it "served Rising-Aceto with a letter identifying countless breaches of the Agreement" (SP Br. at

26), undeterred by the fact that this Court unequivocally rejected that false characterization:

> In fact, rather than identifying any breach, Mr. Kremer opens his December 16, 2016 Letter by stating he has "concluded" his review of the documents and information provided by Rising and lists the documents and information he received, including "source documents" such as an invoice and seven credit memos. Mr. Kremer does not, however, indicate in the December 16, 2016 Letter that Rising failed to provide any requested documents or information or much less give notice that any such failure gave rise to a breach of the Agreement.

*In re Tri Harbor Holdings*, 2021 WL 4877265, at *25. As yet another example of Sigmapharm

fabricating supposed facts, citing Exhibit 7, Sigmapharm claims that Rising did not allow an onsite

visit in 2016. (SP Br. at 5.) Exhibit 7 says nothing of the sort.

**B.    Sigmapharm's False and Misleading Assertions About Plaintiffs' Willingness to Commence an Audit After Sigmapharm Unlawfully Terminated The Agreement.**

9.    Again citing nothing, Sigmapharm claims that Plaintiffs "sought to avoid," and

delayed the commencement of, an audit in arbitration and this Adversary Proceeding. (SP Br. at

1-2, 6.) Once again, Sigmapharm's assertions, while irrelevant to Sigmapharm's frivolous charge

of spoliation, are plainly incorrect. Rising told Sigmapharm to send sampling requests ***nearly four***

***years ago***, in January 2019. Sigmapharm delayed for nearly two years, or until October 2020, to

identify the specific transactions it wished to sample.

10.    In response to Sigmapharm's request for an audit, Rising produced the initial

iteration of the audit package during the arbitration in January 2019, *In re Tri Harbor Holdings*,

2021 WL 4877265, at *12 n.82. The summary to the package provided a final accounting of profit

and loss for the parties' relationship pursuant to the Agreement, and the various schedules included

with the package provided the transaction-level data. This level of detail was consistent with the

"listings" that Sigmapharm requested and received during its audit of the 2009 to April 1, 2016

period.  Further, when it delivered the January 2019 audit package, Rising then agreed to allow Sigmapharm to request production of underlying records supporting the transactions outlined in the audit package on a sample basis.  Indeed, in Rising's responses to Sigmapharm's document requests served in the arbitration on January 11, 2019, Rising confirmed it would agree to consider and produce underlying documentation for the hundreds of thousands of transactions at issue on a sample basis.  (*See* Declaration of Reynold Lambert ("Lambert Decl."), Ex. A, Plaintiffs' Responses to Sigmapharm's Document Requests, Responses to "Source Documents" Nos. 1, 3, 8-9, Request Nos. 2(xii), 2(xv), 2(xvi), 3-6, 8-10, 16-17 ("***Rising also is willing to consider reasonable request for samples of back-up requested from the Audit Package***.") (emphasis added).)

11.    The *only issue* in the arbitration was whether Sigmapharm would receive supporting documents on a sample basis—or, as Sigmapharm *initially* indicated without reason or justification under the Agreement, whether Sigmapharm would insist that Rising produce supporting documents for every single one of the 400,000 transactions during the audit period. That is why Plaintiffs opposed Sigmapharm's motion in the arbitration.  In its brief submitted on January 18, 2019, Rising reiterated that it "agreed to an audit" and "stands willing to allow Sigmapharm to review a reasonable sample of the underlying documents and data, consistent with general auditing procedures, after Sigmapharm reviews and digests this Audit Package."  (*Id*., Ex. B at 1.)

12.    Sigmapharm's oft-repeated mantra that Rising supposedly refused to allow an audit is a complete fiction disproven by the record.  For more than six months prior to the commencement of this Adversary Proceeding in July 2019, Rising agreed to an audit premised upon a sampling of the transactions, and simply awaited Sigmapharm's selection of what

transactions it wanted to sample.  Sigmapharm, however, did nothing.  It neither identified errors
in the audit package nor delivered any sampling requests to Rising.  Instead, and knowing that it
owed Rising millions of dollars (as the January 2019 audit package made clear), Sigmapharm sat
on its hands.

13.    After Plaintiffs commenced this Adversary Proceeding in July 2019, nothing
changed—Sigmapharm continued to delay in providing sampling requests, notwithstanding
Rising's unequivocal statement months earlier that it would consider them.  On May 11, 2020, the
Court entered the *Supplemental Joint Order Scheduling Pretrial Proceedings and Trial* (the
"Supplemental Scheduling Order") extending the fact discovery end date to September 22, 2020.
(ECF No. 11 ¶ 7.)  Rising agreed to update the audit package with transactions that materialized
since the delivery of the initial audit package by May 15, 2020 (*id.* ¶ 4), and the parties agreed to
exchange[3] audit protocols by June 10, 2020 (*id.* ¶ 5).

14.    In accordance with the Supplemental Scheduling Order, Rising delivered its
updated audit package on May 15, 2020.  Sigmapharm then transmitted its audit protocol on June
10, 2020, and indicated that it wanted to conduct sampling of roughly 400 transactions in the audit
package, but without identifying which 400 transactions it wanted to audit.  (Lambert Decl., Ex.
C.)  Nowhere in its audit protocol did Sigmapharm identify any problems with Rising's audit
package or otherwise say it needed more information to make the sample selections.

15.    On two separate occasions, Rising urged Sigmapharm to identify the sample of 400
transactions that it wished to audit.  On July 1, 2020, Rising by letter reiterated that it was waiting

---

[3] In its Complaint, Rising seeks an order of specific performance compelling Sigmapharm to comply with its audit
obligations under the Agreement (Compl. ¶¶ 97-100, Count Eight), which is why the audit-related obligations in the
Supplemental Scheduling Order are mutual.  However, during the meet and confer process, Rising learned that
Sigmapharm failed to maintain records as required under the Agreement, making it impossible for Rising to exercise
its audit rights.  Rising reserves all rights, claims, and defenses arising from Sigmapharm's failure to comply with its
obligation to maintain records under the Agreement.

for Sigmapharm to provide the sampling requests.  (*Id.*, Ex. D.)  After receiving no response from Sigmapharm, Rising reached out ***again*** on July 20, 2020, indicating that it was "await[ing] a response from Sigmapharm—including, among other things, Sigmapharm's identification of the specific transactions which it intends audit," and advising that "the audit cannot commence until and unless Sigmapharm identifies the specific transactions which it wishes to audit."  (*Id.*, Ex. E.) Sigmapharm, however, did not identify the 400 sampled transactions until October 1, 2020 (*id.*, Ex. F), more than three months after Rising agreed to the audit protocol.  Indeed, Sigmapharm delayed identification of the 400 samples transactions until after the expiration of the fact discovery end date in effect at that time (*i.e.*, September 22, 2020).

16.     As the indisputable record shows, Plaintiffs did not delay an audit—Sigmapharm did.  To perpetuate its false narrative, Sigmapharm manages to mischaracterize a statement Rising's counsel made during the estimation hearing in September 2019, ***even though the block quote included in its brief disproves the characterization***.  According to Sigmapharm, counsel "suggested" that "Sigmapharm was precluded from exercising its independent audit rights," and that Sigmapharm "could not review underlying records," because Plaintiffs "sold its physical buildings." (SP Br. at 7-8.)  As the block quote shows, however, counsel suggested no such thing, and in fact said the exact opposite, *i.e.*, that Rising was willing to proceed with an audit and was simply waiting for Sigmapharm to send sampling requests.  (*Id.* at 8 ("We did say we would be willing to go through a statistical sample if they want to do the backup as Your Honor just outlined and we've been waiting for them, to tell us oh, here's what we want to review.").)

17.     Of course, Sigmapharm completely ignores that statement in the block quote and highlights the next one—counsel, however, merely pointed out that Sigmapharm wanted to visit Rising's offices, which had been sold, and review documents related to all the hundreds of

thousands of transactions in the audit package rather than a sample, which was an absurd position

that Sigmapharm later abandoned and this Court rejected (as discussed below).  (*Id.*)

C.    **Sigmapharm's False and Misleading Assertions About Discovery, Which Closed Nearly Two Years Ago.**

18.    Because no documents have been destroyed, Sigmapharm resorts to claiming that

Plaintiffs should be sanctioned for not producing EisnerAmper's draft report or Rising's

accounting policies during discovery.  (SP Br. at 8-11.)  Sigmapharm, however, fails to disclose

to the Court the fact that it never requested accounting policies during discovery, and that Plaintiffs

objected to producing EisnerAmper's draft report and Sigmapharm chose not to challenge those

objections.  Plaintiffs cannot be sanctioned for not producing documents Sigmapharm never

requested or to which Plaintiffs objected without challenge from Sigmapharm during the course

of discovery, which closed nearly two years ago, in December 2020.[4]

19.    Discovery between the parties began before Plaintiffs filed this Adversary

Proceeding.  Plaintiffs commenced an arbitration against Sigmapharm in June 2018, and the parties

served written discovery in November 2018.  To manufacture the false impression that Plaintiffs

did not produce requested discovery, Sigmapharm pasted certain of its document requests into its

brief.  (SP Br. at 13-14.)  Sigmapharm, however, failed to disclose that Plaintiffs objected to those

requests, making clear that Rising had produced the audit package and would consider reasonable

sampling requests.  (Lambert Decl., Ex. A.)  Sigmapharm never even requested a meet and confer

about those objections, much less pursued (and prevailed on) a motion to compel.

---

[4] Plaintiffs previously explained the history of Sigmapharm's document requests and failures to challenge Rising's objections more than 1.5 years ago, in April 2021, in opposition to Sigmapharm's motion to compel further testimony from Rising's corporate designee (ECF No. 40), and also in support of Plaintiffs' motion to quash Sigmapharm's subpoena to Shore Suven (ECF No. 28-1).  As discussed below, the Court denied Sigmapharm's motion to compel further testimony nearly in its entirety (ECF No. 55), and rejected Sigmapharm's efforts to secure from Shore Suven documents subject to Plaintiffs' objections that Sigmapharm never challenged during discovery.

20.     The same is true for Sigmapharm's document request pertaining to EisnerAmper. Sigmapharm sought documents pertaining to work performed by EisnerAmper that fell within two different categories: (i) generally "relating to the accounting practices, audit or other financial information of Rising and/or Aceto," and (ii) specifically "relating to Sigmapharm, the Agreement, and/or Sigmapharm Licensed Products under the Agreement." (*Id.*, Ex. A (Document Request No. 20).)   Plaintiffs objected to the first general category of documents on grounds that such information was irrelevant to the claims and defenses.   Plaintiffs further notified Sigmapharm that, *after the parties agreed upon search terms and custodians*, they would produce documents pertaining *only* to the second category, *i.e.*, those "that were prepared by or with the assistance [of] EisnerAmper *and* pertain to Sigmapharm." (*Id.* (incorporating response to "Source Document" No. 7) (emphasis added).)

21.     As for Rising's accounting policies, Sigmapharm did not request them. ***That is why Sigmapharm points to no document request.***   In fact, in this submission, Sigmapharm asserts that it served "interrogatories" about Rising's "accounting processes," to which Rising responded in January 2020 (SP Br. at 16 (citing Ex. 25).)   As the cited document (Exhibit 25) makes clear, these were not interrogatories.   Even so, Sigmapharm did not request accounting policies in that document soliciting information about "accounting processes" either, *despite requesting other documents*.   (SP Br., Ex. 25, Request Nos. 19-23.)   Sigmapharm claims that Rising's responses were "incomplete."   (SP Br. at 16.)   That is news to Rising.   Like the rest of its fabricated gripes, Sigmapharm *never* raised any issues with the sufficiency of Rising's responses.

22.     By order of this Court entered on October 21, 2019 (the "Initial Scheduling Order"), Sigmapharm's document requests and Plaintiffs' objections were deemed served in this Adversary Proceeding.   (ECF No. 7 ¶ 4.)   The Initial Scheduling Order made clear that if a party believed any

"responses to discovery or discovery productions are insufficient, the parties shall meet and confer" and raise any disputes with the Court, as necessary. (*Id.*) Fact discovery lasted 14 months, from October 1, 2019, to December 18, 2020. (ECF No. 7 (Initial Scheduling Order) ¶ 7; ECF No. 14 (Second Amended Scheduling Order) ¶ 3).) Sigmapharm, however, never challenged any of Plaintiffs' objections, whether in the arbitration or in this Adversary Proceeding; it did not request any meet and confer and did not raise any discovery issues with the Court.

23.     On December 6, 2019, Sigmapharm served a subpoena upon EisnerAmper seeking 21 broad categories of documents. (Lambert Decl., Ex. G.) Plaintiffs never objected to that subpoena, thus allowing EisnerAmper to produce all documents responsive to it. On March 10, 2020, EisnerAmper produced documents responsive to the subpoena, including EisnerAmper's draft report. (*Id.*, Ex. H.) That was three months *before* Rising substantially completed its production of documents in June 2020. Still, Sigmapharm said nothing.

24.     On May 11, 2020, the Court entered the Supplemental Scheduling Order, which required the parties to substantially complete their document productions by May 29, 2020. (ECF No. 11 ¶ 3.) To that end, the parties negotiated a protocol to govern productions, which identified search terms and custodians applicable to each party. (*Id.*, Ex. I.) Moreover, the searches Plaintiffs agreed to run pertaining to EisnerAmper—*which Sigmapharm itself prepared*—all included terms related to Sigmapharm (*e.g.*, "Sigma!," "Richard Kremer," or the names of other Sigmapharm employees) or Sigmapharm products (*e.g.*, "Flucytosine"). (*Id.*, Heading: "SEARCHES TO BE PERFORMED BY RISING," Search Nos. 5 & 9.) Therefore, Sigmapharm's own searches captured only documents that referenced both EisnerAmper and Sigmapharm. That is significant because EisnerAmper's draft report does not mention Sigmapharm or any of the products subject to the Agreement. Therefore, EisnerAmper's draft report did not fall within the protocol

negotiated and agreed upon by Sigmapharm, and Sigmapharm never sought to modify that protocol in discovery, whether before or after it received EisnerAmper's draft report.

25.     After implementing this protocol, Plaintiffs produced a significant amount of discovery ***more than two years ago***, in May and June 2020, totaling 85,000 pages (or 28,000 documents).  Sigmapharm, however, never notified Plaintiffs that their production was deficient or missing *any* documents, much less accounting policies or any documents pertaining to EisnerAmper, even though Sigmapharm already had EisnerAmper's production since March 2020. Nor did Sigmapharm ever file a motion to compel Plaintiffs to produce this information (nor could it file such a motion, since it never sought to meet and confer with Plaintiffs).

26.     Accusing Plaintiffs of spoliation for not producing documents that Sigmapharm did not bother to request during discovery, on the eve of trial no less, is the stuff of bad faith.  In fact, this Court has already shut down Sigmapharm's attempt, after the close of discovery, to secure documents subject to objections that Sigmapharm never challenged.  In March 2021 (three months after the close of discovery), Sigmapharm served a subpoena upon Shore Suven effectively seeking all documents related to all transactions in the audit package.  The Court, however, quashed those requests because they exceeded the scope of Sigmapharm's agreement and chosen protocol for testing the audit package and Sigmapharm never challenged Rising's objections during discovery. (*See* Lambert Decl., Ex. J at April 22, 2021 Tr. at 28:12-16) ("You know, I think that especially here at this point the request for the production of all the documents that underlie all the hundreds of thousands of transactions is ***improper and beyond the scope of discovery that was, you know, agreed to or objected to and not responded to***.") (emphasis added).)

27.     As Sigmapharm readily admits (SP Br. at 9), Plaintiffs' counsel, during the estimation hearing ***more than three years ago***, in September 2019, reiterated Plaintiffs' position

that EisnerAmper's draft report was irrelevant; yet, Sigmapharm did nothing to challenge those objections. Instead, Sigmapharm sat on its hands for years and waited until now, a month before trial is set to begin, to recast *Sigmapharm's* shortcomings as *Plaintiffs'* "concealment." (*Id.* at 10.) As this history makes clear, nothing could be further from the truth, and Sigmapharm has filed this motion for an improper purpose and solely to delay and obfuscate the trial.

28.      Regardless, Sigmapharm's feigned disagreement with Plaintiffs' objections is predicated on the false assertion that EisnerAmper's draft report "focuses primarily on Sigmapharm." (SP Br. at 10 (citing Ex. 17).) That is yet another false characterization. The draft report addresses Rising's general practices and is not specific to any manufacturing partner and certainly not to Sigmapharm. The draft report is separate and distinct from the work EisnerAmper did in connection with Sigmapharm's accounting, all of which Plaintiffs produced. All of this was addressed by the parties on summary judgment. As Plaintiffs explained in those submissions, Rising worked with EisnerAmper to recast the profit-sharing payments for all partners for fiscal year 2017, and the aspect of that work that related to Sigmapharm is relevant. (ECF No. 49 at 20 (Plaintiffs' Responses to SUMF No. 30).) In this litigation, Plaintiffs ran the protocol agreed upon by the parties and produced all non-privileged documents that pertained to EisnerAmper's work. Sigmapharm had no problem with Plaintiffs' production—until now, when it seeks to overburden Plaintiffs while they prepare for trial, and also delay and disrupt the trial.

### D.      Sigmapharm's False and Misleading Assertions about the Shore Suven Sale.

29.      Sigmapharm claims Plaintiffs "asserted that they gave the records to Shore Suven at the sale without maintaining a copy, [so] they violated the Court Order." (SP Br. at 2.) Plaintiffs asserted no such thing, which is why Sigmapharm (as usual) cites ***nothing*** to support that statement.

30.     More than 18 months ago, in March 2021, Sigmapharm raised the same spurious

assertions about its supposed ignorance of the Shore Suven sale and claimed that Rising violated

Judge Robreno's Order.  (*See* ECF No. 25; ECF No. 29 ¶¶ 47-54; ECF No. 30 ¶¶ 1-19.)  Of course,

if Sigmapharm was ignorant of the sale it can only look to itself to blame, as the sale was conducted

under this Court's auspices pursuant to motions that were served on Sigmapharm.  (ECF No. 40 at

18.)  Moreover, in response to these tardy assertions, Plaintiffs made clear that it made a copy set

of all business records which could be reasonably be copied (servers, emails, shared drives) and

maintained a contractual right to access everything else (hard-copy documents stored offsite at

Iron Mountain and accounting (or ERP) systems):

> Prior to the closing of the Amended and Restated Asset Purchase
> Agreement with Shore Suven dated as of March 31, 2019 (the
> "APA"),[5] ***Plaintiffs copied all documents and data that could
> reasonably be copied, including Plaintiffs' servers***. For those items
> for which it was not feasible or reasonable to copy, Plaintiffs
> negotiated a ***contractual right under the APA to access*** documents
> and data acquired by Shore Suven, including Rising's Enterprise
> Resource Planning ("ERP") systems and hard-copy documents
> stored offsite at Iron Mountain. (APA § 6.2(e), (f).)

(ECF No. 34 at 10 (emphasis added).)   In fact, Plaintiffs' right to access any information

transferred to Shore Suven has been extended by amendment and ***continues to this day***.  (Lambert

Decl., Ex. K.)

31.     Aside from mischaracterizing what Plaintiffs said about the Shore Suven sale,

Sigmapharm also makes the unremarkable observation that "Sigmapharm's Agreement was never

identified as a possible contract to be assumed and assigned."  (SP Br. at 18.)  True enough, ***but***

***that is because Sigmapharm terminated the Agreement a year prior and the Agreement was***

---

[5] A copy of the APA is attached to the Court's *Order (A) Authorizing and Approving the Sale of Substantially All
Assets Comprising the Debtors' Pharma Business Free and Clear of All Claims, Liens, Rights, Interests, and
Encumbrances, (B) Authorizing and Approving The Assumption and Assignment of Certain Executory Contracts and
Unexpired Leases Related Thereto, and (C) Granting Related Relief.* (Bankruptcy Case, ECF No. 372.)

**never assumed and assigned to Shore Suven**.  Sigmapharm's remaining claims of ignorance—
*i.e.*, that it did not know Shore Suven was receiving any transaction records or assuming any
"liability for any Sigmapharm transaction" (*id.* at 18-19)—rings hollow, as Plaintiffs previously
established (ECF No. 28-1 at 5 n.3; ECF No. 40 at 18.)

32.     The impropriety of Sigmapharm's claim that the Shore Suven sale somehow
equated to spoliation is underscored by the fact that more than 1.5 years have passed since
Plaintiffs complained to this Court about the sale and Sigmapharm filed no motion for sanctions.
That is because Sigmapharm knew such a motion would be meritless.  No documents have been
destroyed.  Plaintiffs copied nearly all the relevant documents and retained the right to access the
remainder.  There is no spoliation, and Sigmapharm presents absolutely no evidence to the
contrary.

> **E.     Sigmapharm's False and Misleading Assertions About Plaintiffs' Productions
> in Response to Sampling Requests.**

33.     Lastly, Sigmapharm recycles its assertions about Rising's compliance with the
Court's order concerning Sigmapharm's audit, which the Court entered **more than one year ago**,
on June 7, 2021 (the "Audit Order").  (SP Br. at 20-24.)  Sigmapharm advanced these same
assertions in its *Daubert* motion (ECF No. 98-1), and then turned around and told the Court not to
decide the motion until trial (ECF No. 107).  As this Court has already recognized, Sigmapharm's
dispute about the sufficiency of Rising's sampling productions overlaps nearly completely with
the merits.  (*See* ECF No. 113 ¶ 2.)  On the eve of trial, however, Sigmapharm has now repackaged
its (disputed) allegations about the merits as a basis to claim that Plaintiffs destroyed documents.

34.     Again, Sigmapharm provides no evidence that Plaintiffs destroyed anything.  Even
so, Sigmapharm's assertions about Plaintiffs' compliance with the Audit Order and sampling
productions are meritless, as previously established by Plaintiffs in their Objection to

Sigmapharm's *Daubert* motion (ECF No. 103) and Sur-Reply (ECF No. 113).    Plaintiffs

incorporate those submissions herein in their entirety.  Not surprisingly, Sigmapharm ignored and

failed to address any of Plaintiffs' rejoinders.

35.      To begin with, Sigmapharm mischaracterizes the Court's ruling and Plaintiffs'

written response pursuant to such ruling.  (ECF No. 103 ¶¶ 16-20.)   More than one year ago, on

August 5, 2021 (not 2022, as Sigmapharm misstates in its submission (SP Br. at 21-22)), Plaintiffs'

expert, Laureen Ryan, provided a detailed overview of the documents Plaintiffs produced in

response to Sigmapharm's sampling requests, and identified instances where Rising did not

possess the requested documents.[6]  (ECF No. 103 ¶¶ 21-39.)  Sigmapharm continues to grossly

mischaracterize Ms. Ryan's report by claiming all she did was reject the documentation

Sigmapharm claimed it wanted and did not identify documents Rising did not maintain in the

normal course of business.  (SP Br. at 21-22.)  That is not the stuff of a sanctions motion (as

opposed to cross-examination at trial), and in any event it is dead wrong.  Again, Ms. Ryan went

through each of Mr. Cowhey's requests and identified what documents were and were not

provided.  In addition, Ms. Ryan also identified instances where she did not agree documents were

necessary, as was Plaintiffs' right under the Audit Order.  (ECF No. 103 ¶¶ 21-39, 47-53.)  Even

if there was confusion on Sigmapharm's part, Ms. Ryan included close to 60 pages of exhibits

identifying documentation Plaintiffs provided.

36.      As discussed below, if Sigmapharm had any problems with Plaintiffs' written

submission, the Audit Order required Sigmapharm to meet and confer and raise disputes with the

Court, as necessary.  (Audit Order ¶ 6.)  Sigmapharm did none of that.

---

[6] A complete copy of Ms. Ryan's report from August 2021 is attached the Lambert Declaration as **Exhibit L**.

37.    Sigmapharm's assertions about the sufficiency of Rising's document productions are equally meritless.  (ECF No. 103 ¶¶ 21-39, 47-53.)  Sigmapharm relies on an affidavit from its expert submitted for the first time on reply in further support of its *Daubert* motion.  (SP Br. Ex. 4.)  Sigmapharm, however, ignores that fact that Mr. Cowhey is relying on requests that Sigmapharm never made, as Plaintiffs established in their Sur-Reply.  (ECF No. 113.)  In fact, Sigmapharm continues to ignore its letter to this Court in connection with the Audit Order dated May 2021, in which Sigmapharm indicated that it did not want Plaintiffs discerning document requests from Mr. Cowhey's reports, and, instead, identified what it believed it needed to complete the audit.  (*Id.* ¶¶ 7-8.)  Sigmapharm advised the Court as follows:

> Our proposed paragraph 2 ***specifies specifically*** what documents are needed to ***complete the sampling process***. Rising has proposed an alternative where ***they will interpret our expert's declaration*** on the deficiencies in their production and then produce what they decide Sigmapharm really needs followed by a meeting where their expert will try to convince us their production is adequate.  We believe this will only extend this process indefinitely and delay resolution of this litigation. We believe the Court made it clear that our auditors ***are entitled to specify the documents they need to verify Rising's accounting***.

(*Id.* (emphasis added).)  Once Plaintiffs satisfied these requests, however, Sigmapharm then moved the goal posts again in Mr. Cowhey's new affidavit.[7]  (*Id.* ¶¶ 11-12.)

38.    Sigmapharm's fictional document requests aside, no documents have been destroyed and Sigmapharm identifies none.   In Ms. Ryan's submission from August 2021, Plaintiffs provided a detailed overview of the process Plaintiffs used to identify, search for, and produce documents.  (Lambert Decl., Ex. L at 8-9.)  Over the course of more than 10 months (from

---

[7] As Plaintiffs will show at trial, there are other deficiencies with Mr. Cowhey's charts, including instances where he concludes incorrectly that no documents were provided, and instances where Mr. Cowhey references the same category of document twice (for instance, in Rebates, Mr. Cowhey lists invoices twice—*i.e.,* "Customer Invoice" and "Invoice where Credit Memo got applied").

October 2020, when Sigmapharm sent the sampling requests, through August 2021, when Plaintiffs made their production under the Audit Order), Plaintiffs conducted an extensive search for electronic and hard-copy records, both in their possession and through Shore Suven.  And all responsive documents located were turned over to Sigmapharm.  All told, Plaintiffs produced 1,247 documents in response to Sigmapharm's sampling requests.[8]

39.    This was a monumental effort, as Rising has an enormous amount of records and data.  To put the universe in context, prior to the sale to Shore Suven, Rising alone (excluding Aceto) had around 90 employees; approximately 25 manufacturing partners (Sigmapharm was not only one); and sold approximately 500 generic pharmaceutical products stock keeping units (of which only 18 were products manufactured by Sigmapharm).  (ECF No. 52 ¶ 6.)  The number of transactions (and corresponding records) generated by the business is incredibly large.  Indeed, as the audit package shows, for the Sigmapharm relationship alone, during a period of around two years, Rising sold approximately 400,000 units of products.  (*Id.* ¶ 58.)  And, generally speaking, the records generated in connection with those transactions are not exclusive to Sigmapharm; they also pertain to other products Rising sold through different manufacturing partners.

40.    By the time Sigmapharm sent its sampling requests in October 2020, Rising no longer had any employees to assist with an audit and easily find responsive records.  As such, Plaintiffs retained the help of an expert (A&M), including certified public accountants, to prepare and implement a robust search to respond to Sigmapharm's sampling requests.  Plaintiffs also worked with its former Vice President of Finance, Eugene Hughes, and Shore Suven.  Notably,

---

[8] Due to the significant volume of the supporting documents, Plaintiffs are not filing them on ECF.  Even so, Plaintiffs included the supporting documents on their exhibit list (*i.e.*, PX-1 through PX-1247), and Plaintiffs sent physical and electronic copies of those exhibits to the Court.  Plaintiffs incorporate by reference all of the supporting documents into this submission.

although Plaintiffs informed Sigmapharm of the process more than one year ago, in Ms. Ryan's

August 2021 report, Sigmapharm never raised any issues with those procedures.

41.     Importantly, the Audit Order precludes Sigmapharm's tactical gamesmanship here.

The Audit Order makes clear that if Sigmapharm had "*any* dispute arising under" the Audit Order,

Sigmapharm was required to meet and confer and raise any disputes with the Court.  It provides:

> The parties ***shall*** use their good faith efforts to consensually resolve
> ***any dispute arising under this Order***. In the event the dispute
> cannot be so resolved, either party may request that the Court
> resolve the dispute by short (2-3 pages) letter request as to which the
> other party shall have three (3) business days to respond in kind. The
> Court may conduct a hearing to resolve any such dispute or resolve
> it on the basis of the submissions.

(SP Br., Ex. 3 ¶ 6 (emphasis added).)

42.     Plaintiffs provided their written submission and productions more than one year

ago, in August 2021.[9]  If Sigmapharm had a legitimate gripe with Plaintiffs' responses to the Audit

Order—whether Plaintiffs' written submission or productions—it was ***required*** to meet and confer

with Plaintiffs in an attempt to resolve any dispute.  That never happened.  Instead, Sigmapharm

proceeded to negotiate and agree upon a new scheduling order that covered expert discovery in

accordance with paragraph 7 of the Audit Order (ECF No. 78 (entered on December 22, 2021)),

and then additional scheduling orders that covered pretrial requirements and set a trial date (ECF

Nos. 100 (entered on April 27, 2022), 111 (entered on July 22, 2022)).  In none of those Orders

did Sigmapharm request a briefing schedule for a motion for sanctions or spoliation, whether

arising from the Audit Order or otherwise.

---

[9] Sigmapharm may attempt to distract by pointing to the two small productions Plaintiffs made in April 2022 and June 2022, but those productions do not excuse Sigmapharm's failure to raise any perceived disputes arising from the Audit Order in August 2021.  Indeed, Sigmapharm does not even mention those productions in its submission.  Regardless, Plaintiffs' supplemental productions occurred eight and eleven months *after* August 2021.

43.     Put simply, Sigmapharm provides no evidence that Plaintiffs destroyed or concealed any documents.  Even so, the Audit Order precludes exactly what Sigmapharm is trying to do here; that is, say nothing for more than one year after receiving Plaintiffs' written submission and productions under the Audit Order, and then attempt to disrupt the trial by advancing, at the eleventh hour, meritless claims that Plaintiffs violated the Audit Order.

## **ARGUMENT**

**I.     THE COURT NEED NOT CONSIDER THE MOTION BECAUSE SIGMAPHARM UNREASONABLY WAITED UNTIL THE EVE OF TRIAL TO FILE IT.**

44.     "Federal district courts have held that an unreasonable delay can render a spoliation motion untimely."  *Cottle-Banks v. Cox Commc'ns, Inc.*, No. 10CV2133-GPC WVG, 2013 WL 2244333, at *16 (S.D. Cal. May 21, 2013) (citing authority); *Larios v. Lunardi*, 442 F. Supp. 3d 1299, 1306 (E.D. Cal. 2020), *aff'd*, 856 F. App'x 704 (9th Cir. 2021) (same).   Parties must file spoliation motions "as soon as reasonably possible after [uncovering] the facts that underlie the motion."  *Larios*, 442 F. Supp. 3d at 1306 (alteration in original).  Therefore, courts decline to consider spoliation motions when a movant waits months to file it.  *See, e.g.*, *Glenn v. Scott Paper Co.*, No. CIV. A. 92-1873, 1993 WL 431161, at *17 n. 3 (D.N.J. Oct. 20, 1993) (declining to consider spoliation claims, noting: "The Court is struck by the timing of Glenn's accusation—first brought defending a summary judgment motion after completion of discovery."); *Larios v. Lunardi*, 856 F. App'x 704, 706 (9th Cir. 2021) (affirming dismissal of spoliation motion, noting: "The district court observed that Larios's nine month delay in raising the issue was unreasonable, noting that the motion was filed after discovery closed and the dispositive motion deadline passed."); *Media Comm. Inc. v. Multimedia, Sign Up., Inc.*, No. 99 C 5009, 1999 WL 1212652, at *4 (N.D. Ill. 1999) (denying motion to enter default judgment based on spoliation of evidence where plaintiff waited four months to seek sanctions).

45.    Courts are particularly critical of litigants—like Sigmapharm—that wait until the eve of trial to file a spoliation motion.  That is why "[c]ourts routinely deny spoliation motions filed on the eve of trial." *Muhammad v. Jenkins*, No. CV 19-7970 JAK (PVC), 2022 WL 4292341, at *9 (C.D. Cal. Aug. 26, 2022), *report and recommendation adopted*, 2022 WL 4292308 (C.D. Cal. Sept. 15, 2022); *see, e.g.*, *Weber Mfg. Techs., Inc. v. Plasan Carbon Composites, Inc.*, No. 14-12488, 2016 WL 8114507, at *4 (E.D. Mich. July 26, 2016) ("Waiting until May 13, 2016— less than two months before trial and over a year after discovery closed—to claim that this evidence was spoliated because the temperature tags were thrown away is simply too late."); *TFG-N. Carolina, L.P. v. Performance Fibers, Inc.*, No. 2:08-CV-00942 TC, 2011 WL 13238434, at *3 (D. Utah Jan. 10, 2011) ("Defendants' Sanctions Motion was unreasonably delayed, after discovery closed, after dispositive motions were due to be filed and after decisions on the summary judgment motions were issued.  The motion was made after the final pretrial conference and only three weeks before trial."); *Am. Nat. Prop. & Cas. Co. v. Campbell Ins., Inc.*, No. 3:08-CV-00604, 2011 WL 3021399, at *3 (M.D. Tenn. July 22, 2011) ("When the plaintiff filed the instant motion on July 6, 2011, the alleged spoliation had occurred 14 months earlier, fact discovery had been closed for more than four months, and trial was scheduled to begin in less than seven weeks.").

46.    Sigmapharm's motion is the poster child for an unreasonably delayed filing.  Sigmapharm is relying on events that happened years ago, even before Plaintiffs commenced this Adversary Proceeding.  Discovery closed nearly two years ago and this Court already decided summary judgment motions and found Sigmapharm liable for unlawfully terminating and breaching the Agreement.  Moreover, Plaintiffs' written submission and productions under the Audit Order were due more than one year ago.  Even if Sigmapharm had legitimate disputes pertaining to that Order, Sigmapharm never sought a meet and confer, as required.  Instead,

Sigmapharm marched together with Plaintiffs towards a final resolution at trial.   Indeed, Sigmapharm negotiated and agreed upon not one but two different scheduling orders setting trial dates.  Now, just one month before the trial is set to commence, Sigmapharm filed this motion seeking outcome-determinative sanctions designed to circumvent this Court's decision on summary judgment and avoid the trial.  Sigmapharm's motion was filed in bad faith, solely to disrupt the trial and divert Plaintiffs' attention away from trial preparation.  It comes way too late and the Court should reject it as untimely.

## II.   EVEN IF THE COURT WAS INCLINED TO CONSIDER THE MOTION, THE COURT SHOULD REJECT IT AS MERITLESS.

47.   "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably forseeable [sic] litigation." *Manning v. Safelite Fulfillment, Inc.*, No. CV 17-2824 (RMB/MJS), 2021 WL 3557582, at *4 (D.N.J. Apr. 29, 2021), *report and recommendation adopted*, 2021 WL 3542808 (D.N.J. Aug. 11, 2021) (internal quotation marks and citation omitted; alteration in original). "Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012).

48.   "In 2015, however, Federal Rule of Civil Procedure 37 was amended to provide a uniform standard governing spoliation sanctions for the loss of electronically stored information." *Manning*, 2021 WL 3557582, at *4.  "For the Court to make a finding that spoliation occurred, the moving party must show that (1) the ESI should have been preserved in anticipation or conduct of litigation; (2) the ESI was lost; (3) 'the information was lost because the party failed to take reasonable steps to preserve' it; and, (4) because ESI 'often exists in multiple locations,' spoliation

occurs only where the information is truly lost and not cannot be recovered elsewhere, restored, or

replaced." *Id.* (quoting Fed. R. Civ. P. Advisory Committee Notes, Fed. R. Civ. P. 37).

49.     A claim of spoliation cannot rest on speculation.  It requires evidence of document

destruction or loss.   "It is self-evident that in order to obtain spoliation sanctions pursuant

to Rule 37(e) spoliation must occur.  In order to prove that spoliation occurred [the moving party]

must prove that ESI was 'lost.'"  *Kavanagh v. Refac Optical Grp.*, No. CV 15-4886 (JHR/JS),

2017 WL 6395848, at *2 (D.N.J. Dec. 14, 2017); *see, e.g.*, *Flanders v. Dzugan*, No. CIV.A. 12-

1481, 2015 WL 5022734, at *5 (W.D. Pa. Aug. 24, 2015) (denying spoliation motion because

"Plaintiff cannot show any evidence was actually lost or destroyed."); *Kavanagh*, 2017 WL

6395848, at *2 ("The Court agrees with plaintiffs' argument that defendants' motion is without

merit because 'there is no spoliation. Defendants cannot articulate any recording that was allegedly

lost or destroyed.'").

50.     In all cases, "[a] proper spoliation claim requires the moving party to set forth

evidence *with specificity*."  *Flanders*, 2015 WL 5022734, at *5 (emphasis added).  And "vague

speculation as to whether evidence has been destroyed or even whether evidence was relevant does

not rise to the specificity level required by the Third Circuit to impose sanctions or even make a

finding of spoliation."  *Bensel v. Allied Pilots Ass'n*, 263 F.R.D. 150, 153 (D.N.J. 2009).

51.     Here, Sigmapharm recklessly asserts that Plaintiffs "destroyed virtually all of the

underlying source document necessary to audit just the 370 sample transactions."  (SP Br. at 31.)

Sigmapharm does not present a shred of evidence that Plaintiffs destroyed any documents.[10]

---

[10] The only party who actually destroyed documents is Sigmapharm.  Sigmapharm's expert, Mr. Cowhey, testified that he destroyed documents pertaining to his engagement, including notes and emails.  Sigmapharm retained Mr. Cowhey to do work in connection with its dispute with Rising five years ago, in September 2017 (Lambert Decl., Ex. M at T34:6-11), and Sigmapharm filed suit more than four years ago, in March 2018.  Yet, Mr. Cowhey testified that his emails are "automatically delete[d]" after two years, meaning that today he has no emails that are more than the two years old.  (T34:15-35:3.)  Mr. Cowhey also testified that all notes created during the course of his engagement are "discard[ed]" at the time the final work product is issued.  (T60:19-61:11.)  That would include notes prepared by

Plaintiffs did no such thing.  In fact, Plaintiffs produced 1,247 documents to audit these 370

transactions (although one would never realize that from reading Sigmapharm's opening brief).

52.     Sigmapharm's alternative theories are equally meritless.  Obviously Plaintiffs

cannot be sanctioned for not producing documents Sigmapharm never requested, or to which

Plaintiffs objected and Sigmapharm never challenged during the discovery period.  *See Durst v.*

*FedEx Express*, No. CIV.A. 03-5186 (JBS), 2006 WL 1541027, at *4 (D.N.J. June 2, 2006) ("This

Court will not allow either a spoliation inference as to these documents or Plaintiff to reopen

discovery on the eve of trial to resolve a discovery matter that should have been raised with Judge

Donio long ago."); *Flanders*, 2015 WL 5022734, at *6 ("a spoliation inference is not intended as

a remedy to correct the moving party's failure to request everything it needs in discovery").  Nor

did Plaintiffs' sale to Shore Suven amount to spoliation, as no documents have been destroyed; to

the contrary, Plaintiffs copied what could be reasonably copied prior to the sale, and retained a

contractual right to access everything else, a right which Plaintiffs exercised to retrieve and

produce documents in response to Sigmapharm's sampling requests.  *See, e.g.*, *Collins v.*

*Easynews, Inc.*, No. A-06-CA-451, 2008 WL 11405990, at *3 (W.D. Tex. Feb. 6, 2008) (plaintiff

filed suit in June 2006 and defendant transferred all assets as part of sale in November 2006; no

reference to defendant retaining right of access and new owners declined to cooperate in providing

information; even so, court found no spoliation because movant failed to show "any evidence [was]

actually destroyed as a result of the asset sale").  As for Sigmapharm's audit, Plaintiffs conducted

an extensive, months-long search for documents responsive to the requests Sigmapharm actually

made, and produced all non-privileged documents located.

---

Mr. Cowhey's large team of at least five individuals who have worked with him on this engagement over the past five
years.  (T27:2-11.)  Plaintiffs reserve all rights.

53.     Because Sigmapharm failed to (and in fact cannot) establish that Plaintiffs lost, destroyed, or concealed any documents, Sigmapharm obviously cannot establish that Plaintiffs did any of those things in bad faith and with the intent to deprive Sigmapharm of evidence.  As reflected in Sigmapharm's proposed orders (SP. Br. Exs. 1-2), Sigmapharm seeks the most extreme of penalties—specifically, a complete dismissal of all of Plaintiffs' claims, entry of judgment in favor of Sigmapharm's on all counterclaims, and a check for $4 million representing the estate's remaining cash reserves.  And the alternative penalties Sigmapharm seeks are just as extreme, *i.e.*, precluding any evidence, including expert testimony, concerning Plaintiffs' accounting, the audit packages, and damages, as well as an adverse inference.  As the absurd relief underscores, Sigmapharm's motion is nothing more than a last-minute, bad faith ploy to avoid liability arising from its unlawful termination and breach of the Agreement, undo this Court's decision on summary judgment, and avoid the trial.

54.     The Third Circuit has made clear that "a finding of bad faith is pivotal to a spoliation determination."  *Bull*, 665 F.3d at 79; *see Kuhar v. Petzl Co.*, No. CV 16-0395 (JBS/JS), 2018 WL 6363747, at *5 (D.N.J. Nov. 16, 2018), *report and recommendation adopted*, No. CV 16-395 (JBS-JS), 2018 WL 6331675 (D.N.J. Dec. 4, 2018) ("[O]nly under certain circumstances should the nonproduction of evidence be 'rightfully characterized as spoliation.'  This is true because the crux of such a determination must ultimately rest on a finding of intent. The intent which must be shown is that evidence was destroyed in order to prevent it from being used by the adverse party.") (quoting *Bull*, 665 F.3d at 73, 79).  "In order to find plaintiffs acted in bad faith, the Court must find that plaintiffs 'intended to impair the ability of [defendants] to defend [themselves].'"  *Kuhar*, 2018 WL 6363747, at *7 (alterations in original) (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 80 (3d Cir. 1994)); *see, e.g., Orologio of Short Hills Inc. v. Swatch Grp. (U.S.)*, 653 F.

App'x 134, 138, 145 (3d Cir. 2016) (where defendant authorized the destruction of television commercials during the pendency of the litigation, affirming finding of no bad faith (and thus no spoliation) where the Court "discerned no allegation by [the plaintiff] of a nefarious plot to destroy evidence," despite the defendant being on notice of its duty to preserve the tapes).

55.     And the "particularly harsh sanctions" Sigmapharm seeks here (dismissal, judgment, and an adverse inference) "require ***clear and convincing evidence*** that the spoliating party acted with the 'intent to actually deprive another party of evidence.'" *Manning*, 2021 WL 3557582, at *10 n.7 (internal quotation marks and citation omitted, emphasis added) (quoting, *inter alia*, Fed. R. Civ. P. 37(e)(2)).[11]  Moreover, "a dispositive sanction is a last resort and should be imposed if no alternative remedy is available." *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 84 (3d Cir. 2019) (internal quotation marks and citation omitted).

56.     Here, Sigmapharm does not present any evidence that Plaintiffs lost, destroyed, or concealed any evidence, much less clear and convincing proof that Plaintiffs did any of those things, and that they did so willfully and in bad faith in order to deprive Sigmapharm of any such evidence, as is required for Sigmapharm to establish entitlement to the sanctions it seeks.  That is yet another reason, among many, to reject Sigmapharm's motion.[12]

---

[11] Most of the cases cited by Sigmapharm predate the Third Circuit's 2012 decision in *Bull* and the 2015 amendments to Rule 37. *See, e.g., Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332, 337 (D.N.J. 2004) ("Samsung provides no, and this Court did not find any case law in this circuit that requires a finding of bad faith before allowing a spoliation inference."); *see Travelers Prop. Cas. Co. of Am. v. Cooper Crouse-Hinds, LLC*, No. CIV. 05-CV-6399, 2007 WL 2571450, at *6 n.35 (E.D. Pa. Aug. 31, 2007) (same); *see generally Eur. v. Equinox Holdings, Inc.*, No. 20CV7787JGKKHP, 2022 WL 832027, at *4 (S.D.N.Y. Mar. 21, 2022) ("To the extent Plaintiff cites caselaw pre-dating the 2015 amendments to Rule 37 to argue that the most severe sanctions under subsection (e)(2) can be imposed based on a finding of negligence or gross negligence, her reliance is misplaced. Amended Rule 37 rejects that negligently destroying ESI satisfies the culpable state of mind that warrants severe spoliation sanctions[.]") (internal quotation marks and citation omitted; alteration in the original).

[12] The cases Sigmapharm relies upon have no relevance here. For starters, they involve situations where litigants actually lost or destroyed documents.  That dispositive difference aside, the litigants in those cases also acted with intent to deprive the counterparty of evidence.  None of those circumstances are present here. *See, e.g., Philips Elecs. N. Am. Corp. v. BC Tech.*, 773 F. Supp. 2d 1149, 1163 (D. Utah 2011) (hours after the court ordered defendant to stop deleting files and to turn over certain documents, "executives and employees began deleting a massive number of files from their computers"; and two days after the court ordered defendant to provide access to its ESI, an employee of

57.     Lastly, Sigmapharm's request for yet another evidentiary hearing (the other one being on its *Daubert* motion) is a transparent attempt to waste time and further delay the trial. Sigmapharm asserts that it is "entitled" to a hearing (SP Br. at 35), yet it cites not a single case that establishes such a right.  Instead, Sigmapharm cites a few cases that happen to mention in passing that a hearing was held, without even suggesting, much less stating, that a court has to waste time with a hearing every time a litigant files a spoliation motion.  That obviously is not the law.

58.     "Although a court may, in its discretion, hold a hearing on a sanctions motion brought under Rule 37, it is appropriate to refrain from holding such a hearing where a thorough written record has been presented and the respective positions of the parties are clear."  *Jay v. Spectrum Brands Holdings, Inc.*, No. 13 CIV. 8137 LTS DF, 2015 WL 6437581, at *6 (S.D.N.Y. Oct. 20, 2015) (citations omitted).  "Only where the court imposes sanctions that require a finding of willfulness is an evidentiary hearing required."  *Id.* (citation omitted).  Obviously, then, a hearing is meant to afford protections to the party accused of spoliation; it is *not* an "entitlement" of litigants advancing bogus claims of spoliation hoping to fish for support.

59.     Here, the record is clear: no spoliation occurred.  After more than four years of litigation, the time has come to bring this case to an end.  The Court should reject Sigmapharm's meritless motion and unnecessary request for a hearing, and proceed with the trial.

---

defendant deleted and wiped many thousands of files from his laptop); *Brown v. Certain Underwriters at Lloyds, London*, No. 16-CV-02737, 2017 WL 2536419, at *2 (E.D. Pa. June 12, 2017) (lost cell phone, and litigant showed a "proclivity . . . to lie under oath and fabricate evidence"); *Clientron Corp. v. Devon IT, Inc.*, 310 F.R.D. 262, 268 (E.D. Pa. 2015) ("Bennett routinely deleted emails from his personal account not only after he knew there were several disputes with Clientron, but also after Clientron filed its complaint in this case."); *Capogrosso v. 30 River Ct. E. Urb. Renewal Co.*, 482 F. App'x 677, 682 (3d Cir. 2012) ("deliberate disposal of the property").

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully submit that the Court should deny

Sigmapharm's Motion in its entirety.

Dated: October 11, 2022                    Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

s/ *Reynold Lambert*
Reynold Lambert, Esq.
Wojciech F. Jung, Esq.
Gavin J. Rooney, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-24000 (Facsimile)
rlambert@lowenstein.com
wjung@lowenstein.com
grooney@lowenstein.com

*Counsel for Plaintiffs*