**FILED**

Jeanne A. Naughton, CLERK

**October 27, 2022**

United States Bankruptcy Court
Newark, NJ

By: *Juan Filgueiras, Deputy*

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| In Re<br>TRI HARBOR HOLDINGS CORPORATION, *et al.,*[1]<br><br>Debtor. | Case No.:    19-13448 (VFP)<br><br>Chapter:    11 |
| KAVOD PHARMACEUTICALS LLC (*f/k/a* RISING PHARMACEUTICALS, LLC, *f/k/a* RISING PHARMACEUTICALS, INC.) and TRI HARBOR HOLDINGS CORPORATION (*f/k/a* ACETO CORPORATION),<br><br>Plaintiffs,<br>v.<br>SIGMAPHARM LABORATORIES, LLC,<br>Defendant. | Adv. Pro. No.: 19-2053 (VFP)<br><br>Judge Vincent F. Papalia |

### OPINION GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO LIMIT OR BAR EXPERT TESTIMONY OF DEFENDANT'S EXPERT, GREGORY COWHEY

**LOWENSTEIN SANDLER LLP**
**Attorneys for Plaintiffs, Kavod Pharmaceuticals LLC**
**(*f/k/a* Rising Pharmaceuticals, LLC, *f/k/a* Rising**
**Pharmaceuticals, Inc.) and Tri Harbor Holdings**
**Corporation (*f/k/a* Aceto Corporation)**
Reynold Lambert, Esq.
Wojciech F. Jung, Esq.
Gavin J. Rooney, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068

**ELLIOTT GREENLEAF, P.C.**
**Attorneys for Defendant,**
**Sigmapharm Laboratories, LLC**
Henry F. Siedzikowski, Esq.
Andrew Estepani, Esq.
Timothy Myers, Esq.
Elliott Greenleaf, P.C.
925 Harvest Drive, Ste. 300
Blue Bell, PA 19422

---

[1] The Liquidating Debtors in the chapter 11 cases and the last four digits of each Liquidating Debtor's taxpayer identification number are as follows: Tri Harbor Holdings Corporation (f/k/a Aceto Corporation) (0520); Tri Harbor Chemical Holdings LLC (f/k/a Aceto Agricultural Chemicals LLC, f/k/a Aceto Agricultural Chemicals Corporation) (3948); Tri Harbor Realty LLC (f/k/a Aceto Realty LLC) (7634); Kavod Pharmaceuticals LLC (f/k/a Rising Pharmaceuticals, LLC, f/k/a Rising Pharmaceuticals, Inc.) (7959); Kavod Health LLC (f/k/a Rising Health, LLC) (1562); Kavris Health LLC (f/k/a Acetris Health, LLC) (3236); KAVACK Pharmaceuticals LLC (f/k/a PACK Pharmaceuticals, LLC) (2525); Arsynco, Inc. (7392); and Acci Realty Corp. (4433).

**HONORABLE VINCENT F. PAPALIA**
**United States Bankruptcy Judge**

## I.    INTRODUCTION

This matter comes before the Court on the motion (the "Motion") filed by the plaintiffs, which are two of the nine jointly administered Debtor-entities, Kavod Pharmaceuticals LLC, f/k/a Rising Pharmaceuticals, LLC f/k/a Rising Pharmaceuticals, Inc. ("Rising"), and Tri Harbor Holdings Corp., f/k/a Aceto Corporation ("Aceto") (collectively, the "Plaintiffs")  to limit or to bar the testimony of Gregory Cowhey ("Mr. Cowhey"), the financial expert for defendant Sigmapharm Pharmaceuticals, LLC ("Sigmapharm").[2]  Sigmapharm filed an objection, and the Plaintiffs filed a reply.  Plaintiffs requested that this matter be decided on the papers, and Sigmapharm did not object.

## II.    JURISDICTIONAL STATEMENT

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the Standing Orders of Reference entered by the United States District Court on July 10, 1984 and amended on September 18, 2012.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) [claims allowance] and (O).  Venue is proper in this Court under 28 U.S.C. § 1408.  The Court issues the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such.

---

[2] The remaining seven Debtors, apart from Rising and Aceto, are: (i) Tri Harbor Chemical Holdings LLC (f/k/a Aceto Agricultural Chemicals LLC, f/k/a Aceto Agricultural Chemicals Corporation); (ii) Tri Harbor Realty LLC (f/k/a Aceto Realty LLC); (iii) Kavod Health LLC (f/k/a Rising Health, LLC); (iv) Kavris Health LLC (f/k/a Acetris Health, LLC); (v) KAVACK Pharmaceuticals LLC (f/k/a PACK Pharmaceuticals, LLC); (vi) Arsynco, Inc.; and (vii) Acci Realty Corp.  All nine Debtors are collectively referred to as the "Debtors."

Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

### III.   STATEMENT OF RELEVANT FACTS

#### A.   <u>Summary of Parties' Dispute and Proceedings to Date</u>

The dispute between the parties arises from a June 22, 2006 *Master Product Development and Collaboration Agreement* (the "Agreement") for producing, marketing and sharing profits from the sale of pharmaceuticals.   Other details concerning the Agreement and the relationship between the parties are included in this Court's October 5, 2021 Opinion that granted in part and denied in part the parties' separate motions for summary judgment.   *Kavod Pharmaceuticals LLC v. Sigmapharm Labs., LLC (In re Tri Harbor Holdings Corp.)*, 2021 WL 4877265 (Bankr. D.N.J. Oct. 5, 2021) (the "Opinion").[3]   The findings of fact and conclusions of law from the Opinion are incorporated herein by reference.   To the extent that this summary deviates from the Opinion, the Opinion controls.

In summary, the parties' conflict began when Sigmapharm asked Rising in May 2015 to account for an increase in reported chargebacks, rebates and expenses against sales that reduced the parties' shared net profits (which, under the Agreement, were paid 55% to Rising and 45% to Sigmapharm).   Later that year, Sigmapharm requested the audit provided for under § 8.6 of the Agreement.   After some exchange of data, Sigmapharm sent Rising a December 16, 2016 letter that largely liquidated Sigmapharm's claims for underpaid profits from April 2009 (the beginning of the productive life of the Agreement) through March 31, 2016 ("Audit Period I") and reduced certain of those claims to invoices.[4]   Sigmapharm still had questions about (i) CMS (Medicaid)

---

[3] The Court signed the Opinion on October 5, 2021 and the accompanying Order on October 6, 2021 but deferred docketing them until October 18, 2021 to give the parties the opportunity to seek redaction of references to evidentiary material that they filed under seal.  Neither party requested any redaction.
[4] *Kavod*, 2021 WL 4877265, at *8-*9.

rebates; and (ii) a single credit memo for $495,906.[5]   Additionally, by the end of 2017, the

Plaintiffs had paid over $9 million to Sigmapharm for a subsequent underpayment of profits for

the July 1, 2016 through June 30, 2017 fiscal year.[6]   During this period (2017 to early 2018), the

parties continued to communicate and exchange at least some information.[7]

On March 23, 2018, Sigmapharm sent Rising a letter purporting to terminate the

Agreement for Rising's alleged breach of the Agreement based in large part on Plaintiffs' alleged

failure to provide the supporting documentation for Plaintiffs' profit share calculations and

Sigmapharm's asserted inability to perform the audit as a result.[8]   On that same day, Sigmapharm

also sued Rising and Aceto in United States District Court, Eastern District of Pennsylvania (the

"District Court") on breach of contract and commercial tort claims (Dkt. No. 2:18-cv-1238) (the

"District Court Action").[9]   In the District Court Action, Sigmapharm also continued to press for

the audit.   Plaintiffs' motion to compel arbitration of Sigmapharm's claims was granted by the

District Court, which also required Rising to preserve the records that could be relevant to the

audit.[10] In the arbitration, Sigmapharm again moved to compel the audit.[11]

The District Court Action and motion practice in the Court-ordered arbitration were stayed

when the nine (9) Debtors filed their voluntary Chapter 11 petitions on February 18, 2019.[12]   Under

an April 10, 2019 Order, the Debtor promptly sold to Shore Suven, Inc. ("Shore Suven") that

portion of Debtor's pharma business (the "Pharma Business") in which Rising had previously

---

[5] *Kavod*, 2021 WL 4877265, at *8-*9.   According to Sigmapharm's Claims Nos. 155-2 and 162-1, all the claims set
forth in the December 16, 2016 Letter were addressed, except for a claim of $1,109,491.91 based on a reduction of
the cost of goods sold ("COGS") in Audit Period I.  *Id*. at n.48.  According to Plaintiffs, the parties agreed to defer the
COGS issue to a later date.  *Id*.  As a result, this issue is reserved for trial.  *Id.*
[6] *Kavod*, 2021 WL 4877265, at *11-*12.
[7] *Id*. at * 12.
[8] *Id*. at *13.
[9] *Id*. at *6, *13, *14, *19.
[10] *Id*. at *14.
[11] *Id*. at *15.
[12] *Id*. at *15.

participated with Sigmapharm. The Agreement was not listed among the contracts assigned by Rising and assumed by Shore Suven when the sale closed on April 19, 2019.[13] Certain disputes arose between the parties regarding the extent to which Shore Suven may have acquired books and records germane to Sigmapharm's discovery demands and as to the manner in which Rising accounted for its credit liability to its customers on products covered by the Agreement after Rising sold its assets to Shore Suven.[14]

On July 18, 2019, Sigmapharm filed identical proofs of claim for damages in the Rising and Aceto bankruptcy cases (Rising Claim No. 162-1 and Aceto Claim No. 155-2).[15] These proofs of claim included certain liquidated demands for damages from Audit Period I (April 2009 through March 31, 2016).[16] Also on July 18, 2019, Rising and Aceto filed the instant Adversary Complaint that sought reduction or disallowance of Sigmapharm's proofs of claims, damages for breach of contract and other relief.[17] Sigmapharm's Answer and Counterclaim incorporated by reference (among other Court documents) Sigmapharm's March 23, 2018 District Court Complaint and its Proofs of Claim.[18] This Adversary Complaint is the "vehicle for the Plaintiffs and Sigmapharm to resolve their dispute and damage demands in the bankruptcy case."[19]

As noted above, the parties filed separate motions for summary judgment in early 2021. While those motions were pending, the Court decided a sequence of discovery motions, culminating in a June 7, 2021 Order that granted Sigmapharm's motion to compel Rising to

---

[13] *Id* at *15; June 17, 2019 Disclosure Statement, at 42, Main Dkt. No. 640 (for closing date of Shore Suven sale).

[14] *Kavod*, 2021 WL 4877265, at *16.

[15] Jan. 11, 2021 Decl. of Reynold Lambert, Esq., Exs. H, K, Dkt. No. 17-2.

[16] Jan. 11, 2021 Decl. of Reynold Lambert, Esq., Exs. H, K, Dkt. No. 17-2. Specifically, the Proofs of Claim sought with respect to Audit Period I: (i) $1,109,491.81, the duplicate of an invoice included in the December 16, 2016 letter; (ii) $154,728 interest thereon through the petition date; and (iii) at least $14,734 in interest on CMS Medicaid rebates that Rising claimed before actually paying them.

[17] *Kavod*, 2021 WL 4877265, at *16-*17.

[18] *Kavod*, 2021 WL 4877265, at *17-*18.

[19] *Kavod*, 2021 WL 4877265, at *18.

comply with the audit requirements of the June 22, 2006 Agreement.[20] On October 5, 2021, the Court issued the  Opinion that granted in part and denied in part the relief requested by the parties on summary judgment.[21]   In particular (and as described in greater detail below as relevant), the Court:  (i) determined that Sigmapharm breached the termination and notice provisions of the Agreement (§§ 12 and 14) (the "Termination Provisions") by not giving Rising proper notice of termination; (ii) dismissed with prejudice certain of Sigmapharm's money-damage claims against Plaintiffs, particularly for interest and attorneys fees; (iii) dismissed without prejudice certain other of Sigmapharm's money-damage claims against Plaintiffs; (iv) dismissed with prejudice Sigmapharm's common-law claims against Plaintiffs; and (v) denied Sigmapharm's motion to dismiss Plaintiffs' Complaint on grounds of Plaintiffs' alleged breach of the audit provisions of the Agreement (§§ 8.6, 1.36 and 1.37) (the "Audit Provisions").  The Court deferred to trial the determination of Plaintiffs' liability and damages to Sigmapharm, as these issues "involve multiple disputed questions of fact and mixed questions of fact and law and are reserved for determination at trial."[22]

### B.  The Parties' Experts

The October 5, 2021 Opinion set the stage for final discovery and *in limine* motion practice prior to trial.  The foundation of the dispute remains Sigmapharm's allegation that Plaintiffs breached the Agreement by not providing the "transparent" records needed to produce a timely, complete audit and how that claim may be impacted by the Court's determination that Sigmapharm breached the Agreement by giving Rising improper notice of termination.  Each party retained a single financial expert:

---

[20] *Kavod*, 2021 WL 4877265, at *20-*21.
[21] *Kavod*, 2021 WL 4877265, at *45-*46.
[22] *Kavod*, 2021 WL 4877265, at *45-*46.

(i)     Plaintiffs retained Ms. Laureen M. Ryan, Managing Director, Alvarez & Marsal ("A&M"), B.S. (Accounting), CPA, ABV, CDVB, CIRA, CFE ("Ms. Ryan");[23] and

(ii)    Sigmapharm retained Mr. Gregory Cowhey, Principal, Financial Investigations and Dispute Services, RSM US LLP ("RSM"), B.S. (Finance), MBA (Accounting), ASA, IBA, CVA, CFE, NAFE ("Mr. Cowhey").

Each party has exchanged and filed three to five different submissions (reports, affidavits and/or deposition testimony), most of which include extensive tables and data, as well as the related analyses. A complete set of each party's reports (along with Mr. Cowhey's deposition testimony) is included in Rising's Motion as tabled below:

Laureen M. Ryan[24]

| | | |
|---|---|---|
| Expert Report | April 2, 2021 | Ex. A, Dkt. No. 99-2 |
| Pl. Submission | August 5, 2021 | Ex. D, Dkt. No. 99-2 |
| Expert Rebuttal | January 6, 2022 | Ex. G, Dkt. No. 99-2 |

Gregory Cowhey

| | | |
|---|---|---|
| Expert Decl. | April 2, 2021 | Ex. B, Dkt. No. 99-2 |
| Expert Rebuttal | May 18, 2021 | Ex. C, Dkt. No. 99-2 |
| Cowhey Decl. | August 18, 2021 | Ex. E, Dkt. No. 99-2 |
| Expert Report | October 22, 2021 | Ex. F, Dkt. No. 99-2 |
| Deposition Tr. | March 10, 2022 | Ex. H, Dkt. No. 99-2 |

Each expert produced an initial Report on April 2, 2021 in compliance with the March 12, 2021 Third Amended Joint Scheduling Order.[25] Based on the record before the Court, it appears that Rising made at least four (4) data productions to Sigmapharm on the following dates:

January 21, 2019 (for District Court arbitration)
May 15, 2020 (for Bankruptcy Court litigation)
October 1, 2020 (includes backup documentation for the May 15, 2020 production)[26]
August 5, 2021 (in response to June 7, 2021 Bankruptcy Court Order).[27]

---

[23] Each expert's April 2, 2021 Report, including each expert's biographical information, and all subsequent expert reports were filed under seal.
[24] Ms. Ryan was deposed on March 11, 2022, but the parties have submitted only short excerpts of her deposition transcript.
[25] Mar. 12, 2021 3rd Mod. JSO ¶ 5, Dkt. No. 26.
[26] Ms. Ryan stated in her January 6, 2022 Report that A&M was engaged early in 2020, after the January 21, 2019 Audit Package was submitted, and that Rising's Eugene Hughes, not she, prepared the May 15, 2020 Audit Package. Declaration of Reynold Lambert, Esq., Jan. 6, 2022 Ryan Report, at 23, Ex. G, Dkt. No. 99-2 ("Lambert Decl.").
[27] Lambert Decl., Aug. 18, 2021 Cowhey Report ¶ 4 n.1, Ex. E, Dkt. No. 99-2.

Sigmapharm claims that these productions are deficient in various substantive respects.

Mr. Cowhey's April 2, 2021 Report is a twenty-four (24) paragraph text declaration, in which he defines the scope of his retention as:

> RSM performed audit procedures related to the partner statements [profit statements] prepared by Rising and provided to Sigmapharm over the term of their business relationship defined as "Audit Period II."[28]

Mr. Cowhey's April 2, 2021 Report does not specifically define "Audit Period II"; however, it is defined by both parties elsewhere as April 1, 2016 to April 19, 2019 (the date on which the Shore Suven sale closed).[29] Mr. Cowhey avers that Rising did not produce adequate records (especially supporting documentation) "to allow RSM to develop sufficient audit evidence, complete the audit process, and issue a finding as to the accuracy and reliability of the partner profit sharing reports."[30]

Cowhey's Declaration largely criticizes Plaintiffs for their failure to provide backup documentation for Sigmapharm's October 1, 2020 audit sampling requests for Audit Period II (using bare references to sampling numbers that are sometimes difficult to discern);[31] cites the August 18, 2017 Report prepared by EisnerAmper LLP ("Eisner") at Rising's request to identify issues relating to Rising's accounting practices (particularly as they relate to profit sharing with partners);[32] presumes that these practices existed before and after the year investigated by Eisner;[33] questioned line-item discrepancies in audit packages that Rising sent Sigmapharm on January 21, 2019 (for the District Court arbitration) and on May 15, 2020 (for the Bankruptcy Court litigation);[34] complained that no one at Rising was able to identify a custodian of records;[35]

---

[28] Lambert Decl., Apr. 2, 2021 Cowhey Report ¶ 5, Ex. B, Dkt. No. 99-2.
[29] *See Kavod*, 2021 WL 4877265, at *15; Disclosure Statement, at 42, Main Dkt. No. 640 (as to Shore Suven sale closing); Pls.' Br. at ¶ 36, citing to Lambert Decl., Ex. D at 3 (as to Audit Period II definition).
[30] Lambert Decl., Apr. 2, 2021 Cowhey Report ¶ 5, Ex. B, Dkt. No. 99-2.
[31] *Id*. at ¶ 8, Ex. B, Dkt. No. 99-2.
[32] *Id*. at ¶¶ 9-12, Ex. B, Dkt. No. 99-2.
[33] *Id*. at ¶ 13, Ex. B, Dkt. No. 99-2.
[34] *Id*. at ¶ 14, Ex. B; Oct. 22, 2021 Cowhey Report, at 7, Ex. F, Dkt. No. 99-2.
[35] Lambert Decl., Apr. 2, 2021 Cowhey Report at ¶¶ 16-19, Ex. B, Dkt. No. 99-2.

comments on the December 18, 2020 deposition of Rising's Eugene Hughes;[36] and concludes that

Rising's documents are generally unreliable:

> The insufficient support for the samples fails to provide reasonable confidence that
> the financial records of Rising, or any purported damages claims on which they are
> based, are accurately stated.[37]

Notwithstanding those reservations, Mr. Cowhey extracts, from a September 15, 2017 analysis

that Rising generated (Cowhey assumes in response to the Eisner August 18, 2017 report), Eisner's

computation of an additional $1,120,953 due Sigmapharm on $24,435,461 in sales for fiscal year

2017.[38]  On that basis, Mr. Cowhey "extrapolates backwards" by using the same "error rate" for

each of the seven (7) prior years and presumes that an additional $7 million was due Sigmapharm

for the 2009-2016 period, even though Sigmapharm itself had already largely liquidated those

damages (in its December 16, 2016 letter and then in its July 18, 2019 Proofs of Claim Nos. 155-

2 and 162-1, as described above).[39]

In closing, Mr. Cowhey comments on his understanding of the effect of the Shore Suven

sale on Sigmapharm's claim:

> It is alarming that liabilities assumed by Shore Suven as part of their acquisition of
> the assets of Rising were included in Rising's profit share statement to
> Sigmapharm, and subsequent claims against Sigmapharm[.] If Shore Suven
> "assumes" a liability from Rising, then Rising no longer has a claim for same
> against Sigmapharm; otherwise Rising would be compensated twice for the same
> transaction.[40]

Mr. Cowhey concluded that he could not provide "a professional audit opinion" absent cooperation

from Plaintiffs.[41]

---

[36] *Id*. at ¶¶ 16, 19, Ex. B, Dkt. No. 99-2.
[37] *Id*. at ¶ 18, Ex. B, Dkt. No. 99-2.
[38] *Id*. at ¶ 21, Ex. B, Dkt. No. 99-2.
[39] *Id*. at ¶ 21, Ex. B, Dkt. No. 99-2.
[40] *Id*. at ¶ 23, Ex. B, Dkt. No. 99-2.
[41] *Id*. at ¶ 24, Ex. B, Dkt. No. 99-2.

The Court thereafter entered the June 7, 2021 Order on Sigmapharm's motion to enforce the audit requirement in the Agreement.[42]  That Order expressly addressed Mr. Cowhey's April 2, 2021 Report and required Plaintiffs:  (i) to respond to the deficiencies asserted by Mr. Cowhey in the sampling requests that he referenced; (ii) produce the documents identified in Mr. Cowhey's April 2, 2021 Report (the "Documents") to the extent that they exist and had not previously been produced; and (iii) advise Sigmapharm in writing if the Documents did not exist; were not within Plaintiffs' custody or control; or had previously been produced (identifying where that was done), as well as continuing to respond to document demands under Fed. R. Bankr. P. 7034.[43]  The June 7, 2021 Order included production deadlines and protocols for responding to production or to non-production and stayed expert discovery while this production proceeded.[44]

Mr. Cowhey subsequently issued an October 22, 2021 document entitled "Expert Report" that addressed asserted new and continuing deficiencies in Plaintiffs' document productions, including under this Court's June 7, 2021 Order, and also reaffirmed the damages claims as asserted in his April 2, 2021 Report;[45] repeated  his opinion that Eisner's calculated underpayment from 2017 should be extrapolated universally to 2009-2016 (Audit Period I)[46] (which Sigmapharm largely liquidated in the December 16, 2016 letter and in Claim Nos. 155-2 and 162-1); and raised other issues regarding Ms. Ryan's Reports unrelated to Sigmapharm's affirmative damages claims, but rather to the deficiencies in Ms. Ryan's lost profits analyses and Plaintiffs' document production.[47]

---

[42] June 7, 2021 Order, Dkt. No. 64.
[43] *Id*.
[44] *Id*.
[45] Lambert Decl., Oct. 22, 2021 Cowhey Report, Ex. F, Dkt. No. 99-2.
[46] *Id*. at ¶ 33 and n.27.
[47] *Id*. at ¶¶ 18, 32-33, 34, 36-41, 46-47, Ex. F, Dkt. No. 99-2.

Mr. Cowhey was deposed on March 10, 2022. The Plaintiffs have submitted a complete transcript of Mr. Cowhey's deposition, which includes the portion of Mr. Cowhey's testimony Plaintiffs seek to exclude as a "new" expert opinion.[48] This Motion followed on April 26, 2022.

## IV.    ARGUMENTS OF PARTIES

The Plaintiffs argue that the Court should preclude Mr. Cowhey from testifying at trial:

(i)     about opinions that are in his Reports but that he disavowed during the March 10, 2022 deposition;

(ii)    about opinions that he advanced in his March 10, 2022 deposition that were not included in his Reports (particularly as to lost profits and as to the allegedly flawed discount rate used by Ms. Ryan);

(iii)   as to opinions that are merely conclusory or net, particularly as he proposed no counter-methodology to Ms. Ryan's methodology relating to her sales forecasts; as to inclusion or exclusion of certain products in the forecast; and as to metadata.[49]

Sigmapharm in its objection responded to these allegations by essentially disagreeing with them in all respects:

(i)     Mr. Cowhey did not disavow his Reports during his March 10, 2022 deposition; to the extent that he has not been able to render an opinion as to damages, it is because Plaintiffs have not given him enough data to analyze or conduct a proper audit;

(ii)    Mr. Cowhey did not offer new opinions at deposition; he already criticized Ms. Ryan's methodology (particularly as to discount rate) in his May 18, 2021 Report and only "elaborated" upon it in his deposition testimony;

(iii)   Mr. Cowhey's opinions are supported by fact and methodology included in Mr. Cowhey's critiques of Ms. Ryan's opinions;

(iv)    Mr. Cowhey's "subjective critiques" of Ms. Ryan's Reports are not grounds for precluding his testimony; and

(v)     Mr. Cowhey's critiques of Ms. Ryan's methodology (discount rate, inclusion/exclusion of products, use of estimated rather than actual sales, inability to explain discrepancy in historical figures) are justified.[50]

---

[48] Lambert Decl., Mar. 10, 2022 Cowhey Dep., Ex. H, Dkt. No. 99-2.
[49] Pls.' Br., Dkt. No. 99-1.
[50] Sigmapharm Br., Dkt. No. 102.

Sigmapharm generally concludes that Plaintiffs' arguments go more to the weight of credibility to be afforded Mr. Cowhey's expert testimony, rather than to its admissibility, and that any issues Plaintiffs' may have with Mr. Cowhey's opinions (including his reliance on the Eisner report) may be addressed on cross-examination.[51]

## V.    PLAINTIFFS' MOTION TO EXCLUDE CERTAIN ASPECTS OF MR. COWHEY'S PROPOSED EXPERT TESTIMONY IS GRANTED IN PART AND DENIED IN PART

As noted above, Plaintiffs' Motion to exclude certain portions of Mr. Cowhey's proposed expert testimony focuses on the following areas.  First, Plaintiffs seek to exclude all Mr. Cowhey's proposed testimony regarding the damages Sigmapharm allegedly suffered as the result of Plaintiffs' asserted breach of the Audit Provisions of the Agreement based on his alleged disavowal of any such opinion and its speculative nature.  Next, Plaintiffs seek to exclude portions of Mr. Cowhey's proposed testimony that attacks the Lost Profits calculations and proposed testimony of Plaintiffs' financial expert, Ms. Ryan of A&M, including a challenge to a portion of that testimony as a "new opinion" being offered by Mr. Cowhey.  Third, Plaintiffs challenge certain portions of his proposed testimony on various topics as conclusory, unreliable or based on false factual assumptions.  Each of these topics will be addressed in order.

### A. Mr. Cowhey's Proposed Opinion Testimony As To Sigmapharm's Damages During Audit Period I (2009 to March 31, 2016) is Barred As Speculative and Not Properly Supported

Through Mr. Cowhey's Reports, Sigmapharm offered certain opinion testimony as to damages allegedly suffered by Sigmapharm during the period from April 2009 to March 31, 2016 (Audit Period I)[52] due to Plaintiffs' asserted breach of the Audit Provisions of the Agreement.

---

[51] Sigmapharm Br., at 6, 7, 17, 22, 25, 27, Dkt. No. 102.

[52] Pls.' Br. ¶ 41, Dkt. No. 99-1; Lambert Decl. Apr. 2, 2021 Cowhey Report ¶ 21, Ex. B; Oct. 22, 2021 Cowhey Report ¶ 33, Ex. F, Dkt. No. 99-2.

Plaintiffs argue that his proposed testimony in this regard suffers from several fatal defects. First, Plaintiffs assert that Mr. Cowhey disavowed giving any opinion testimony as to the damages allegedly suffered by Sigmapharm.[53] Next, Plaintiffs argue that Mr. Cowhey and Sigmapharm have taken the position that he cannot issue an opinion as to lost profits with the reasonable degree of certainty required to do so.[54] Third, Plaintiffs assert that Mr. Cowhey's calculation of Sigmapharm's lost profits by applying the same error rate from a 2017 recast of lost profits to the entire prior seven years included in Audit Period I, without citing or relying upon any auditing or other recognized principle or methodology that that would allow him to do so, constitutes impermissible and inadmissible speculation.[55]

Plaintiffs further assert that the speculative nature of Mr. Cowhey's testimony in this regard is highlighted by: (i) Sigmapharm's failure to pursue an audit of Audit Period I in this litigation, as evidenced by Sigmapharm's own sampling requests, which relate exclusively to Audit Period II (April 1, 2016 to April 19, 2019);[56] (ii) Sigmapharm's previous "in-house" audit of the Audit Period I timeframe, which was concluded (according to Plaintiffs), except for a limited issue relating to Cost of Goods Sold ("COGS") that the parties agreed to defer to another day; and (iii) Sigmapharm's own Proofs of Claim, which did not assert damages relating to Audit Period I, except for the COGS issue.[57]

In response, Sigmapharm argues that Mr. Cowhey did not disavow any opinions on Sigmapharm's lost profits. Instead, he testified that he was unable to calculate those lost profits due to Plaintiffs' failure to provide the necessary documentation and information to do so, despite two Court Orders requiring them to preserve and/or produce that information to the extent they

---

[53] Pls.' Br. ¶ 56, Dkt. No. 99-1.
[54] Pls.' Br. ¶ 46, Dkt. No. 99-1.
[55] Id.
[56] Lambert Decl. Aug. 5, 2021 Ryan Report, at 3, Ex. D, Dkt. No. 99-2.
[57] Pls.' Reply Br. ¶¶ 10-15, Dkt. No. 104.

had it.  Taking this argument one step further, Sigmapharm argues that Plaintiffs either destroyed or failed to produce the requested information and that, as a result, of this alleged failure to produce and/or spoliation of evidence, this Court should not permit Plaintiffs to benefit from their wrongdoing by excluding Mr. Cowhey's testimony in this regard.  What Sigmapharm does not address are Plaintiffs' arguments that the audit samplings requested and produced in this litigation all relate to Audit Period II (the period starting April 1, 2016 to April 19, 2019) and not Audit Period I (April 2009 to March 31, 2016) or that Sigmapharm already performed an audit (in-house) with respect to Audit Period I; that Rising made additional payments to Sigmapharm pursuant to that audit; and that Sigmapharm did not include Audit Period I in its proof of claim, except for the COGS item.

As is acknowledged by Sigmapharm, Mr. Cowhey testified that he was not able to render an opinion as to Sigmapharm's lost profits to a reasonable degree of professional certainty due to the asserted absence of the underlying documentation and information required under the Agreement.  In this Court's view, that is not a disavowal, but an explanation as to why he was unable to provide that opinion with the required degree of certainty.  This distinction renders inapposite the cases cited by Plaintiffs regarding the asserted "disavowal" of an expert opinion. *See, e.g., Mitchell v. Geo Group, Inc.*, 2022 WL 874287, at *5 (D. Ariz. Mar. 24, 2022) (doctor testified he was not offering any opinion on causation because determining causation was not his function and not relevant to the patient's treatment); *Webb v. Zimmer, Inc.*, 2019 WL 438361, at *11 (E.D.N.Y. Feb. 4, 2019) (expert testified at trial that he was not offering an opinion on an issue that was included in his original report).  Here, in contrast, Mr. Cowhey is saying he was not able to issue any opinion on lost profits with the requisite degree of certainty because of Plaintiffs' failure to provide the underlying documentation and information required by the Agreement -- an issue which goes to the heart of Sigmapharm's affirmative case against Plaintiffs

and Plaintiffs' defenses to it.    Thus, the Court does not accept Plaintiffs' arguments that Mr.

Cowhey "disavowed" his lost profits opinion.

However, what neither Mr. Cowhey nor Sigmapharm explains is how Mr. Cowhey was

able to arrive at an extrapolated lost profits figure for Audit Period I (2009-2016) when he was

admittedly not provided with -- and Sigmapharm did not request -- the audit sampling for that

period and Sigmapharm had already undertaken its own in-house audit of that time period.

Without that information, Mr. Cowhey's conclusions, or better stated, extrapolated estimates of

lost profits during Audit Period I amount to pure speculation and therefore inadmissible expert

testimony, as is described in more detail below.

Plaintiffs argue, and Sigmapharm does not dispute that Mr. Cowhey did not do any of the

testing of the methodology that he said was necessary to perform the extrapolation.[58]    Instead, Mr.

Cowhey himself described his opinion in this regard as a "rough estimate"[59] and provided only his

opinion as to what "the amounts may be."[60]  In fact, Mr. Cowhey's damages calculations for Audit

Period I in his April 2, 2021 Report is limited to a single paragraph, where he reaches an

"approximate" number of $7 million (¶ 21), even though that same report makes clear he only

reviewed the sampling package for Audit Period II.[61]   In that Report, Mr. Cowhey also notes that

from the audit sampling he <u>did</u> review for Audit Period II, he was able to provide a projected

misstatement for that period (of $1,412,056.50) for "actual misstatements that were provided."[62]

This distinction, as described by Mr. Cowhey, further demonstrates why his opinion with respect

---

[58] Lambert Decl., Mar. 10, 2022 Cowhey Dep. Tr. 281:23-287:25, Ex. H, Dkt. No. 99-2; citing to Lambert Decl., Rising Pharmaceuticals, Inc. Audit Testing Summary, Ex. A, Dkt. No. 103-1.
[59] Lambert Decl. Apr. 2, 2021 Cowhey Report at ¶ 21, Ex. B, Dkt. No. 99-2.
[60] Lambert Decl., Mar. 10, 2022 Cowhey Dep. Tr. 197:12-21, Ex. H, Dkt. No. 99-2.
[61] Lambert Decl., Apr. 2, 2021 Cowhey Report ¶ 5, Ex. B, Dkt. No. 99-2.
[62] *Id.* at ¶ 22.  Mr. Cowhey essentially repeats this conclusion in another paragraph in a later report.  Lambert Decl., Oct. 22, 2021 Cowhey Report ¶ 33 and n.27, Ex. F, Dkt. No. 99-2.

to Audit Period I is improperly based and highly speculative, as he simply did not have or review an audit sampling for Audit Period I on which a projected misstatement could be based.

As the result of these omissions and Mr. Cowhey's unsupported application of the 2017 error rate -- representing a single year -- to the seven years included in Audit Period I, Mr. Cowhey's opinions as to Sigmapharm's lost profits during Audit Period I fail to satisfy the requirements of Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), as his testimony on lost profits in Audit Period I is:

- not based on sufficient facts or data, i.e., no Audit Period I sampling was requested or provided;
- not the product of reliable principles and methods, i.e., no testimony as to the basis for his extrapolation methodology as a generally accepted manner of determining lost profits; or
- not a proper application of principles and methods to the facts of this case; i.e., it lacks the necessary reliability and fit because it assumes that the error rate for one year (2017) is the same for seven prior years, even though Mr. Cowhey admittedly did not have or review an audit sampling for Audit Period I.

As such, Mr. Cowhey's proffered testimony in this regard amounts to inadmissible speculation.  *See, e.g., In re TMI Litig.*, 193 F.3d 613, 670 (3d Cir. 1999) (to be reliable and admissible expert opinion "must be based on the methods and procedures of science rather than subjective belief or speculation"); *Worrell v. Elliott & Frantz*, 799 F. Supp. 2d 343, 349 (D.N.J. 2001) ("expert opinion based on speculation, possibilities or contingencies is inadmissible").[63]

Sigmapharm's spoliation argument also fails as this Court does not have evidence before it on this motion that any records have been destroyed or much less that they were destroyed "with the intent to deprive another party of the information's use in the litigation."  Fed. R. Civ. P.

---

[63] These omissions render inapposite the cases cited by Sigmapharm in its Opposition Brief (at 9) in support of its argument that Plaintiffs cannot benefit from that alleged failure to maintain the necessary documentation required by the Agreement's Audit Provisions. Sigmapharm Br., at 9, Dkt. No. 102.  The Court is precluding Mr. Cowhey's proposed testimony as to Sigmapharm's alleged "lost profits" damages for Audit Period I because he simply did not have (and Sigmapharm did not request) the proper factual foundation (i.e., sampling packages for Audit Period I) to issue such an opinion, nor did Mr. Cowhey provide the analytical framework or accepted expert methodology that would allow him to do so.

37(e)(2).[64]  In this regard, Sigmapharm seems to conflate the asserted failure to produce certain

documents or information with the intentional destruction of evidence.  Further, and perhaps more

importantly, this argument goes to the heart of Sigmapharm's entire affirmative breach of contract

case and Plaintiffs' defenses to it; i.e., whether Plaintiffs satisfied the Audit Provisions of the

Agreement.  The alleged violation of these contractual provisions, which has not yet been

determined, would give rise to a breach of contract claim as to which Sigmapharm would be

required to provide adequate proof of its damages, rather than simply extrapolating the error rate

for one year (2017) to prior periods spanning approximately seven years (2009-2016).  *See*

*Garden City Treatment Ctr., Inc. v. Coordinated Health Partners, Inc.,* 852 A.2d 535, 537, 543

(R.I. 2004) (contract provision giving a party a right to audit a subscriber's records for purpose

of determining overpayments did not allow for those overpayments to be determined by

extrapolation).  Thus, Sigmapharm's spoliation argument on this motion fails for lack of proof

and because whether there was the "spoliation" of any evidence and/or whether Plaintiffs failed

to maintain and produce transparent records that would allow for an independent audit pursuant

to the Agreement's Audit Provisions are ultimate and critical issues of fact to be determined at

the trial of this case.

 For these reasons, Plaintiffs' Motion to preclude Mr. Cowhey's proffered testimony as to

damages or lost profits to Sigmapharm for Audit Period I is granted.

### B. Testimony Regarding Mr. Cowhey's Opinion That Criticizes Ms. Ryan's Report for Use of a Companywide Discount Rate Will Be Permitted, Subject to Certain Conditions

Rising also argues that Mr. Cowhey's deposition testimony regarding his criticism of the

discount rate used by Ms. Ryan goes beyond the "Estimated Tax Rate" factor set forth in his May

---

[64] The Court notes that Sigmapharm has recently filed a motion for sanctions based on the alleged spoliation of evidence (Dkt. No. 133), but no evidence of the alleged spoliation was provided on this motion.  The Court will separately decide that motion at a later date.

18, 2021 Rebuttal Report and is actually a "new opinion" not found in his Reports; i.e., that Ms. Ryan improperly used a discount rate applicable to specific products rather than to companywide discount rate.[65]  It is true that Mr. Cowhey's Rebuttal Report focused on the Estimated Tax Rate in criticizing the Discount Rate used by Ms. Ryan and that he did not specifically mention the companywide versus product-line distinction in his Rebuttal Report.  Sigmapharm implicitly acknowledges this, but argues that Mr. Cowhey's testimony in this regard is an "elaboration" of the discount rate criticisms contained in his Report and that, in any event, Plaintiffs are not prejudiced because they had the opportunity to examine him on this issue at his deposition where Plaintiffs elicited this testimony from him.[66]

Though a close call, this Court will deny Plaintiffs' motion at this time as it relates to the companywide versus product-line discount rate issue.  There is no contradiction of Mr. Cowhey's opinions in his Rebuttal Report in this connection, and he did refer to other "inputs" in determining the discount rate, so his testimony regarding the companywide versus product-line distinction is at least arguably an elaboration.  Thus, preclusion of this testimony is not required. *See Hill v. Reederei F. Laeisz G.M.B.H. Rostock*, 435 F.3d 404, 423 (3d Cir.), *cert. denied*, 549 U.S. 820 (2006)  (lower court did not err in admitting expert rebuttal testimony that exceeded scope of original report); *Haskins v. First Am. Title Ins. Co.,* 2013 WL 5410531, at *2 (D.N.J. Sept. 26, 2013) ("expert's rebuttal report should be stricken if it contains new opinions or information which contradicts the expert's initial report"; preclusion is not required if it is merely an "elaboration of and [is] consistent with" the expert's prior opinion).[67]  The weight to be afforded this aspect of Mr. Cowhey's opinion will be determined at trial after cross-examination.

---

[65] Pls.' Br. ¶¶ 58-60, Dkt. No. 99-1.
[66] Sigmapharm Br., at 14-17, Dkt. No. 102.
[67] Plaintiffs argue that *Haskins* is distinguishable because it involved a rebuttal report rather than testimony and because the companywide versus product-line criticism is a net opinion.  However, the Court determines that Mr. Cowhey provided some basis for his opinion as to this criticism in his testimony.  Further, as noted above, he referred to other "inputs" in the calculation and discount rate calculation and the impact they have on each other.  Thus, the

As to the asserted prejudice to Plaintiffs, the Court will address that issue by allowing Plaintiffs to depose Mr. Cowhey before trial (or during a break in trial) on that limited issue, i.e., the alleged flaws in the discount rate as the result of using a companywide discount rate rather than one applicable to specific products, if Plaintiffs wish to do so.  *Hill*, 435 F. 3d at 423 (where surprise or prejudice is alleged as to expert witness testimony, trial court has discretion to recess proceedings to address surprise or prejudice by allowing the opponent to counter the proffered expert testimony).  No testimony by Mr. Cowhey about any other alleged flaw in the discount rate calculation will be permitted.  Further, in testifying at trial on this issue, Mr. Cowhey will not be permitted to introduce or otherwise rely upon documentary or other support that has not been previously provided to Plaintiffs.  And finally, Ms. Ryan will, of course, be permitted to address this criticism, i.e., Mr. Cowhey's "elaboration" regarding the use of a companywide discount rate as compared to a product-line rate, in her testimony.  Thus, Plaintiffs' motion in this regard is denied subject to the protections and conditions described above.

### C.  Mr. Cowhey's Proposed Expert Testimony Regarding Alleged Flawed Legal and Factual Assumptions Relating to the Termination of the Agreement and Rising's Entitlement to Lost Profits Is Not Admissible

Mr. Cowhey's May 18, 2021 Report is entitled "Rebuttal to Expert Report of Laureen M. Ryan, dated April 2, 2021."[68]  In the opening section of that Report, Mr. Cowhey summarizes his comments to Ms. Ryan's April 2, 2021 Report.  The first three of those comments, which the Court believes accurately summarize a portion of the findings in Mr. Cowhey's Report, are based on Mr. Cowhey's apparent belief that Ms. Ryan improperly assumed that: (i) Sigmapharm improperly terminated the Agreement; (ii) the termination was without justification; and (iii) Rising is entitled to theoretical lost future profits for the sale of Sigmapharm products subject to

---

Court will allow this "elaboration" or explanation of his criticism, subject to the further protections described below and Plaintiffs' right to cross-examine him on this issue.

[68] Lambert Decl., May 18, 2021 Cowhey Rebuttal Report, Ex. C, Dkt. No. 99-2.

the Agreement (collectively, the "Alleged Flawed Legal Assumptions").[69]   Mr. Cowhey goes on

to state that "no credibility" should be assigned to Ms. Ryan's Report based on her "flawed

assumptions and faulty logic," including the Alleged Flawed Legal Assumptions and that, as a

result, her calculations of lost profits should be disregarded.[70]

   The Court has no trouble finding that Mr. Cowhey's criticisms of Ms. Ryan's Report based

on the Alleged Flawed Legal Assumptions are without proper foundation and are not the proper

subject of expert testimony, especially by a nonlawyer.   These Alleged Flawed Legal

Assumptions do not satisfy any of the "trilogy of restrictions on expert testimony: qualification,

reliability and fit."  *Calhoun v. Yamaha Motor Corp., USA,* 350 F.3d 316, 321 (3d Cir. 2003).

First, as a nonlawyer, Mr. Cowhey is not qualified to opine on legal matters such as whether the

Agreement was properly terminated or whether Rising is entitled to recover lost profits under

the terms of the Agreement.  *See, e.g., Smith v. New Jersey,* 2013 WL 3658786, at *4 (D.N.J.

July 11, 2013) ("expert witness must offer specified knowledge and expertise, not legal analysis

and conclusions").   Second, Mr. Cowhey's opinion, to the extent it is based on the Alleged

Flawed Legal Assumptions, is not reliable for the same reasons, i.e., he is not qualified to give

it and it has no bearing on the credibility or validity of Ms. Ryan's lost profits calculations.  His

opinion as to these matters also suffers from a lack of reliability since he testified that he did not

know that this Court had previously found that Sigmapharm breached the Termination

Provisions of the Agreement.[71]

   For these same reasons and others, Mr. Cowhey's criticisms of the Ryan Report based on

the Alleged Flawed Legal Assumptions are not a proper fit because Ms. Ryan was entitled to

make those types of "assumptions" in preparing her Report on lost profits but was not required to

---

[69] *Id.* at 2.
[70] *Id.*
[71] Lambert Decl., Mar. 10, 2022 Cowhey Dep. Tr. 130:3-10, Ex. H, Dkt. No. 99-2.

consider Sigmapharm's version of hotly disputed facts (e.g., whether Plaintiffs provided Sigmapharm with the independent audit called for under the Agreement). As was noted by the Court in *Lewis v. Gov't Emps. Ins. Co.,* 2022 WL 819611, at *4 (D.N.J. Mar. 18, 2022): "All damages expert opinions are dependent . . . on the assumption that liability has been proven"). Accordingly, the *Lewis* court held that a challenge to methodology that assumed unlawful conduct "is not a valid basis to exclude an expert's opinion." To the contrary, "[a]n expert is . . . permitted to base his opinion on a particular version of disputed facts" with the weight to be afforded the opinion a matter to be determined by the finder of facts. *Walker v. Gordon*, 46 Fed. App. 691, 695-96 (3d Cir. 2002).

In its response, Sigmapharm does not directly address these deficiencies and instead argues generally that they go to the weight of Mr. Cowhey's testimony based on the Alleged Flawed Legal Assumptions, rather than its admissibility.[72] This Court disagrees. As noted above, Mr. Cowhey's conclusions of Ms. Ryan's Report based on the Alleged Flawed Legal Assumptions satisfy none of the criteria for the admissibility of expert testimony and therefore will be excluded by the Court. Accordingly, Plaintiffs' motion to exclude Mr. Cowhey's testimony based on the Alleged Flawed Legal Assumptions is granted.

### D. Mr. Cowhey's Proposed Expert Testimony That Takes Issue with the Assumptions and Facts on Which Ms. Ryan's Lost Profits Projections Are Based Is Mostly Admissible, with a Limited Exception

The next general area of proposed expert testimony by Mr. Cowhey challenged by Plaintiffs relates to his criticisms of the reliability of the information used by Ms. Ryan in preparing her reports and projections and the methodology she used to do so. As will be detailed below, the Court finds that such testimony is admissible for the most part, with a limited exception as to metadata.

---

[72] Sigmapharm Br., at 17-22, Dkt. No. 102.

(i)     The Alleged Flawed Assumptions and Flawed Logic Regarding Ms. Ryan's
        Methodology in Calculating Lost Profits

As summarized by Mr. Cowhey, he takes issue with Ms. Ryan's assumptions that: (i) the

financial data used by Ms. Ryan and A&M in their projections were accurately stated; (ii) the

financial projections made by Rising's management were reasonable; and (iii) the various

estimates that were incorporated into their calculations were accurate (collectively, the "Forecast

Calculations").[73]  In this regard, Plaintiffs argue that Mr. Cowhey is criticizing Ms. Ryan for using

a forecast prepared by management in the normal course of business, without having looked at

the forecast himself or identifying any improper assumptions on which it is based.  Plaintiffs

further argue that Mr. Cowhey testified that he did not test Ms. Ryan's assumptions and did not

have any opinion about them.[74]  Additionally, Rising notes that Mr. Cowhey testified that Ms.

Ryan should have relied on management forecasts rather than preparing her own, ignoring the

fact that Ms. Ryan did rely on management prepared projections.[75]

This Court finds that Mr. Cowhey's criticisms of Ms. Ryan's Forecast Calculations go

beyond these discrete areas and are based on, among other things, the findings of EisnerAmper

and other accounting firms utilized by Plaintiffs, as well as Plaintiffs' employees themselves, that

address issues relevant to the lost profits calculations, such as the reliability of Rising

management's financial reporting and practices, which in turn could affect the reliability and

accuracy of their forecasting.  Additionally, Mr. Cowhey's May 18, 2021 Report lists various

specific criticisms relating to Ms. Ryan's lost profits opinion, such as inadequate management

review and explanation of variance notes, use of improper discount rate, deficiencies in cash

---

[73] Lambert Decl., May 18, 2021 Cowhey Rebuttal Report, at 2, Ex. C, Dkt. No. 99-2.
[74] Lambert Decl., Mar. 10, 2022 Cowhey Dep. Tr. 144:21-145:13; 151:5-152:4, Ex. H, Dkt. No. 99-2.
[75] Pls.' Br. ¶¶ 19-30, Dkt. No. 99-1.

versus accrual accounting, lack of audit trail and other items that may impact the accuracy of Ms. Ryan's forecasting.[76]

In sum, the specific areas of Mr. Cowhey's opinion testimony that Plaintiffs seek to attack are part of his more general testimony described above and are not easily or neatly separated into admissible and inadmissible components, as Plaintiffs assert. Instead, they are intertwined aspects of Mr. Cowhey's overall criticisms of Ms. Ryan's Forecast Calculations as to which Mr. Cowhey will be permitted to testify, subject to Plaintiffs' right to cross-examination as to these and any other appropriate criticisms they may have about his testimony. *See generally*, *Pfizer, Inc. v. Teva Pharma*, *USA, Inc.*, 461 F. Supp. 2d 271, 274-75 (D.N.J. 2006) (where challenged expert testimony "goes more to the weight of the evidence than to its admissibility," it is more "appropriately addressed in cross examination" rather than a motion *in limine* to preclude the evidence altogether). Accordingly, Plaintiffs' Motion as to the Forecast Calculations is denied, and the Court will determine what weight to afford this testimony.

(ii)    The Exclusion of Amiloride and the Use of Estimated Net Revenue and Actual Gross Revenue in Ms. Ryan's Report

Mr. Cowhey's Rebuttal Report criticizes Ms. Ryan's report for alleged inconsistencies in: (a) excluding the Amiloride product in her lost profits analysis, but including Protriptyline because both "lacked profitability"; and (b) using both "Est. Net Revenue" and "Est. Gross Revenue," on the one hand and "Actual Net Revenue (Ratable)" and Actual Gross Profit (Ratable)," on the other, in calculating Lost Profits.[77] Rising counters by arguing that no expert testimony is needed to assess these asserted inconsistencies and that there were factual errors in Mr. Cowhey's recounting of what Ms. Ryan did in her Report as to these two items, including that the Gross Sales numbers were provided by Sigmapharm (a fact Mr. Cowhey apparently was not aware of prior to his

---

[76] Lambert Decl., May 18, 2021 Cowhey Rebuttal Report, at 6-9, Ex. C, Dkt. No. 99-2.
[77] Lambert Decl., May 18, 2021 Cowhey Rebuttal Report, at 9-10, Ex. C, Dkt. No. 99-2.

testimony).[78]  While these criticisms of Mr. Cowhey's Rebuttal Report may be valid if proven, the Court finds that these arguments also go to the weight to be afforded Mr. Cowhey's testimony, rather than its admissibility and can be adequately addressed on cross-examination.  Therefore, Plaintiffs' motion in this regard is denied.

(iii)    Mr. Cowhey's Criticisms Based on Allegedly Conflicting and Unverified Documents from Rising's Sampling

The next area of Mr. Cowhey's proffered testimony Plaintiffs seek to attack is Mr. Cowhey's criticism that certain documents provided by Plaintiffs are "internally inconsistent" and/or contradictory.[79]  Plaintiffs argue that Mr. Cowhey's Report does not identify any such conflicting documents, nor was he able to do so at deposition.  In fact, Rising cites to deposition testimony when Mr. Cowhey confirms that he did not have any work papers that identify any such inconsistences.

Sigmapharm responds by asserting that the inconsistencies and/or conflicts in Plaintiffs' document productions are amply demonstrated by Plaintiffs' failure to provide the documents requested by Sigmapharm to verify 393 of the 400 sampling transactions Plaintiffs provided for Audit Period II.[80]  Stated differently, Sigmapharm is arguing (through Mr. Cowhey and otherwise) that when a document supplied in support of a sampling transaction does not exist (even though for example, Mr. Hughes testified that it did) or does not support the underlying transaction, those documents (or lack thereof) demonstrate inconsistencies and conflicts.[81]  Rising argues in reply that Plaintiffs' failure to produce documents is a different issue than Mr. Cowhey's failure to

---

[78] Pls.' Br. ¶ 74, Dkt. No. 99-1.
[79] Pls.' Br. ¶¶ 49-51, Dkt. No. 99-1.
[80] Sigmapharm's Br., at 25, Dkt. No. 102.
[81] *Id.* at 25-26.

identify the actual conflicting documents, and emphasizes that it does not seek to prevent Mr.

Cowhey from testifying about the alleged missing documents.[82]

In this Court's view, Plaintiffs again seek to draw too fine a line here. If Mr. Cowhey is

permitted to testify that documents that should exist (according to Plaintiffs themselves) are

missing, were not produced or do not support the underlying transaction, that testimony will

necessarily go to the identity and nature of those documents, their relevance to the underlying

transactions, and whether they were documents Sigmapharm claims Plaintiffs had or should have

had. These issues are central to the affirmative cases and defenses of each party in this adversary

proceeding and go to the weight or credibility of the proffered testimony rather than to

admissibility. Accordingly, the Court will deny Plaintiff's motion as it relates to Mr. Cowhey's

opinions concerning inconsistent or conflicting documents.

(iv)   The Changing Dates and Numbers in the Audit Packages

Plaintiffs also challenge Mr. Cowhey's conclusions and criticisms relating to the changing

date range and numbers in the audit packages. Plaintiffs argue that because the packages cover

different periods, they necessarily include different numbers. Therefore, Plaintiffs assert, Mr.

Cowhey's opinion that the audit packages are unreliable because they include different numbers

(as they must) is itself inherently unreliable.[83]

Sigmapharm counters by arguing that while changing date ranges could explain at least

some of the changing figures in the packages, it does not explain why historical figures included

in both are different, as was indicated in Mr. Cowhey's October 22, 2021 Report.[84] Rising's reply

argues that Sigmapharm attempts to distract from the real issue -- the admissibility of Mr.

Cowhey's opinions in this regard -- by referring to what was learned during discovery, rather than

---

[82] Pls.' Reply Br. ¶¶ 42-44, Dkt. No. 104.
[83] Pls.' Br. ¶¶ 41-43, Dkt. No. 99-1.
[84] Lambert Decl., Oct 22, 2021 Cowhey Report, Ex. F, Dkt. No. 99-2; Sigmapharm Br., at 27-29, Dkt. No. 102.

what was included in Mr. Cowhey's reports.[85]  A review of the October 22, 2021 Cowhey Report (at ¶¶ 16-17, for example) reveals, however, that Mr. Cowhey does specifically refer to differences in historical figures set forth in the audit packages and indicates that those differing figures demonstrate the unreliability of Rising's financial data.[86]

The Court finds that these issues and arguments also go the weight to be afforded Mr. Cowhey's opinions rather than their admissibility, and that they are the proper subject of cross-examination.   While it is true that audit packages covering differing time periods would necessarily include different numbers and it is also true that Mr. Cowhey did indicate that he did not know they covered different time periods, those matters are not the only grounds on which Mr. Cowhey based his criticism of the reliability of the audit packages.  As noted, he referred to differences in historical numbers in the audit packages and questioned the reliability of those numbers on that basis and others.[87]  If the *only* reason for those differing numbers is the different time periods covered by the packages or there are other flaws in Mr. Cowhey's opinion in this regard, Plaintiffs can bring these out on cross-examination.  Accordingly, Plaintiffs' motion in this regard is denied.  Mr. Cowhey will be permitted to testify why the differing numbers in the audit packages led him to believe that the information in the audit packages was unreliable.   Any asserted flaws in Mr. Cowhey's opinion in this regard can be brought out by Plaintiffs on cross-examination.

(iv)   <u>Metadata</u>

Sigmapharm concedes that Mr. Cowhey is not an expert on metadata.[88]   Nonetheless, Sigmapharm argues that he may testify as to the metadata he regularly sees and reviews in the

---

[85] Pls.' Reply Br. ¶ 46, Dkt. No. 104.
[86] Lambert Decl., Oct 22, 2021 Cowhey Report ¶¶ 16-17, Ex. F, Dkt. No. 99-2.
[87] Lambert Decl., Oct 22, 2021 Cowhey Report ¶ 16, Ex. F, Dkt. No. 99-2.
[88] Sigmapharm Br., at 29, Dkt. No. 102.

course of his performing his work.  Rising counters that the concession that Mr. Cowhey is not an expert on metadata and is not being offered as an expert in such precludes his testimony in this regard.  *See, e.g., United States v. Wilkins*, 2016 WL 2616497, at *4-*5 (W.D. Mo. Apr. 8, 2016) (precluding nonexpert from interpreting metadata).   The Court agrees that Mr. Cowhey is not an expert in metadata and holds that he will not be permitted to testify or provide any expert opinions or interpretations on metadata.  He will, however, be permitted to state factually what he observed while performing his expert function in this regard.  In other words, Mr. Cowhey can testify as to the factual matters he observed in reviewing the metadata, but may not provide any expert testimony or opinions or conclusions as to the meaning or impact of those factual matters, or seek to interpret them.

## VI.    CONCLUSION

For all the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' Motion to exclude certain portions of Mr. Cowhey's proposed expert testimony as follows:

1.    Mr. Cowhey is precluded from testifying and shall not testify at trial as to his opinion on Sigmapharm's alleged damages for lost profits during Audit Period I (April 2009 to March 31, 2016).  This ruling does not apply to any previously stated opinions by Mr. Cowhey as to Sigmapharm's alleged damages during Audit Period II (April 1, 2016 to April 19, 2019).

2.    Mr. Cowhey will be permitted to testify as to his criticism that Ms. Ryan utilized a companywide discount rate as opposed to a product-line discount rate in her lost profits calculations; provided, however, that: (i) Plaintiffs shall be permitted to depose Mr. Cowhey on this issue, at their option, before trial or during a break in trial prior to his trial testimony; (ii) no testimony as to any alleged flaws on the discount rate used by Ms. Ryan shall be permitted, other than with respect to the Estimated Tax Rate and the companywide-versus-product-line

distinction; (iii) Mr. Cowhey shall not be permitted to introduce or rely upon any documents or information that was not previously produced or provided in this litigation; and (iv) Ms. Ryan shall be permitted to address this criticism at trial.

3.      Mr. Cowhey is precluded from testifying and shall not testify at trial as to the Alleged Flawed Legal Assumptions.

4.      Mr. Cowhey may testify at trial as to: (i) the alleged flawed assumptions and faulty logic employed by Ms. Ryan in her lost profits calculations, including (without limitation) her Forecast Calculations; (ii) the exclusion of Amiloride and inclusion of Protriptyline in her lost profits analysis; (iii) the alleged inconsistencies and conflicts in the sampling documents provided by Plaintiffs; (iv) the changing dates and numbers in the audit packages; (v) the use of <u>Est</u>. Net Revenue and <u>Est</u>. Gross Revenue (on the one hand), and <u>Actual</u> Net Revenue (Ratable) and <u>Actual</u> Gross Profit (Ratable) (on the other); (vi) his factual observations regarding the metadata relating to the documents produced by Plaintiffs; provided, however, that Mr. Cowhey shall not be permitted to testify as to any expert opinions, conclusions, or interpretations of the metadata.

5.      To the extent any specific area of proposed expert testimony by Mr. Cowhey may not have been addressed in the Court's Opinion and the Order, the Motion is denied on the basis that Plaintiffs' objections go to the weight and credibility of the proposed testimony rather than its admissibility and can be addressed on cross-examination.

A conforming Order is being entered contemporaneously with this Opinion.

Dated: October  27, 2022

*Vincent F. Papalia*
VINCENT F. PAPALIA
United States Bankruptcy Judge