**FILED**

Jeanne A. Naughton, CLERK

**NOVEMBER  22, 2022**

United States Bankruptcy Court
Newark, NJ

By: *Juan Filgueiras, Deputy*

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| In Re<br><br>TRI HARBOR HOLDINGS CORPORATION, *et al.*,[1]<br><br>        Debtor. | Case No.:    19-13448 (VFP)<br><br><br>Chapter:    11 |
| KAVOD PHARMACEUTICALS LLC (*f/k/a* RISING PHARMACEUTICALS, LLC, *f/k/a* RISING PHARMACEUTICALS, INC.) and TRI HARBOR HOLDINGS CORPORATION (*f/k/a* ACETO CORPORATION),<br><br>        Plaintiffs,<br><br>v.<br><br>SIGMAPHARM LABORATORIES, LLC,<br><br>        Defendant. | Adv. Pro. No.: 19-2053 (VFP)<br><br><br><br>Judge Vincent F. Papalia |

## MEMORANDUM OPINION DENYING WITHOUT PREJUDICE SIGMAPHARM'S MOTION TO PRECLUDE EVIDENCE OF LOST PROFITS

**LOWENSTEIN SANDLER LLP**
**Attorneys for Plaintiffs, Kavod Pharmaceuticals LLC (*f/k/a* Rising Pharmaceuticals, LLC, *f/k/a* Rising Pharmaceuticals, Inc.) and Tri Harbor Holdings Corporation (*f/k/a* Aceto Corporation)**
Reynold Lambert, Esq.
Wojciech F. Jung, Esq.
Gavin J. Rooney, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068

**ELLIOTT GREENLEAF, P.C.**
**Attorneys for Defendant,**
**Sigmapharm Laboratories, LLC**
Henry F. Siedzikowski, Esq.
Andrew Estepani, Esq.
Timothy Myers, Esq.
Elliott Greenleaf, P.C.
925 Harvest Drive, Ste. 300
Blue Bell, PA 19422

---

[1] The Liquidating Debtors in the chapter 11 cases and the last four digits of each Liquidating Debtor's taxpayer identification number are as follows: Tri Harbor Holdings Corporation (f/k/a Aceto Corporation) (0520); Tri Harbor Chemical Holdings LLC (f/k/a Aceto Agricultural Chemicals LLC, f/k/a Aceto Agricultural Chemicals Corporation) (3948); Tri Harbor Realty LLC (f/k/a Aceto Realty LLC) (7634); Kavod Pharmaceuticals LLC (f/k/a Rising Pharmaceuticals, LLC, f/k/a Rising Pharmaceuticals, Inc.) (7959); Kavod Health LLC (f/k/a Rising Health, LLC) (1562); Kavris Health LLC (f/k/a Acetris Health, LLC) (3236); KAVACK Pharmaceuticals LLC (f/k/a PACK Pharmaceuticals, LLC) (2525); Arsynco, Inc. (7392); and Acci Realty Corp. (4433).

**HONORABLE VINCENT F. PAPALIA**
**United States Bankruptcy Judge**

## I.    INTRODUCTION

This matter comes before the Court on the motion (the "Motion") filed *in limine* by defendant Sigmapharm Laboratories, LLC ("Sigmapharm") to preclude plaintiffs, which are two of the nine jointly administered Debtor-entities, Kavod Pharmaceuticals LLC, f/k/a Rising Pharmaceuticals, LLC f/k/a Rising Pharmaceuticals, Inc. ("Rising"), and Tri Harbor Holdings Corp., f/k/a Aceto Corporation ("Aceto") (collectively, the "Plaintiffs"), from presenting evidence at trial of lost profits under the parties' June 22, 2006 *Master Product Development and Collaboration Agreement* (the "Agreement") "beyond the date [Rising-Aceto] rejected the Master Agreement and sold its assets to Shore Suven."[2]   The Plaintiffs have filed an objection, and Sigmapharm, a reply.

## II.    JURISDICTIONAL STATEMENT

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the Standing Orders of Reference entered by the United States District Court on July 10, 1984 and amended on September 18, 2012.   This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) [claims allowance] and (O). In addition, a Bankruptcy Court has "jurisdiction to interpret and enforce its own prior orders."   *Travelers Indem. Co. v.* Bailey, 557 U.S. 137, 151 (2009) (in that case, a Confirmation Order entered ten (10) years earlier).   Venue is proper in this Court under 28 U.S.C. § 1408.   The court issues the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. To the extent that any of the findings of fact might constitute conclusions of law,

---

[2] Sigmapharm Br., at 1, Dkt. No. 118.

they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

### III.    STATEMENT OF RELEVANT FACTS AND PROCEDURE

The dispute between the parties arises from a June 22, 2006 *Master Product Development and Collaboration Agreement* (the "Agreement") for producing, marketing and sharing profits from the sale of pharmaceuticals.  Other details concerning the Agreement and the relationship between the parties are included in this Court's October 5, 2021 Opinion that granted in part and denied in part the parties' separate motions for summary judgment.  *Kavod Pharmaceuticals LLC v. Sigmapharm Labs., LLC (In re Tri Harbor Holdings Corp.)*, 2021 WL 4877265 (Bankr. D.N.J. Oct. 5, 2021) (the "Opinion").[3]  The findings of fact and conclusions of law from the Opinion are incorporated herein by reference.  To the extent that this summary deviates from the Opinion, the Opinion controls.

As set forth in the Opinion, on March 23, 2018, Sigmapharm sent Rising a letter that purported to terminate the Agreement.[4]  On March 23, 2018 Sigmapharm also sued Rising and Aceto in United States District Court, Eastern District of Pennsylvania (the "District Court") on breach of contract and commercial tort claims (Dkt. No. 2:18-cv-1238) (the "District Court Action").  By Order entered on October 26, 2018, the District Court granted Plaintiffs' Motion to compel arbitration of all aspects of the parties' dispute, including Sigmapharm's demand for an audit, but required Plaintiffs to preserve records that may be relevant to the audit.[5]

The Debtors filed their voluntary Chapter 11 petitions on February 19, 2019.  The Bankruptcy Court entered an April 10, 2019 Order that allowed the Debtor to sell to third-party

---

[3] The Court signed the Opinion on October 5, 2021 and the accompanying Order on October 6, 2021 but deferred docketing them until October 18, 2021 to give the parties the opportunity to seek redaction of references to evidentiary material that they filed under seal.  Neither party requested any redaction.

[4] *Kavod*, 2021 WL 4677265, at *13.

[5] *Id.* at *14.

Shore Suven Pharma, Inc. ("Shore Suven") that part of Plaintiffs' pharmaceuticals business that it had been performing with Sigmapharm.[6]  Plaintiffs did not assume and assign to Shore Suven the June 22, 2006 Agreement, which was not part of the sale.[7]  The Shore Suven sale closed on April 19, 2019.[8]  Sigmapharm filed Claim Nos. 155-2 and 162-1 against Aceto and Rising, respectively, on or about June 12, 2019 for at least $37,840,800.97 in contract damages (and included a demand to preserve records by reference to the October 26, 2018 District Court Order, which was attached to each claim).[9]

The Plaintiffs filed this adversary proceeding on July 18, 2019 to liquidate the claims of Sigmapharm under the Agreement.  Most relevant to this Motion are Counts Five, Six and Seven of Plaintiffs' Adversary Complaint (the "Complaint"), quoted in full:

COUNT FIVE
(Declaratory Judgment – Unlawful Termination)

86.    Plaintiffs repeat the allegations above as if fully set forth herein.

87.    An actual controversy has arisen and now exists between the parties concerning their respective rights, liabilities, and duties.

88.    On March 23, 2018, Sigmapharm purported to terminate the Agreement "for cause." Sigmapharm, however, had no basis to terminate the Agreement and the supposed termination was unlawful and invalid.

89.    **Rising is entitled to a declaration** that Sigmapharm's purported termination of the Agreement was unlawful and invalid, and **that the Agreement remains in full force and effect** (emphasis supplied).

COUNT SIX
(Breach of the Agreement – Damages: Unlawful Termination)

90.    Plaintiffs repeat the allegations above as if fully set forth herein.

---

[6] *Kavod*, 2021 WL 4677265, at *15.

[7] *Kavod*, 2021 WL 4677265, at *15.

[8] June 17, 2019 Disclosure Statement, at 42, Main Dkt. No. 640 (for closing date of Shore Suven sale).

[9] The October 5, 2021 Opinion reports that Sigmapharm filed these claims on July 18, 2019, but the website for Debtors' retained Claims Noticing Agent, Prime Clerk, LLC, now known as Kroll Business Services, indicates that Sigmapharm filed the claims on June 12, 2019.  *Kavod*, 2021 WL 4877265, at *17 n.105.  The copies of the filed claims attached to Plaintiffs' January 11, 2021 motion for partial summary judgment include additional filing detail that confirms the June 12, 2019 filing date.  Lambert Decl., Exs. H, K, Dkt. No. 17-1.  The Kroll website does not indicate when Claim No. 155-2 superseded Claim No. 155-1.

91.    Sigmapharm breached the Agreement by, *inter alia*: (i) unlawfully terminating the Agreement; (ii) ceasing all performance under the Agreement; (iii) refusing to supply Products to Rising and fulfill Rising's purchase orders; and (iv) marketing, distributing, and/or selling Products to customers.

92.    Rising is entitled to recover any and all damages resulting from Sigmapharm's breaches of the Agreement, including, but not limited to: (i) Rising's own lost profits from Products that Sigmapharm is refusing to supply, in breach of the Agreement; (ii) disgorgement of any profits or revenues realized by Sigmapharm arising from its sale of the Products directly or indirectly through a third party, in breach of Rising's exclusivity rights; (iii) recovery of any failure-to-supply liability or damages that Rising owes or will owe to its own customers; and (iv) loss of or damages to business reputation or goodwill.

93.    Rising seeks an award of damages on this claim in an amount to be determined at trial, plus interest and such other relief as the Court deems just and proper.

COUNT SEVEN
(Breach of the Agreement – Damages: Failure to Return Net Profits)

94.    Plaintiffs repeat the allegations above as if fully set forth herein.

95.    Sigmapharm breached the Agreement by refusing to return at least **$9,000,000 in Net Profits** . . . which it was not entitled to receive under the Agreement **as of January 2019**. Rising also is entitled to recover from Sigmapharm any **and all additional liabilities that have accrued since January 2019 or will accrue in the future** (emphases supplied).

96.    Rising seeks an award of damages on this claim **in the amount of at least $9,000,000**, plus any additional liabilities that have accrued or will accrue in the future, interest, and such other relief as the Court deems just and proper (emphases supplied).[10]

Sigmapharm filed an August 19, 2019 Answer and three-count Counterclaim, which, as described in the October 5, 2021 Opinion, incorporated by reference Sigmapharm's two proofs of claim; District Court Complaint; and District Court Arbitration Statement.[11]  These Counterclaims net generally to:  (i) a demand for at least $37,840,800.97 in contract damages (including but not

---

[10] Compl. ¶¶ 86-96, Dkt. No. 1.
[11] Aug. 19, 2019 Answer and Counterclaim, Dkt. No. 5; *Kavod*, 2021 WL 4877265, at *17-*18.  Ellipsis in ¶ 95 is just to eliminate a stray "to."

limited to underpaid profits, lost inventory, fees, costs, inventory expense, interest, based on Claim

Nos. 155-2 and 162-1); and (ii) a demand for an audit.[12]

The Bankruptcy Court confirmed the Debtors' Second Modified Joint Plan of Liquidation

(the "Plan") by September 18, 2019 Order.[13]    The Plan § 6.01 ("Executory Contracts and

Unexpired Leases to Be Rejected") provided that any executory contract not otherwise assumed

would be deemed rejected by the Confirmation Order on the Effective Date, in accordance with

and subject to sections 365 and 1123 of the Bankruptcy Code.[14]    Debtors' final schedules of

contracts to be assumed and assigned (dated August 23, 2019 and September 27, 2019) did not

include the Agreement.[15]    The Debtors thereafter docketed an October 1, 2019 Notice announcing

that October 1, 2019 was the Effective Date of the Plan and confirming that any executory contract

not previously or otherwise assumed was deemed rejected as of the October 1, 2019 Effective

Date, in accordance with, and subject to, sections 365 and 1123 of the Bankruptcy Code.[16]    As the

result of that rejection (and as will be discussed in more detail below), under 11 U.S.C. § 365(g)(1),

the Agreement was deemed breached as of the date before the Debtors filed their bankruptcy

petitions, or February 18, 2019.

Plaintiffs filed a January 11, 2021 motion for partial summary judgment on discrete Counts

of its Complaint.[17]    Sigmapharm filed an April 2, 2021 motion for complete summary judgment

"dismissing Debtors' claims with prejudice" and "enter[ing] judgment in Sigmapharm's favor on

Rising-Aceto's claims."[18]    Sigmapharm's form Order also asked the Court to grant Sigmapharm

---

[12] Aug. 19, 2019 Answer and Counterclaim, Dkt. No. 5.
[13] Sept. 18, 2019 Confirmation Order, Main Dkt. No. 996.
[14] Plan § 6.01, Ex. A, Sept. 18, 2019 Confirmation Order, Main Dkt. No. 996.
[15] Aug. 23, 2019 Plan Suppl., Ex. C, Main Dkt. 892; Sept. 27, 2019 Plan Suppl., Ex. A, Dkt. No. 1038.
[16] Oct. 1, 2019 Notice, Main Dkt. No. 1067.
[17] Jan. 11, 2021 Pls.' Mot., Dkt. No. 17; *Kavod*, 2021 WL 4877265, at *22.
[18] Apr. 2, 2021 Sigmapharm's Mot., at 1; Sigmapharm Br., at 10, Dkt. No. 41.

summary judgment on all Counts of Plaintiffs' Complaint and to dismiss the Complaint with prejudice.[19]

While one or both summary judgment motions were pending, the parties pursued discovery in the adversary proceeding under multiple Scheduling Orders.  In particular, under a March 16, 2021 motion, the Plaintiffs sought to quash, and, by March 19, 2021 cross-motion, Sigmapharm sought to compel, compliance by Shore Suven with Sigmapharm's March 2, 2021 Subpoena, which sought in most relevant part:  (i) books, records and other documents that may be relevant to the financial audit that Sigmapharm pursued for years regarding the parties' financial obligations under the Agreement; and (ii) any records indicating that Debtors reduced their sale price to Shore Suven on the grounds that Shore Suven assumed certain of Rising's financial obligations to customers under the Agreement.[20]  Plaintiffs' Counsel acknowledged during the April 22, 2021 hearing on Plaintiffs' motion to quash that the Debtors had not assumed and assigned the Agreement to Shore Suven during the sale; Counsel **did** state, however, that Shore Suven purchased "liability that Rising owed to customers" when it purchased Rising's pharmaceutical business and that the reduced purchase price Plaintiffs received as the result was part of Plaintiffs' damages.[21]

---

[19] Apr. 2, 2021 Form Order, Ex. 1, Dkt. No. 41.

[20] Mar. 16, 2021 Pls.' Mot., Lambert Decl., Mar. 2, 2021 Subpoena, Ex. A, Dkt. No. 28-2; Mar. 19, 2021 Sigmapharm Cross-Mot., Dkt. No. 30.

[21] Mr. Lambert argued on April 22, 2021:

> And the notion -- what I want to also make clear is that whether or not Sigmapharm's contract was assumed, it wasn't, but the liabilities in question here, not liabilities to Sigmapharm that arise from its contract with Rising, it's a liability that Rising owed to customers, that's what we're talking about here. And those, obviously, the buyer bought the business, so the buyer Shore Suven assumed those liabilities.

Apr. 22, 2021 Hr'g Tr. 36:18-24 (Dkt. No. 45).  In support of its argument that Plaintiffs' lost profits claim should be cut off after Plaintiffs ceased operating and sold their assets to Shore Suven, Sigmapharm also cites an excerpt (found in a footnote) to the August 5, 2021 Submission of Plaintiffs' expert, Ms. Laureen M. Ryan, for its explanation of how certain of its alleged damages claims against Sigmapharm survived the April 19, 2019 closing of the sale of Plaintiffs' assets to Shore Suven:

After an April 22, 2021 hearing, under a May 18, 2021 Order, the Court granted Plaintiffs'

motion to quash and denied Sigmapharm's motion to compel Shore Suven's compliance with the

March 2, 2021 Subpoena, both without prejudice, as the denials were on procedural grounds.[22]

The Court addressed other discovery issues in a June 7, 2021 Order and resolved the parties'

separate motions for summary judgment in the October 5, 2021 Opinion and October 6, 2021

Order.[23]

In the October 5, 2021 Opinion, the Court (among other relief) granted Plaintiffs' summary

judgment on Count Five of the Complaint and partial summary judgment on Count Six of the

Complaint, finding that Sigmapharm breached the Agreement because Sigmapharm's purported

notice of termination under (December 16, 2016 and) March 23, 2018 letter(s) did not comport

with the termination provisions in the Agreement; that Sigmapharm was liable to Plaintiffs for this

breach; but that "[t]the determination as to the amount of damages caused by these breaches is

reserved for trial."[24]   The October 5, 2021 Opinion dismissed with prejudice, as unsupported,

Sigmapharm's claim for $10 million in damages for lost profits, among other claims.

---

Rising's business was sold to Shore Suven Pharma, Inc. ("Shore Suven") on April 19, 2019, and certain liabilities were assumed as part of the consideration Shore Suven paid for the Rising business. For post-closing transactions identified in the May 2020 Audit Package, Rising's theory of damages is not that it paid for the expenses directly, but rather that it suffered injury because Shore Suven's assumption of liabilities formed part of the consideration it paid for the Rising business. As a result, Rising's claim for overpayment of Net Profits identified in the May 2020 Audit Package (which included transactions from April 1, 2016 through April 19, 2019) was updated to (1) exclude the liabilities assumed by Shore Suven under the Amended and Restated Asset Purchase Agreement ("APA") (*i.e.,* all transactions after the Closing Date of April 19, 2019; and (2) include the purchase price reduction for the Assumed Accrued Liabilities related to the Sigmapharm products. Documents sufficient to corroborate liabilities assumed as of April 19, 2019 were referenced in the Interrogatory 3 Plaintiffs' Responses to Interrogatories Set Forth in Order Dated May 18, 2021 (ECF No. 55) (emphases in original).

Aug. 5, 2021 Ryan Submission, at 3, n.4, Ex. 4, appearing in Sigmapharm's Feb. 14, 2022 *Motion to Compel Unredacted Materials and Work Papers Considered by Rising-Aceto's Expert*, Dkt. No. 82, as cited in Sigmapharm's instant Aug. 12, 2022 Br. on Lost Profits, at 8, Dkt. No. 118.

[22] Apr. 22, 2021 Hr'g Tr., Dkt. No. 45; May 18, 2021 Order, Dkt. No. 54.

[23] June 7, 2021 Order, Dkt. No. 64; Oct. 5, 2021 Opinion, Dkt. No. 72; Oct. 6, 2021 Order, Dkt. No. 69.

[24] *Kavod*, 2021 WL 4877265, at *46.

The October 5, 2021 Opinion also denied Sigmapharm's wholesale demand to dismiss

Plaintiffs' Complaint in its entirety:

> The determinations as to whether either or both Plaintiffs breached the Agreement and the amount of damages caused by any such breach involve multiple disputed questions of fact and mixed questions of fact and law and are reserved for determination at trial.[25]

Because Sigmapharm made the wholesale demand to dismiss Plaintiffs' Complaint, it did not

address Plaintiffs' discrete demand for damages in Plaintiffs' Count Seven (which is the subject

of Sigmapharm's instant Motion) (quoted again for convenience):

> 96.    Rising seeks an award of damages on this claim **in the amount of at least $9,000,000**, plus any additional liabilities that have accrued or will accrue in the future, interest, and such other relief as the Court deems just and proper (emphasis supplied).[26]

This brief history identifies several incontrovertible dates relevant to the instant Motion.

The parties dispute how these milestones affect the accrual of any damages due Plaintiffs:

| | |
|---|---|
| March 23, 2018 | Sigmapharm purported to terminate the June 22, 2006 Agreement in a manner that breached its Termination Provisions.  The parties in every event appear to have stopped working together by this date.[27] |
| February 19, 2019 | Debtors filed voluntary Chapter 11 petitions, appear to have generally ceased ongoing operations at that time and began to quickly liquidate their assets.[28] |
| April 19, 2019 | Plaintiffs' sale of pharmaceutical business to Shore Suven closed (with no assumption and assignment of the Agreement). |
| October 1, 2019 | Effective Date of Liquidating Plan and of deemed rejection of any executory Contract that was not previously or otherwise assumed. |

---

[25] *Kavod*, 2021 WL 4877265, at *46.

[26] Compl. ¶ 96, Dkt. No. 1.

[27] Sigmapharm states in the introduction to its instant Brief (neither party filed a certification in the instant Motion) that Plaintiffs have not "performed [their obligations under the Agreement] since Sigmapharm terminated the Agreement over four years ago."  Sigmapharm Br., at 1, Dkt. No. 118.

[28] Another significant date in this regard -- the February 18, 2019 date on which the Plaintiffs are deemed to have breached the Agreement under 11 U.S.C. § 365(g)(1) -- was not directly addressed or discussed by any of the parties.

Under the July 22, 2022 Sixth Supplemental Joint Scheduling Order, Sigmapharm timely filed the instant Motion *in limine* on August 12, 2022 to preclude Plaintiffs from presenting evidence at trial of lost profits under the Agreement "beyond the **date** [Rising-Aceto] rejected the Master Agreement and sold its assets to Shore Suven" (emphasis supplied).[29]    However, as set forth above, the contract rejection date (which Sigmapharm seems to believe is October 1, 2019) and the sale date (April 19, 2019) are different.    As will be described in more detail below, the Court is not now in a position to adopt either of those two dates (or other ones), as the determination as to whether and when Plaintiffs' lost profits damages stop accruing is one reserved for trial.

## IV.    ARGUMENTS OF PARTIES

### A.    Preamble

The parties' arguments are complicated because the duration of and grounds for lost profits sought by Plaintiffs are not yet clear.    Sigmapharm complains that Plaintiffs seek a "windfall" and "damages in perpetuity."[30]    Plaintiffs dismiss this notion, but also indicate that their demand is tied in part:

(i)    to the opinion of Plaintiffs' expert, Ms. Laureen M. Ryan ("Ms. Ryan"), about the expected commercial lifespan of the drugs that Rising and Sigmapharm ceased manufacturing and marketing together; and

(ii)    to the Shore Suven sale to the extent of a reduction in the purchase price for the Pharma Assets resulting from Shore Suven's assumption of liabilities for credits due to Plaintiffs' former customers from sales made before the closing.[31]

Plaintiffs signal their demand first in Count Seven of their Complaint:

95.    Sigmapharm breached the Agreement by refusing to return at least $9,000,000 in Net Profits . . . which it was not entitled to receive under the Agreement as of January 2019. Rising also is entitled to recover from Sigmapharm any and all additional liabilities that have accrued since January 2019 *or will accrue in the future*.

---

[29] July 22, 2022 Sixth Supplemental JSO ¶ 5, Dkt. No. 111; Sigmapharm Br., at 1, Dkt. No. 118.
[30] Sigmapharm Br., at 1, Dkt. No. 118.    Similarly unclear or specifically defined is the precise date by which Sigmapharm asserts those damages cease to accrue.
[31] Pls.' Obj. ¶ 21, Dkt. No. 125.

96.     Rising seeks an award of damages on this claim in the amount of at least $9,000,000, plus any additional liabilities that have accrued *or will accrue in the future*, interest, and such other relief as the Court deems just and proper.[32]

Sigmapharm (in its brief) raises Ms. Ryan's analysis of Plaintiff's late history claims against Sigmapharm in her August 5, 2021 Report (already cited and quoted above at n.21).

In their objection, Plaintiffs' summary of their damage demand appears to deviate somewhat from Ms. Ryan's August 5, 2021 Report:

> Rising had a ripe claim for lost profit damages in March 2018, upon Sigmapharm's unlawful termination of the Master Agreement—a year before the bankruptcy was filed and eighteen months before the Master Agreement was purportedly rejected. And, Sigmapharm's expert confirmed that he is not disputing Ms. Ryan's opinion concerning the expected lifespan of each drug. *See Declaration of Reynold Lambert in Support of Plaintiffs' Motion to Limit or Bar Expert Testimony* [Docket No. 99-2], Ex. H at 151:5-152:4. Nor is Rising seeking a "windfall." *See* Motion, p. 8. This conclusory and unsupported assertion may have made sense if Rising sold its right to recover lost profits to Shore Suven; but it did not. As part of the Shore Suven transaction, Shore Suven assumed certain accrued future *liabilities* in the form of credits to customers that were expected to materialize after the closing from sales of Sigmapharm products that Rising ***actually made*** prior to the sale. In contrast, Rising's claim to lost profits arises from sales that would have happened had Sigmapharm not breached the Master Agreement by unlawfully terminating it and stopping the supply of product to Rising. There is no overlap between the two measures of damages (emphases and italics in original).[33]

In Ms. Ryan's April 2, 2021 Report, she calculates that Plaintiffs' lost profits damages are in the range of $11.1 to $14.1 million for the period from March 24, 2018 to April 2, 2021.[34]  In addition, and as noted above, Plaintiffs are seeking as damages (i) pre-Shore Suven closing credit and other adjustments; and (ii) the reduced consideration it received from Shore Suven as the result of its assumption of post-closing liabilities from Plaintiffs.[35]

In support of its position, Sigmapharm states the following in its moving Brief (the parenthetical citation referring to Ms. Ryan's August 5, 2021 Report, as cited above):

---

[32] Compl. ¶¶ 95-96, Dkt. No. 1 (emphasis supplied) (ellipsis in ¶ 95 is to eliminate a stray "to").

[33] Pls.' Obj. ¶ 21, Dkt. No. 125.

[34] Lambert Decl., Apr. 2, 2021 Ryan Report, at 1-2, Ex. A, Dkt. No. 99-2.  These figures were adjusted in Lambert Decl., Aug. 5, 2021 Ryan Report, at 1-3 and n.4, Ex. D, Dkt. No. 99-2.

[35] Lambert Decl., Aug. 5, 2021 Ryan Report, at 1-3 and n.4, Ex. D, Dkt. No. 99-2.

Rising-Aceto acknowledge the importance of the sale date to Shore Suven in their own damages analyses. (ECF 82-1, Exhibit 4 fn.4.) Regarding their claimed damages concerning the payment of sales credits after March 2018, Rising-Aceto, on their own volition and consistent with common-sense, cut-off the expenses they claim must be reimbursed at the Shore Suven sale date. (*Id*.) This makes sense considering Rising-Aceto cannot obtain reimbursement for a sales credit that they did not provide since they were no longer in business and sold their assets to Shore Suven. Applying that similar logic, Rising-Aceto cannot obtain the benefits of "lost profits" for a period <u>in which they no longer operationally exist, are no longer in business, and have since sold their Pharma Assets to another entity. In fact, Rising-Aceto could no longer perform its obligations under the Master Agreement after the sale</u> (emphasis supplied).[36]

But Plaintiffs' demand for damages remains expansive (this again from Plaintiffs' objection):

Rising's right to recover damages arising out of Sigmapharm's unlawful termination of the Master Agreement does not disappear just because Rising is no longer operating. Rising was the *co-owner* of the products (Docket No. 49 at pp. 1-2) who contributed financially to their development, and Rising had *exclusive* rights to sell those products (*see* Docket No. 1, Exhibit A: Master Agreement §§ 3, 4, 7, 8). In effect, then, Sigmapharm's unlawful termination stripped Rising of its *ownership* and *exclusivity* rights, and Rising is entitled to recover all damages that flow from that breach (emphases in original).[37]

The parties also do not agree (and have not yet had an opportunity to directly address as a remaining legal issue) the consequences of the Court's determination in its October 5, 2021 Opinion that Sigmapharm breached the Agreement when it gave Plaintiffs improper notice of termination on March 23, 2018.[38] Each side also considers but does not directly answer whether a "bad termination" is still a termination (especially with respect to the development of damages for breach and/or rejection under 11 U.S.C. § 365), and each side takes contrary (and, not surprisingly, self-benefitting) views of the question within its own papers, as summarized below. Plaintiffs in their objection also raise a threshold procedural issue that would prevent the Court from reaching the merits of Sigmapharm's *in limine* Motion.

---

[36] Sigmapharm Br., at 8, Dkt. No. 118.
[37] Pls.' Obj. ¶ 19, Dkt. No. 125.
[38] *Kavod*, 2021 WL 2877265, at *26.

B. <u>Arguments of Parties</u>

Sigmapharm argues:

(i)     impliedly that the Agreement was terminated prepetition;[39]

(ii)    that the prepetition termination does not undermine the executory character of the Agreement—specifically that Plaintiffs' obligations to maintain transparent books and records and allow Sigmapharm to perform the audit survive;[40]

(iii)   that the Agreement was rejected under the confirmed Plan as of its October 1, 2019 Effective Date;[41]

(iv)    that Plaintiffs cannot continue to reap the benefits of the rejected Agreement;[42]

(v)     that Plaintiffs cannot claim damages for lost profits after the rejection date or the date after which Plaintiffs stopped operating or the April 19, 2019 Shore Suven sale closing date (even if Plaintiffs had sales credits on the March 2018 termination date and no sales against which to apply them).

However, in its conclusion and form Order, Sigmapharm reiterates its request that the Court preclude Plaintiffs' evidence of lost profits after they rejected the Agreement (which Sigmapharm seems to believe was October 1, 2019) and sold their assets to Shore Suven, an event which occurred on April 19, 2019.[43]

Plaintiffs argue for denial of Sigmapharm's Motion on procedural and substantive grounds:

(i)     that Sigmapharm's Motion is procedurally improper because:

(A) the lost profits limitation sought by Sigmapharm is actually an affirmative defense that Sigmapharm waived as it should have raised in its August 19, 2019 Answer and Counterclaim (under Fed. R. Civ. P. 8(c)(1)) and is one meant to introduce a new legal theory to substitute for the Court's having ruled against Sigmapharm in the October 5, 2021 Opinion when the Court found that Sigmapharm breached the Agreement;[44]

(B) it is a *de facto* motion for summary judgment, which is time-barred under the March 12, 2021 Third Supplemental JSO (which required the parties to file

---

[39] Sigmapharm Br., at 3, Dkt. No. 118.
[40] Sigmapharm Br., at 3, Dkt. No. 118.
[41] Sigmapharm Br., at 6, Dkt. No. 118.
[42] Sigmapharm Br., at 6, Dkt. No. 118.
[43] Sigmapharm Br., at 9; Form Order, Ex. 1, Dkt. No. 118.
[44] Pls.' Obj. ¶ 4, Dkt. No. 125.

summary judgment motions by April 2, 2021, a deadline which each party met);[45] and

(C) Sigmapharm seeks to exclude Plaintiffs' lost profits evidence on relevance grounds under F.R.E. 403, which Plaintiffs argue does not apply to bench trials.

(ii)   that Sigmapharm, against the backdrop of asserting that the Agreement was once executory and now is rejected, cannot simultaneously argue:

(A) that Sigmapharm can still assert its right to an audit under the Agreement; but

(B) that Plaintiffs cannot assert their claims for damages under the Agreement;[46]

(iii)   that the Agreement **was terminated** prepetition and was therefore not executory on the petition date and not subject to assumption or rejection under 11 U.S.C. § 365(a);[47]

(iv)   that, whether or not the Agreement was executory, amenable to rejection and/or rejected is immaterial to Plaintiffs' ability to claim all its damages flowing from Sigmapharm's prepetition breach of the Agreement;[48]

(v)   that Plaintiffs are not seeking future performance under the Agreement but only damages flowing from the prepetition breach, and "'lost profits' are simply one measure of damages for such claims";[49]

(vi)   that rejection is merely a breach that does not terminate the contract or eliminate the counterparty's contractual claims for damages;[50]

(vii)   that Plaintiffs' claims for damages (which include **Sigmapharm's** stripping of Plaintiffs' ownership interest in products subject to the Agreement) can survive the April 19, 2019 sale of assets to Shore Suven.[51]

In its reply, Sigmapharm asserts generally:

(i)   that Plaintiffs "cannot obtain benefits under a contract . . . which it rejected," without citation to supporting case law;[52]

(ii)   that an *in limine* motion may have elements of summary judgment, citing *Koeppel v. Bassett*, 2015 WL 668177, at *1 (D.N.J. Feb. 17, 2015); and

---

[45] Pls.' Obj. ¶¶ 6-7, Dkt. No. 125; Mar. 12, 2021 Third Supplemental JSO, Dkt. No. 26.
[46] Pls.' Obj. ¶ 8, Dkt. No. 125.
[47] Pls.' Obj. ¶ 10, Dkt. No. 125.
[48] Pls.' Obj. ¶ 12, Dkt. No. 125.
[49] Pls.' Obj. ¶¶ 14-15, 17, Dkt. No. 125.
[50] Pls.' Obj. ¶ 18, Dkt. No. 125.
[51] Pls.' Obj. ¶ 18, Dkt. No. 125.
[52] Sigmapharm Reply, at 2, Dkt. No. 131.

   (iii)     that (in a more nuanced statement of (i) in the reply above) Plaintiffs:

> cannot obtain benefits from the rejected Agreement in the form of *Sigmapharm's* lost profits for post-Shore Suven sales.    Therefore [Plaintiffs] should be precluded from presenting evidence at trial of any purported damages after they rejected the Master Agreement (emphasis in original).[53]

Throughout the arguments, neither party clearly nor definitively addresses the effect of the four (4) critical dates isolated above (breach, petition, sale, rejection) on the duration of Plaintiffs' damages demand or nor do they indicate specifically which date should apply.    Plaintiffs argue that its damages are driven purely by the Agreement; by its expert's assessment of the marketable life of Plaintiffs' products; and by recovering from Sigmapharm the value that Plaintiffs allegedly **lost** in the course of their voluntary sale of assets to Shore Suven.    On the other hand, Sigmapharm's Motion asks the Court to exclude evidence of Plaintiffs' alleged lost profits beyond the date the Agreement was rejected (October 1, 2019, according to Sigmapharm) *and* the date Debtors sold their assets to Shore Suven (April 19, 2019), which are two different dates.

## V.    LEGAL STANDARDS AND ANALYSIS

The Court will first address the procedural-type arguments raised by Plaintiffs in opposition to the Motion.

### A.  Limits of Motion *in limine*

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence."    *In re GII Indus., Inc*., 495 B.R. 209, 211 (Bankr. E.D.N.Y. 2010), citing *Luce v. United States,* 469 U.S. 38, 40 n.2 (1984). Plaintiffs argue that, rather than seeking to preclude evidence, Sigmapharm's Motion is in reality a disguised motion for summary judgment and is therefore improper and untimely, as summary

---

[53] Sigmapharm Reply, at 5, Dkt. No. 131.

judgment motions were required to be brought by April 2, 2021 under this Court's Third Supplemental Joint Scheduling Order on March 12, 2021.[54]

The cases cited by Plaintiffs recognize that a motion *in limine* is generally not the proper vehicle to raise summary judgment issues. *See Alpha Prof'l Tools v. Sure-Guide, Inc.,* 2010 WL 11698255, at *2 n.4 (D.N.J. May 19, 2010), *Lottotron, Inc. v. Eh New Ventures*, Inc., 2011 WL 735208, at *6 (D.N.J. Feb. 23, 2011). In its reply, and in implicitly acknowledging that this Motion may be considered as one for summary judgment, Sigmapharm cites to *Koeppel v. Bassett*, 2015 WL 668177, at *1 (D.N.J. Feb. 17, 2015) for the proposition that an *in limine* motion may have elements of a summary judgment motion. However, in *Koeppel*, where the defendant's *in limine* motion was untimely as a summary judgment motion, the Court announced to the parties that it would treat the motion as a summary judgment motion; granted the counterparty an extended time to respond; and ultimately granted in part and denied in part the defendant's hybrid motion. *Koeppel*, 2015 WL 668177, at *1-*3.

In this case, with trial dates to be scheduled shortly, it is not the proper time to invoke the procedure the Court adopted in *Koeppel*, even if the Court were to allow Plaintiffs additional time to respond. And, in any event, Plaintiffs have effectively responded to the purely legal arguments made by Sigmapharm in these regards. So there is no reason to delay trial here by allowing additional submissions at this time on what should have been a summary judgment motion that was required to be filed more than a year ago.

That said, the Court finds that application of the reasoning in cases such as *Alpha Prof'l* and *Lottotron* to this case leads to a somewhat circular result, as it would not resolve the underlying purely legal issues, which could lead to the exclusion of certain evidence. *See, e.g., Lottotron* (which recognized that an *in limine* motion may present a legal issue which, if granted, would

---

[54] Mar. 12, 2021 Third Supplemental JSO, Dkt. No. 26.

render certain evidence inadmissible).  Further, outright denial of Sigmapharm's *in limine* Motion to limit Plaintiffs' lost profits evidence would not absolve Plaintiffs of their affirmative duty to prove their damages.  *Red Roof Franchising, LLC v. AA Hospitality Northshore, LLC*, 877 F. Supp. 2d 140, 149 (D.N.J. 2012), *aff'd*, 564 F. App'x 685 (3d Cir. 2014), quoting *Murphy v. Implicito,* 392 N.J. Super. 245, 265 (App. Div. 2007) ("To establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result").  Nor would such a denial preclude this Court from considering whether Plaintiffs satisfied that burden, including whether and when any damages asserted by Plaintiffs may stop accruing. In this regard, the Court notes that the parties have addressed the underlying substantive legal issues on this Motion as mostly -- if not entirely -- legal ones, but at the same time have failed to identify a specific time when damages do stop accruing.  See, e.g., Sigmapharm Proposed Order (when Plaintiffs rejected the Agreement (October 1, 2019) *and* when the sale to Shore Suven closed (April 19, 2019)); Plaintiff's April 5, 2021 expert report (product life) and Plaintiffs' Objection ¶ 19, Dkt. 125 (Rising is entitled to all future damages flowing from Sigmapharm's stripping of Rising ownership rights in the subject products).

As will be described in more detail below, the Court finds that whether Plaintiffs are entitled to any damages and, if so, when those damages cease to accrue involves mixed questions of fact and law that will be determined based on the evidence produced at trial and on post-trial briefing.  Thus, the Motion will be denied without prejudice to a determination of those issues after trial.

B. <u>Plaintiffs' Waiver and Fed. R. Evid. 403 Arguments (the Procedural Arguments)</u>

(i)      <u>Waiver</u>

Plaintiffs argue that, by failing to raise its lost profits arguments as an affirmative defense, Sigmapharm waived the right to defend against Plaintiffs' claims based on any asserted temporal limitation on damages.  The Court declines to find any such waiver for several reasons.  First, as noted above, it is Plaintiffs' burden to prove their damages, and Sigmapharm certainly did not waive its right to defend against those claims on the basis that Plaintiffs' damages simply stopped accruing at any of the various dates Sigmapharm has asserted.  Second, Sigmapharm has raised these issues previously in opposition to Plaintiffs' motion to compel production of Sigmapharm's sales information and in the motion to preclude Ms. Ryan's testimony under *Daubert v. Merrell Dow*, 509 U.S. 579, 592-93 (1993).  Thus, Plaintiffs are and have been aware of this argument for many months.  In short, there was no waiver and no prejudice to Plaintiffs in responding to it. Finally, to the extent it may be necessary, the Court will allow Sigmapharm to pursue this "defense" as an amendment to Sigmapharm's affirmative defenses.  *See* Fed. R. Bankr. P. 15(b)(1) (court should freely allow amendments of pleadings, even during or after trial, when doing so will aid in presenting the merits).

(ii)      <u>Fed. R. Evid. 403</u>

The Court similarly rejects Plaintiffs' argument that the Motion should be denied because Fed. R. Evid. 403 does not apply to bench trials.  The Court disagrees.  There is no such provision in Fed. R. Evid. 403.  To the contrary, Rule 403 is applicable without regard to whether the trial is before a jury.  *See* Fed. R. Evid. 101(a) and 1101(a) and (b) (Federal Rules of Evidence apply in all federal courts unless specific exception applies).   Even the cases cited by Plaintiffs recognize this, as they hold that courts "have consistently exercised *restraint* in applying Rule 403 in a bench trial 'because the Court is capable of assessing the probative value of the [evidence] and excluding

any arguably improper inferences.'" *Apex Fin. Options, LLC v. Gilbertson,* 2022 WL 622130, at

*1 (D. Del. Mar. 3, 2022) (emphasis supplied).  In this Court's view, the exercise of such "restraint"

does not render Fed. R. Evid. 403 inapplicable in nonjury cases; instead, it is applicable, but with

loosened standards because the possibility of undue prejudice is significantly reduced.  See also

cases cited in the Court's Opinion denying without prejudice Sigmapharm's *in limine* motion to

exclude documents created by Plaintiffs post-litigation at pages 7-8.   In sum, there may be

instances in which Fed. R. Evid. 403 applies even in a nonjury trial; however, those instances are

more limited than in a nonjury case and are more properly and fully addressed at trial.

Accordingly, Plaintiffs' procedural objections to this Motion are overruled.

C.  <u>The Substantive Legal Issues</u>

As to matters of substantive law, the parties dispute: (i) whether the Agreement was

executory and therefore capable of assumption or rejection under the Bankruptcy Code; (ii) if the

Agreement is executory, whether any breach of contract damages are limited by the effective date

of the Agreement's rejection (i.e., October 1, 2019); and (iii) whether Plaintiffs damages are

limited by various other dates, i.e*., March 23, 2018, when Sigmapharm terminated the Agreement;*

*February 19, 2019 when the* Debtors filed for bankruptcy protection and immediately began

liquidating their assets; and/or April 19, 2019, when the Shore Suven Sale closed.[55]  In contrast,

Plaintiffs assert that their damages are not limited by any of those dates and extend to the useful

life of the products subject to the Agreement (and perhaps beyond).  The Court will address these

issues in order, but only to the extent necessary to resolve this Motion.

(i)    <u>Whether the Agreement Was Executory</u>

Plaintiffs argue that section 365 of the Bankruptcy Code, relating to the assumption and

rejection of the executory contracts, does not apply at all because the Agreement was terminated

---

[55] As noted above, precisely which of these dates each party is asserting is not clear to the Court.

by Sigmapharm prepetition (albeit wrongfully, as asserted by Plaintiffs and as found by this Court).

Sigmapharm argues that the Agreement was and remains executory because obligations remain on

both sides, both in terms of the requirement to maintain records available for audit and for the

payment of lost profits and other damages under the terms of the Agreement.  See, e.g., sections

1.36, 1.37, 5.3.4,  8.6 and 12.5.3 of the Agreement.

The Court disagrees with Plaintiffs' blanket statement of law that section 365 does not

apply to contracts that were terminated prepetition.[56]  As is noted by Sigmapharm, whether a

contract is terminated prepetition is not determinative in deciding whether the contract is

executory.  *See In re Lehman Bros. Holdings*, 422 B.R. 407, 416 (Bankr. S.D.N.Y. 2010) (when

agreement itself provides that certain provisions survive termination, contract is executory); *see

also In re Network Elecs. Corp.,* 195 B.R. 92, 98 (9th Cir. 1996) (same).  Instead, the Court is

required to determine whether, even if the contract is terminated prepetition, obligations remain to

be performed on both sides, applying traditional principles of executory contract analysis.  *See In

re Sharon Steel Corp. v.  Nat'l Fuel Gas Dist. Corp*., 872 F.2d 36, 39 (3d 1989) (whether the

remaining obligations of the debtor and non-debtor party "are so far unperformed that the failure

of either to complete performance would constitute a material breach") (internal citations omitted).

In this case, both sides have alleged continuing obligations on the part of the other that

would give rise to a material breach if not performed.  In fact, they have so alleged in their

pleadings.  For example, section 8.6 of the Agreement requires both parties to "keep complete and

accurate records" of the expenses incurred under the Agreement for a period of seven (7) years

after termination.  See also sections 1.37 which require that the records "be transparent and readily

available for independent audit purposes," and 5.3.4, which requires Sigmapharm to maintain

records for extended periods of time.  Both sides, but particularly Sigmapharm, are asserting that

---

[56] Pls.' Br. ¶ 9, Dkt. No. 125.

certain of these provisions were materially breached by the other.    Similarly, Article 12, and particularly section 12.5 of the Agreement places significant continuing obligations on both sides in the event of termination, with or without cause.  Plaintiffs assert that Sigmapharm is in material breach of those provisions.  Both parties also assert millions of dollars of damages as the result of the alleged breaches.

Based on these continuing obligations of both parties under the Agreement, and the parties' competing claims that these provisions were materially breached by the other, resulting in millions of dollars of damages, the Court determines that the Agreement was and remains executory.[57] Accordingly, the date on which the Agreement was deemed rejected is October 1, 2019.[58]  As a result, under 11 U.S.C. § 365(g)(1), the Agreement is deemed breached as of the date immediately before the Debtors' Petition Date.  Thus, the latest date by which the Plaintiffs breached the Agreement was actually February 18, 2019 (the "Rejection Date"), rather than the October 1, 2019 date that seems to have been adopted by the parties.

As is described in more detail below, these determinations do not, however, mean that Plaintiffs' alleged damages are immediately cut off as of the February 18, 2019 deemed Rejection Date or that the Agreement was terminated as of that date.  Nor does that deemed rejection necessarily result in termination of the Agreement or limit Plaintiffs' damages to those accruing up to the Rejection Date.  Similarly, these determinations do not limit Sigmapharm's ability to argue that Plaintiffs' damages stopped accruing prior to the Rejection Date.

    (ii)    <u>Rejection Under Section 365 Does Not Result in Termination of the Agreement or Necessarily Limit Plaintiffs' Damages Claims</u>

---

[57] Another twist here is that Plaintiffs' Complaint seeks a declaration "that the Agreement remains in full force and effect." Compl., Count V, ¶ 89, Dkt. No. 1. Plainly, if the Agreement is still in effect, it would have to be executory.
[58] There is no dispute that the Agreement was *not* listed as an Executory Contract that was assumed by the Debtor and/or assigned to Shore Suven.  See Plan at §§ 6.01 and 6.02, Main Dkt. No. 996.  Therefore, the date the Agreement was rejected was October 1, 2019, as noted above.

Sigmapharm argues that Plaintiffs cannot obtain benefits under a contract it rejected, indicating that this is "undisputed law."[59]  This Court disagrees.  First, it is hornbook law that "[r]ejection of a contract is not the same as termination . . . ."  *Simas v. Powell*, 635 B.R. 366, 378 (N.D. Cal. 2021); *In re Extraction Oil & Gas*, 622 B.R. 608, 623 (Bankr. D. Del. 2020).  Next, the rejection does not necessarily result in the debtor losing all its claims and defenses under the agreement it rejected.   Our Supreme Court has also noted these important distinctions in the *Mission Products* case:

> [U]nder Section 365, a debtor's rejection of an executory contract in bankruptcy has the same effect as a breach outside bankruptcy. Such an act cannot rescind rights that the contract previously granted.

*Mission Prods. Holdings, Inc., v. Tempnology LLC*, 139 S. Ct. 1652, 1666 (2019) ("rejection breaches a contract but does not rescind it.  And that means all the rights that would ordinarily survive a contract breach remain in place." *Id*. at 1657-58).

A corollary to this principle is that:

> parties may still assert contractual rights post-rejection [in] order to determine compensation for the injured party for the breach arising out of the rejection <u>and to determine claims in the other direction</u>.  Following rejection, the contract continues to define the scope of liability for the injured party and availability and extent of defenses for the breaching party.

*Simas*, 635 B.R. at 378 (emphasis supplied); *Mission Prods., supra*; *see also In re Onecast Media, Inc.*, 439 F.3d 558, 563 (9th Cir. 2006) ("rejection of a lease prevents the debtor from obtaining further benefits of the lease (such as ongoing possession of leased premises)," but  "it does not rescind the lease or defeat any pending claims or defenses that the debtor had in regard to that

---

[59] Sigmapharm Reply, at 2, Dkt. No. 131.  The cases cited by Sigmapharm regarding the *cum onere* doctrine; i.e., that a contract cannot be assumed in part and rejected in part, are simply not applicable here as neither side is asserting a partial rejection and/or assumption.  Plaintiffs' argument, at least in part, is that section 365 does not apply at all because the Agreement was terminated (unlawfully) prepetition.  Sigmapharm argues that the Agreement was rejected in total on October 1, 2019.  Thus, the *cum onere* doctrine is simply not at issue here.

lease"); *In re Health Diagnostics Lab., Inc.*, 2018 WL 4676339, at *10 (Bankr. E.D. Va. Sept. 26, 2018) (to the same effect). *In re Taylor*, 913 F.2d 102, 106-107 (3d Cir. 1990) (same).

Thus, the Debtors' deemed rejection of the Agreement does not automatically eliminate the damage claims Plaintiffs have for any prepetition breaches by Sigmapharm. Instead, it essentially leaves the parties where they were before the bankruptcy filing, with competing breach claims against each other.[60] However, as was noted by the *Onecast Media* court (a case relied upon by Plaintiffs), the rejection is not without any effect on Plaintiffs' claims, as it may limit Plaintiffs' ability to obtain post-rejection benefits under the Agreement. The Court cannot, however, make a determination as to whether there is any such limitation in this case and, if so, when it occurred based on the current record before the Court. Instead, those determinations (and the others discussed below) will need to await trial.

In sum, in ruling on this Motion, the Court finds that the Agreement is executory and was therefore deemed rejected as of the October 1, 2019 Effective Date of the Debtors' Plan and breached as of the February 18, 2019 deemed Rejection Date under 11 U.S.C. § 365(g)(1). That is not, however, the end of the inquiry as it does not definitively or finally determine when any of Plaintiffs' affirmative damage claims stop accruing. Depending on the results of trial, that date could be earlier or later than the Rejection Date. For example, it could be the date that the Debtors ceased operations, which was apparently some time shortly after their bankruptcy filing, or when the Debtors sold their Pharma Assets to Shore Suven, or the end of the 180-day cure period allowed under § 12.2 of the Agreement, or the October 1, 2019 Effective Date of the rejection. Similarly, Plaintiffs may be able to show, as a factual and/or legal matter, that its future damages were fixed as of the date of Sigmapharm's termination of the Agreement. Unlike the purely legal issues

---

[60] In this case, because the Debtors' Plan pays unsecured creditors in full, the difference between a prepetition rejection claim (which Sigmapharm has) and an affirmative contract claim (which Plaintiffs have) is arguably even less than in the usual case, where a prepetition claim would typically be paid only a fraction of its value.

addressed above by the Court in this Opinion, e.g., whether the Agreement was executory and rejected by Plaintiffs and whether Plaintiffs still have a right to recover on their affirmative claims against Sigmapharm after the Agreement was rejected, the questions of whether and when the alleged damages resulting from Plaintiffs' affirmative claims stop accruing is a mixed question of fact and law that will have to await the trial of this action.

## V.    CONCLUSION

For all the foregoing reasons, Sigmapharm's Motion to Preclude Evidence of Lost Profits is **DENIED**, without prejudice to the rights of both parties to prove at trial that Plaintiffs' damages claims for lost profits stopped accruing at any time prior to or after the deemed February 18, 2019 Rejection Date of the Agreement.

A conforming Order is being entered contemporaneously with this Opinion.


Dated:  November  22, 2022                                    *Vincent F. Papalia*
                                                             VINCENT F. PAPALIA
                                                             United States Bankruptcy Judge