FILED
Jeanne A. Naughton, CLERK
**NOVEMBER 22, 2022**
United States Bankruptcy Court
Newark, NJ
By: *Juan Filgueiras, Deputy*

| | |
|---|---|
| In Re<br><br>TRI HARBOR HOLDINGS CORPORATION, *et al.*,[1]<br><br>Debtor. | Case No.:   19-13448 (VFP)<br><br>Chapter:   11 |
| KAVOD PHARMACEUTICALS LLC (*f/k/a* RISING PHARMACEUTICALS, LLC, *f/k/a* RISING PHARMACEUTICALS, INC.) and TRI HARBOR HOLDINGS CORPORATION (*f/k/a* ACETO CORPORATION),<br><br>Plaintiffs,<br><br>v.<br><br>SIGMAPHARM LABORATORIES, LLC,<br><br>Defendant. | Adv. Pro. No.: 19-2053 (VFP)<br><br>Judge Vincent F. Papalia |

## MEMORANDUM OPINION DENYING WITHOUT PREJUDICE SIGMAPHARM'S MOTION IN LIMINE TO PRECLUDE USE OF PLAINTIFFS' AUDIT PACKAGES AS EVIDENCE

**LOWENSTEIN SANDLER LLP**
**Attorneys for Plaintiffs, Kavod Pharmaceuticals LLC (*f/k/a* Rising Pharmaceuticals, LLC, *f/k/a* Rising Pharmaceuticals, Inc.) and Tri Harbor Holdings Corporation (*f/k/a* Aceto Corporation)**
Reynold Lambert, Esq.
Wojciech F. Jung, Esq.
Gavin J. Rooney, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068

**ELLIOTT GREENLEAF, P.C.**
**Attorneys for Defendant,**
**Sigmapharm Laboratories, LLC**
Henry F. Siedzikowski, Esq.
Andrew Estepani, Esq.
Timothy Myers, Esq.
Elliott Greenleaf, P.C.
925 Harvest Drive, Ste. 300
Blue Bell, PA 19422

---

[1] The Liquidating Debtors in the chapter 11 cases and the last four digits of each Liquidating Debtor's taxpayer identification number are as follows: Tri Harbor Holdings Corporation (f/k/a Aceto Corporation) (0520); Tri Harbor Chemical Holdings LLC (f/k/a Aceto Agricultural Chemicals LLC, f/k/a Aceto Agricultural Chemicals Corporation) (3948); Tri Harbor Realty LLC (f/k/a Aceto Realty LLC) (7634); Kavod Pharmaceuticals LLC (f/k/a Rising Pharmaceuticals, LLC, f/k/a Rising Pharmaceuticals, Inc.) (7959); Kavod Health LLC (f/k/a Rising Health, LLC) (1562); Kavris Health LLC (f/k/a Acetris Health, LLC) (3236); KAVACK Pharmaceuticals LLC (f/k/a PACK Pharmaceuticals, LLC) (2525); Arsynco, Inc. (7392); and Acci Realty Corp. (4433).

**HONORABLE VINCENT F. PAPALIA**
**United States Bankruptcy Judge**

### I.     INTRODUCTION

This matter comes before the Court on the motion (the "Motion") filed by defendant Sigmapharm Laboratories, LLC ("Sigmapharm") to prevent Kavod Pharmaceuticals LLC, f/k/a Rising Pharmaceuticals, LLC f/k/a Rising Pharmaceuticals, Inc. ("Rising"), and Tri Harbor Holdings Corp., f/k/a Aceto Corporation ("Aceto") (collectively, the "Plaintiffs"), which are two of the nine jointly administered Debtor-entities, from admitting at trial certain "audit packages" (described below), which Sigmapharm claims contain multiple layers of hearsay and are not admissible under the business records exception at Fed. R. Evid. 803(6) or as a "summar[y] to prove content" under Fed R. Evid. 1006.  The Plaintiffs have filed an objection thereto, and Sigmapharm, a reply.  In their submissions, the parties incorporate by reference prior certifications of corporate personnel and deposition excerpts.  Sigmapharm, in particular, raises Plaintiffs' prior statements in which Plaintiffs, according to Sigmapharm, disavow that the Audit Packages are business records under Fed. R. Evid. 803(6).  Sigmapharm argues that the Audit Packages are patently inadmissible as containing multiple layers of hearsay and are "litigation fueled" documents that were modified by Plaintiffs' expert.  Plaintiffs dispute all these claims.

### II.     JURISDICTIONAL STATEMENT

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the Standing Orders of Reference entered by the United States District Court on July 10, 1984 and amended on September 18, 2012.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) [claims allowance] and (O).  In addition, a Bankruptcy Court has "jurisdiction to interpret and enforce its own prior orders." *Travelers Indem. Co. v.* Bailey, 557 U.S. 137, 151 (2009) (in that case, a Confirmation Order entered ten (10) years earlier).  Venue is proper in this Court under 28 U.S.C.

§ 1408. The court issues the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

### III.    STATEMENT OF RELEVANT FACTS AND ARGUMENTS OF PARTIES

As the Court recognized in its October 27, 2022 *Opinion Granting in Part and Denying in Part Plaintiffs' Motion to Limit or Bar Expert Testimony of Defendant's Expert, Gregory Cowhey*, and as the parties seem to agree here, the two primary audit packages at issue on this Motion are the one generated by Plaintiffs on January 21, 2019 for the arbitration that was compelled by the District Court in *Sigmapharm Labs., LLC v. Rising Pharmaceuticals, Inc.*, U.S. District Court, Eastern District of Pennsylvania, Dkt. No. 2:18-cv-1238 (the "District Court Action") and a second audit package that was "updated" by Plaintiffs to, among other things, include additional transactions over a longer time period and produced on May 15, 2020 in connection with the instant adversary proceeding.[2] At Exhibit 2 to its Motion, Sigmapharm has provided in electronic format (and under seal) two Excel spreadsheets (with subparts) and an Excel cover sheet that indicate that the "audit packages" relate to the May 15, 2020 submission and Audit Period II, previously identified as running from April 1, 2016 through approximately April 19, 2019, the closing date of Plaintiffs' sale of assets to Shore Suven Pharma, Inc. (although the end date in several iterations in the Excel spreadsheets is both earlier and later than April 19, 2019).[3] In its brief, Sigmapharm defines the "Audit Packages" as represented by these Excel spreadsheets:

> Sigmapharm attaches the "Summary File" of each audit package iteration as Exhibit 2. Sigmapharm can provide each "audit package" in its entirety at the Court's

---

[2] Sigmapharm Br., at 25-26, Dkt. No. 117 (identifying first audit package of January 2019); *Kavod Pharmaceuticals LLC v. Sigmapharm Labs., LLC,* 2022 WL 16543800, at *3 (Bankr. D.N.J. Oct. 27, 2022). The Court notes that, in Sigmapharm's companion motion to exclude certain documents created post-litigation, the specific documents subject to Sigmapharm's motion are not completely clear or defined.

[3] Sigmapharm Br., at 1 n.2; Excel Spreadsheets, Ex. 2, Dkt. No. 117.

>request. The audit packages are large spreadsheets which cannot be readily attached to this Motion. Sigmapharm will provide a copy of its Exhibit 2, and any other spreadsheet exhibit in this Motion, to the Court via flash drive. Rising-Aceto also revised its audit package via supplementary interrogatory response, which Sigmapharm includes in its Exhibit 2.[4]

Sigmapharm also incorporates by reference Plaintiffs' June 9, 2021 answer to Sigmapharm's interrogatory 3, which identifies as the "Audit Package" the "updated audit package Rising provided to Sigmapharm in May 2020."[5]

>Sigmapharm raises five general arguments against the admission of the Audit Packages:
>
>(i) the Audit Packages represent hearsay upon hearsay and were created largely after the parties' working relationship ended on March 23, 2018 and therefore were not made nearly contemporaneously and in the ordinary course under Fed. R. Evid. 803(6)(A) through (C);
>
>(ii) the Audit Packages were reviewed and revised by Alvarez & Marsal ("A&M"), the financial firm of which Plaintiffs' forensic expert, Ms. Laureen M. Ryan ("Ms. Ryan"), is a Managing Director;
>
>(iii) the Audit Packages include internally inconsistent information;
>
>(iv) the Audit Packages include "information and theories that contradict the facts and circumstances that existed" when Plaintiffs were in business;[6] and
>
>(v) the Audit Packages include inputs from unidentified sources and unidentified operators; they are "litigation fueled" documents and not business records.[7]

Sigmapharm refers to the following, prior statements by Plaintiffs during this adversary proceeding to undercut Plaintiffs' present position that the Audit Packages are business records:

>(i) November 9, 2021 Letter from Reynold Lambert, Esq., to the Court in response to Sigmapharm's objection to Plaintiffs' request for the Court to appoint an independent expert. Counsel states at footnote 3:
>
>>The initial audit package is not a profit sharing statement delivered in the normal course of business; indeed, Rising transmitted that package close to one year after Sigmapharm unlawfully terminated the Agreement. Instead, the

---

[4] Sigmapharm Br., at 1 n.2, Dkt. No. 117. The Court has reviewed the Summary File and flash drive and finds that it needs in person testimony to fully understand these documents and how and when they were created.
[5] Sigmapharm Br., at 2, Pls.' Answer to Interrogatory 3, Ex. 2 (electronic), Dkt. No. 117.
[6] Sigmapharm Br., at 1-2, Dkt. No. 117.
[7] Sigmapharm Br., at 2, Dkt. No. 117.

     initial audit package identified amounts owed as of a date certain, and provided accruals for charges that were not yet processed;[8]

(ii) June 12, 2020 Letter from Reynold Lambert, Esq. to Timothy Myers, Esq. stating that the May 15, 2020 Audit Package "is not subject to Rule 34." Under the provisions of Fed. R. Civ. P. 34(a)(1), Sigmapharm argues that this statement necessarily means that the Audit Package does not represent "items in the responding party's possession, custody, or control";[9]

(iii) A sequence of Exhibits (8 through 12) that purport to show that A&M worked on the data that became the May 15, 2020 Audit Package and that Plaintiffs did not disclose this fact until Sigmapharm pressed Plaintiffs on it;[10]

(iv) A sequence of accounting irregularities, including statement by A&M in a document that Sigmpharm has called "A&M Audit Package Review Notes" that questions Plaintiffs' retention of $2.6 million in a damages calculation (A&M's interlineation declares: "A&M has not 'blessed' this inclusion"); and the failure to reflect the partial sale of some $800,000 in inventory that was to have been destroyed;[11]

(v) General and specific concerns about Plaintiffs' accounting practices registered by EisnerAmper; BDO; PricewaterhouseCoopers; Aceto's internal auditors; and the Securities and Exchange Commission (reports attached);[12] and

(vi) December 18, 2020 deposition testimony of Eugene Hughes, Senior Vice President of Finance for Rising Pharmaceuticals, Inc. from June 12, 2017 to April 19, 2019.[13] Sigmapharm claims that Mr. Hughes's testimony demonstrates that he did not provide and did not know who provided the company data that went into the audit samples based primarily on counsel's direction not to answer based on attorney-client privilege or work product grounds.[14]

---

[8] Sigmapharm Br., at 5; Nov. 9, 2021 Letter, Ex. 3, Dkt. No. 117. Here, Plaintiffs' Counsel appears to be referring to the January 19, 2019 audit package sent to Sigmapharm in connection with this demand for an audit in the arbitration.
[9] Sigmapharm Br., at 5; June 12, 2020 Email, Ex. 4, Dkt. No. 117.
[10] Sigmapharm Br., at 8-9; Exs. 8-12, Dkt. No. 117. These include: Metadata disclosure for Audit Package(s); Ex, 8; A&M Audit Package Review Notes, Ex. 9; June 10, 2020 Email from Timothy Myers, Esq. to Reynold Lambert, Esq. demanding production of metadata, Ex. 10; July 29, 2020 Email response granting access to metadata, Ex. 11, Dec. 18, 2020 Hughes Dep. Tr. 237:3-239:1 (wherein Hughes testifies that an A&M accountant "performed a math check" on an audit schedule), Ex. 12, Dkt. No. 117.
[11] Sigmapharm Br., at 14-15; A&M Audit Package Review Notes, Ex. 9; Dec. 18, 2020 Hughes Dep. Tr. 241:18-250:17, Ex. 12, Dkt. No. 117.
[12] Sigmapharm Br., at 15-20; Exs. 26, 27, 28, 29, 30, 31, 32, Dkt. No. 117.
[13] May 5, 2021 Decl. of Eugene Hughes ¶ 1, Dkt. No. 52 (for Mr. Hughes's corporate status).
[14] Sigmapharm Br., Dec. 18, 2020 Hughes Dep. Tr. 305:6-313:1, Ex. 12, Dkt. No. 117. Without assigning fault, the Court finds that there are many attorney objections/interruptions in this testimony on privilege grounds with the result that Mr. Hughes never appears to have a full chance to answer. Whether the Court would sustain the objections on privilege grounds at trial is an open question which Sigmapharm may raise at that time.

In its reply, Sigmapharm identifies two more Plaintiff statements that Sigmapharm deems inconsistent with other statements by Plaintiffs about the character of the Audit Packages:

(i) Plaintiffs' Counsel argues in the June 2, 2022 objection to Sigmapharm's motion under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993) (to be heard with trial on the merits):

> 94. Sigmapharm's assertion that Rising "admitted that the audit packages are not business records" (SP Br. at 33) is nonsense. As the excerpted text makes plain, counsel for Plaintiffs in a letter said that the "initial audit package [was] not ***a profit sharing statement*** delivered in the normal course of business," which is true. *Id.* (emphasis added). Rising was required under the Agreement to provide quarterly profit sharing statements to Sigmapharm (Agreement § 8.3), and the audit package is not one of those statements. But Rising can, of course, create more than one type of business record;[15] and

(ii) Although Plaintiffs declare that the January 21, 2019 Audit Package (which Sigmapharm says is **not** the subject of sampling) was produced before the Debtors filed their bankruptcy petition (as evidence that it was not produced as a litigation tool), Sigmapharm observes that Plaintiffs produced this January 21, 2019 package in the District Court litigation to oppose Sigmapharm's motion to compel an audit in the arbitration.[16]

In its moving brief, Sigmapharm also complains generally about Plaintiffs' litigation strategy; these complaints do not appear to be directly relevant to the admissibility of the Audit Packages. Sigmapharm complains that, while A&M worked to generate the May 15, 2020 Audit Package, Plaintiffs' expert, Ms. Ryan, on or about **August 4, 2021**, discovered a $1.9 million error in Plaintiffs' favor, but Plaintiffs' Counsel did not disclose the error until February 28, 2022, when Sigmapharm pressed him for it.[17] Sigmapharm also argues that the December 18, 2020 deposition testimony of Rising's Eugene Hughes indicates that Plaintiffs increased their accounting for costs of goods sold from their prelitigation practices to their post-litigation records by $1.17 million (26.65%) to the detriment of each party's profit share.[18] Sigmapharm also draws in both the March

---

[15] Sigmapharm Reply, at 5-6, Dkt. No. 129, quoting June 2, 2022 Pls.' Obj. ¶ 94, Dkt. No. 103.
[16] Sigmapharm Reply, at 8 n.2, Dkt. No. 129.
[17] Sigmapharm Br., at 10-11, Dkt. No. 117.
[18] Sigmapharm Br., at 11; Dec. 18, 2020 Hughes Dep. Tr. 253:2-258:11, Ex. 12, Dkt. No. 117.

11, 2022 deposition testimony of Ms. Ryan and the June 16, 2022 Affidavit of Gregory Cowhey, Sigmapharm's forensic expert (produced in response to Sigmapharm's April 26, 2022 motion to preclude reports and testimony of Plaintiffs' Ms. Ryan, a motion to be addressed at trial) for the propositions that Plaintiffs have not produced third-party documentary support for their accounting entries (Mr. Cowhey) and that Ms. Ryan did not seek such documentary support or rely on it.[19]

Plaintiffs argue in their objection:

(i) that this Motion represents Sigmapharm's third attempt (after Sigmapharm's April 2, 2021 summary judgment motion (Dkt. No. 41) (decided by the October 5, 2021 Opinion) and Sigmapharm's April 26, 2022 *Daubert* motion (Dkt.No. 98) (to be decided at trial) to exclude the Audit Packages and that the October 5, 2021 Opinion clearly deferred that decision to trial;[20]

(ii) that Eugene Hughes stated in his May 5, 2021 Declaration (filed in support of Plaintiffs' opposition to Sigmapharm's motion for summary judgment) that he knew how his team prepared the audit package and was responsible for preparing the audit package for April 1, 2016 through December 31, 2018 (produced on January 21, 2019), ultimately updated through April 30, 2020 (produced on May 15, 2020);[21] and

(iii) that Sigmapharm agreed to the "sampling" procedure for testing the Audit Package under a June 10, 2020 *Rising Pharmaceuticals, Inc. Audit Testing Summary* and cannot renege on its agreement to accept that procedure and the Court indicated at the April 22, 2021 hearing on multiple discovery requests that Sigmapharm's request for backup documentation as to all 400,000 transactions that Plaintiffs assert occurred during the relevant time period was at that point "improper" as the parties agreed to an audit protocol that was limited to approximately 400 transactions.[22]

---

[19] Sigmapharm Br., at 22-24; June 16, 2022 Cowhey Aff., Ex. 33 (originally Ex. 31, Dkt. No. 105-1); Mar. 11, 2022 Ryan Dep. Tr. 67:9-21; 72:6-22; 78:1-79:18, Ex. 34, Dkt. No. 117.
[20] Pls.' Obj. ¶¶ 22-23, Dkt. No. 127; *Kavod Pharmaceuticals, LLC v. Sigmapharm Labs., LLC,* 2021 WL 4877265, at *34 (Bankr. D.N.J. Oct. 5, 2021).
[21] Sept. 9, 2022 Lambert Decl. ¶ 14, May 5, 2021 Hughes Decl. ¶ 52, Ex. A, Dkt. No. 127-1 (originally Dkt. No. 52).
[22] Sept. 9, 2022 Lambert Decl., Rising Pharmaceuticals, Inc. Audit Testing Summary, Ex C, Dkt. No. 127-1. Plaintiffs ascribe a June 10, 2020 date to this document, which is not dated. Plaintiffs also argue that Sigmapharm's document complaints came too late as they never moved to compel compliance with this Court's June 7, 2021 Order or otherwise seek additional documentation that Plaintiffs objected to. While the Court did rule that Plaintiffs were not required to produce the backup for all 400,000 transactions, Plaintiffs were, however, required to produce the underlying documentation related to the Audit Package sample or advise that they did not have those documents. Sigmapharm argues that Plaintiffs did not comply with these requirements of the June 7th Order, which is an issue that also remains open for determination at trial. June 7, 2021 Order, Dkt. No. 64.

Sigmapharm in its reply argues that Plaintiffs overstate the Court's decision in the October 5, 2021 Opinion about when the Court would next consider Sigmapharm's argument to exclude the Audit Packages: the Court indicated on October 5, 2021 that such consideration "is more appropriately left for a motion *in limine* or trial," as the audit was then ongoing.[23] Sigmapharm also reiterates its primary arguments and charges Plaintiffs with having failed to address Sigmapharm's argument that the Audit Packages are inadmissible under Fed. R. Evid. 1006 ("Summaries to Prove Content"). That is not quite the case, although Plaintiffs hedge their argument on this point, alleging: (i) that the Court may never need to determine whether the Audit Packages are admissible summaries under Fed. R. Evid. 1006 because both the supporting data **and** the spreadsheets are admissible business records under Fed. R. Evid. 803(6); and (ii) that, so long as the underlying records qualify as business records under Fed. R. Evid. 803(6), it does not matter if "the audit packages were prepared during litigation," and that the master spreadsheet is admissible as a summary under Fed. R. Evid. 1006.[24]

### IV.    LEGAL STANDARDS AND ANALYSIS

In the instant Motion, under the applicable Federal Rules of Evidence and relevant case law cited below, the more the parties attempt to characterize the Audit Packages (whether as business record, summary to prove content, or something else), the more obvious it becomes that the Court can assess the merits of these arguments only at trial, after having reviewed the proffered documents competently identified, the related testimony and the forensic reports of the parties' representatives and experts tested against their trial testimony. While it is true that the Court indicated that these types of issues may be raised in an *in limine* motion or at trial, based upon its review of these underlying documents and these related *in limine* motions, the proper time to

---

[23] *Kavod*, 2021 WL 4877265, at *34.
[24] Pls.' Br. ¶¶ 48-50, Dkt. No. 127.

address these issues is at trial. This determination is consistent not only with the Court's similar ruling as to the post-litigation documents, but also with the Court's prior rulings on Sigmapharm's summary judgment motion and Sigmapharm's insistence that the *Daubert* motion to exclude Ms. Ryan's testimony be the subject of an evidentiary hearing, which the Court has determined will occur at the same time as trial based on the overlapping issues involved in Sigmapharm's *Daubert* motion and one of the primary disputes that is to be resolved at trial, i.e., Plaintiffs' compliance or noncompliance with the Audit Provisions of the Agreement.

In sum, the complicated, overlapping and, in this Court's view, inextricably intertwined nature of the issues on these *in limine* motions and the issues that go to the heart of this case -- whether Plaintiffs breached the Audit Provisions of the Agreement -- require the Court to defer this evidentiary issue to trial. This ruling is also consistent with the case law discussed immediately below and the disputed factual record that is now before the Court.

A. <u>The Business Records Exception to Hearsay under Fed. R. Evid. 803(6)</u>

A motion *in limine*, filed before the trial:

> requests that the Court "prohibit opposing counsel from referring to or offering evidence on matters prejudicial to the moving party." . . . The purpose of a motion in limine is to bar "irrelevant, inadmissible, and prejudicial" issues from being introduced at trial, thus "narrow[ing] the evidentiary issues for trial[.]" Evidence should not be excluded pursuant to a motion in limine, unless it is clearly inadmissible on all potential grounds. . . . The movant bears the burden of demonstrating that the evidence is inadmissable <u>on any relevant ground, and the court may deny a motion in limine when it lacks the necessary specificity with respect to the evidence to be excluded. . . . Evidentiary rulings, especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context.</u>

*Leonard v. Stemtech Health Sciences, Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013) (emphasis supplied) (internal citations omitted). The Third Circuit in *Bradley v. Pittsburgh Bd. of Ed.*, 913

F.2d 1064, 1069 (3d Cir. 1990) distinguished an *in limine* motion from a summary judgment motion:

> Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of fact, a motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.

*Bradley*, 913 F.2d at 1069. In *In re Depomed Pat. Litig.*, 2016 WL 743374, at *1-*2 (D.N.J. Feb. 22, 2016), the Court denied motions *in limine* to exclude evidence regarding the fundamentals of the contested patent, as movant's demands effectively asked the Court both to weigh evidence and to draw conclusions of law (not merely to exclude evidence), and the Court could and should address those demands at the bench trial, where "there is no risk of inadmissible evidence improperly influencing a jury." *In re Depomed*, 2016 WL 743374, at *2.

In the instant Motion, Sigmapharm seeks to preclude Plaintiffs from introducing at trial the Audit Packages on the grounds that they are hearsay not subject to the business records exception under Fed. R. Evid. 803(6) and they are not admissible under Fed. R. Evid. 1006 as "[s]ummaries to prove content." Before discussing these rules of evidence, the Court concurs with the general rule cited above in the *Depomed* case that these complicated, mutually dependent and hotly contested issues should be decided at trial.

The following summary of the relevant Federal Rules of Evidence leads to the business records exception.

Fed. R. Evid. 402 ("General Admissibility of Relevant Evidence") states in full:

> Relevant evidence is admissible unless any of the following provides otherwise:
>
> • the United States Constitution;
> • a federal statute;
> • these rules; or
> • other rules prescribed by the Supreme Court.
>
> Irrelevant evidence is not admissible.

10

Fed. R. Evid. 401 ("Test for Relevant Evidence") also states in full:

> Evidence is relevant if:
>
> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
>
> (b) the fact is of consequence in determining the action.

Fed. R. Evid. 403 ("Excluding Relevant Evident for Prejudice, Confusion, Waste of Time, or Other Reasons") authorizes the Court to exclude relevant evidence from consideration:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403. Plaintiffs have consistently argued throughout these *in limine* motions that Fed. R. Evid. 403 "does not apply to bench trial because there are no concerns about unfairly prejudicing a party."[25] As is noted in the Court's opinion regarding Sigmapharm's *in limine* motion as to post-litigation documents at pp. 7-8, that is somewhat of an overstatement of the holdings of majority of cases that Plaintiffs cite. *Apex Fin. Options, LLC v. Gilbertson*, 2022 WL 622130, at *1 (D. Del. Mar. 3, 2022) ("Courts in this district have consistently *exercised restraint* in applying Rule 403 in a bench trial 'because the Court is capable of assessing the probative value of the [evidence] and excluding any arguably improper inferences'") (emphasis supplied); *UHS of Del., Inc. v. United Health Servs., Inc.*, 2017 WL 1928340, at *1 (M.D. Pa. May 10, 2017) ("in the bench trial context, Rule 403 is *generally inapplicable*, because a judge is unlikely to be misled or confused by legal or factual nuance and is able to objectively assess probative value and reject any improper inference") (emphasis supplied); *Suter v. General Acc. Ins. Co. of Am.*, 424 F. Supp. 2d 781, 790 (D.N.J. Mar. 30, 2006) ("in the context of a bench trial, evidence should not be excluded under Rule 403 on the grounds that it is unfairly prejudicial, because the Court is capable of assessing

---

[25] Pls.' Obj. ¶¶ 1, 29-30, 54, Dkt. No. 127.

the probative value of the article and excluding any arguably improper inferences") (internal citations omitted).

Fed. R. Evid. 801 ("Definitions That Apply to This Article; Exclusions from Hearsay") defines hearsay at subsection (c)(1) and (2) as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 802 ("The Rule Against Hearsay") provides that hearsay is never admissible unless a federal statute; the Rules of Evidence; or other Supreme Court Rules apply. Fed. R. Evid. 803 ("Exceptions to the Rule Against Hearsay—Regardless of Whether the Declarant is Available as a Witness") describes the "business records" exception to hearsay at subsection 803(6):

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> (6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:
>
>> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>>
>> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>>
>> (C) making the record was a regular practice of that activity;
>>
>> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12)[26] or with a statute permitting certification; and
>>
>> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

It is true that, as Sigmapharm argues, a document prepared for litigation *may* be deemed to lack "trustworthiness" and "many of the normal checks upon . . . accuracy" that accompany a

---

[26] Fed. R. Evid. 902 ("Evidence That Is Self-authenticating") at (11) and (12) addresses "Certified Domestic [and Foreign] Records of Regularly Conducted Activity."

12

business record. *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1259 (9th Cir. 1984) (a special audit report ordered by a trust fund trustee, who suspected irregularity, was not a business record made in the ordinary course and was not admissible under the Fed. R. Evid. 803(6) exception to hearsay); *In re Hechinger Liquid. Trust*, 298 B.R. 240, 242-43 (Bankr. D. Del. 2003) (a "transaction detail report" generated by a third party for use by defendant in a bankruptcy avoidance action was not protected by the Fed. R. Evid. 803(6) business records exception to hearsay because there was no evidence that the report was made in the ordinary course of business by the third-party creator). However, as was also noted in the Court's Memorandum Opinion on Sigmapharm's Motion *in limine* regarding post-litigation documents, there is no blanket rule that documents created after litigation begins are inadmissible. *See Fed. Trade Comm'n v. Hackensack Meridian Health, Inc.*, 2021 WL 4145062, at *23 (D.N.J. Aug. 4, 2021), *aff'd*, 30 F.4th 160 (3d Cir. 2022) (a business record is not barred from admission simply because it was created after litigation commenced, although the Court should decide what weight to give such a record); *United States v. Onyenso*, 2013 WL 5322686, at *2 (D.N.J. Sept. 20, 2013) ("the mere existence of pending litigation or an alternative motive does not require a blanket ban on legitimate business records").

In the instant Motion, there is nothing self-evident about the provenance and content of the three large and multi-layered spreadsheets that Sigmapharm provided in electronic format at Exhibit 2 and that themselves constitute only a "summary file" and not the complete Audit Packages.[27] The same is true of the underlying files that give rise to the "summary" and that were provided to the Court by flash drive. Like the post-litigation documents, and Sigmapharm's overarching assertion that Plaintiffs failed to comply with the Audit Provisions of the Agreement and, more specifically, failed to provide the underlying support for the Audit Packages and other

---

[27] Sigmapharm Br., at 1 n.2; Spreadsheets, Ex. 2 (electronic), Dkt. No. 117.

damages calculations, the Court will be able to assess the evidentiary competence and weight of the Audit Packages only after they have been tested at trial through the forensic reports and testimony of the parties' representatives and experts and any other admissible evidence.[28]

### B. Admissions of Summaries to Prove Content under Fed. R. Evid. 1006

Sigmapharm also argues that the Court should not admit the Audit Packages under Fed. R. Evid. 1006 ("Summaries to Prove Content"), which allows the proponent of evidence to introduce a summary of competent evidence in lieu of discrete and voluminous records under certain conditions and states in full:

> Fed. R. Evid. 1006 ("Summaries to Prove Content")
>
> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

Quoting 5 Weinstein's Evidence ¶ 1006(02), p. 1006-6 (1983), the court in *In re Summa T. Corp., Int'l*, 73 B.R. 388, 392-93 (Bankr. E.D. Ark. 1987) explained: "Whether or not the originals are introduced at the trial, the summaries may be relied upon as evidence-in-chief." The Court in *United States v. Johnson*, 594 F.2d 1253, 1255 (9th Cir.), *cert. denied*, 444 U.S. 964 (1979) interpreted the Advisory Committee Note to the 1972 proposed rule as follows:

> The purpose of Rule 1006 is to allow the use of summaries when the volume of documents being summarized is so large as to make their use impractical or impossible; summaries may also prove more meaningful to the judge and jury.

*Johnson*, 594 F.2d at 1255.

---

[28] None of this detracts from the Court's prior statement that Sigmapharm has provided substantial evidence in support of its claim that Plaintiffs breached the Audit Provisions of the Agreement. *Kavod*, 2021 WL 4877265, at *30. Nor does it detract from Plaintiffs' ability to seek to show otherwise. Of course, the final determination of this vigorously disputed issue must await trial because of the many overlapping disputed issues of fact involved in deciding whether the Audit Packages are admissible and whether the Audit Provisions were breached by Plaintiffs.

Here, Sigmapharm relies on a series of cases such as *County of Wash. v. U.S. Bank, N.A.*, 2012 WL 3860474, at *14, *15, *22, *24-*25, *27 (W.D. Pa. Aug. 17, 2012), *R. & R. adopted*, 2012 WL 3860438 (W.D. Pa. Sept. 5, 2012).  In that case, at an evidentiary hearing incident to defendant's motion to remand, the Court refused to admit a summary of 715 mortgage transactions, where the proponent could not produce the underlying documentation; the proffered compilation appeared to be a "summary of summaries"; and the vice president called upon to testify about the accuracy of the summary could state only that the data were gleaned from various sources not kept in the ordinary course of business and that she had no knowledge of the underlying records, with the result that the court deemed the summary mere hearsay.  The Court thus remanded the matter, as defendant failed to prove that the amount in controversy met the jurisdictional threshold. *County of Wash.*, 2012 WL 3860474, at *27.

Similarly, as Sigmapharm argues, summaries that include interpretations, argument or conclusions are not admissible under Fed. R. Evid. 1006.  *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 599 F. Supp. 2d, 648, 650, 654, 656 (M.D.N.C. 2009) (in an opinion after a bifurcated evidentiary hearing on damages, excluding a summary that included a cost calculation that differed from the witness's testimony about how costs should be calculated, as the discrepancy created the false impression that a foundation had been laid for the anomalous calculation in the summary); *Allison v. Dolich*, 2018 WL 834919, at *11 (D. Ore. Feb. 12, 2018) (on plaintiff-employees' motion for summary judgment, excluding as an exhibit a summary of payroll records that contained plaintiffs' preferred calculation of damages that exceeded the data found in the underlying records, even though the underlying records were admissible under Fed. R. Evid. 803(6)); *First Fin. Bank, N.A. v. Bauknecht*, 71 F. Supp. 3d 819, 835-36 (C.D. Ill. 2014) (on plaintiffs' motion for summary judgment, excluding as an exhibit a summary that contained implicit argument that losses included on a spreadsheet resulted from alleged breach of contract

15

by defendant former employee); *In re King*, 2020 WL 6066015, at *2 (Bankr. N.D. Ga. Oct. 14, 2020) ("[e]ven if the underlying documents are admissible," the summary is not if it "attempts to present conclusions about the underlying documents") (on plaintiff's side-objection to defendant's opposition to plaintiff's motion for summary judgment, excluding a spreadsheet summary in which a party-in-interest without forensic training purported to "track" an adversary's deposits and expenditures).

Not surprisingly, Plaintiffs cite a string of cases that generally resulted in different rulings. In *Musket Corp. v. Star Fuel of Okla., LLC*, 2012 WL 4758082, at *4 (W.D. Okla. Oct. 5, 2012), the adversary argued that the court should exclude the proponent's Excel spreadsheets because the proponent had not provided underlying documents. On a *Daubert* motion without an evidentiary hearing, the proponent persuaded the court that proponent used the spreadsheets in the ordinary course of business, and the court admitted them under Fed. R. Evid. 803(6). *Musket Corp.*, 2012 WL 4758082, at *4. In *Habersham Plantation Corp. v. Molyneux*, 2011 WL 13216995, at *9-*10 (S.D. Fla. Dec. 5, 2011), the court denied adversary's motion *in limine* (without an evidentiary hearing) to exclude proponent's sales spreadsheets under Fed. R. Evid. 1006 on the grounds that proponent had not supported them with underlying records; the proponent persuaded the court that these spreadsheets *were* the raw data and that proponent used no other business records). Plaintiffs also rely on *United States v. Clotaire*, 963 F.3d 1288, 1294 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 1743 (2021) (not a Rule 1006 case), a criminal matter which appears to involve somewhat different circumstances, but did allow a "summary" that was based on some data that was not utilized by the proponent in the ordinary course. In this decision, which followed the appeal of several evidentiary rulings after trial, the court decided that a mere "format change" in the proffered evidence with no change in their "communicative content" (substituting still photographs for a surveillance video in a case involving identity theft of employment benefits; printing out an

16

electronically stored government data set onto a spreadsheet for admission at trial, even though the litigant did not use printed spreadsheets in the ordinary course of business) did not prevent admission of these elements of evidence as a business record. *Clotaire*, 963 F.3d at 1292, 1293-94.

As the description of these cases indicates, some were decided after an evidentiary hearing or trial, while others were decided on motion without an evidentiary hearing. In this case, the Court's ability to assess on a motion *in limine* whether the Audit Packages are admissible under Fed. R. Evid. 1006 as a "summary to prove content" is even more difficult and remote than is its ability to assess their admissibility under Fed. R. Evid. 803(6), as the former is dependent on the latter (and the Plaintiffs' argument that the Audit Packages themselves are business records). In this Court's view, the reliability of the underlying source data; the relationship between the Audit Packages and the underlying data; the exploration of whether the Audit Packages contain interpretations, argument or conclusions that would disqualify them for admission under Fed. R. Evid. 1006; and Plaintiffs' return to the argument that the Audit Packages in summary and "raw" form are business records under Fed. R. Evid. 803(6), all require further testimony and other evidence to establish. For the reasons previously stated, including the Court's prior rulings that expressed a likelihood that these types of issues would have to be decided at trial, the vigorously and directly disputed nature of the submissions as to substance and admissibility, the highly technical nature of the submissions and their direct relationship to the issues at the heart of this case, the Court confirms that these issues will also be decided at trial.

17

V. **CONCLUSION**

For the reasons set forth above, Sigmpharm's Motion *in limine* to exclude the Audit Packages as evidence under Fed. R. Evid. 803(6) or Fed. R. Evid. 1006 is **DENIED**, without prejudice to Sigmapharm's right to seek to exclude the Audit Packages during trial.

A conforming Order is being entered contemporaneously with this Opinion.

Date: November 22, 2022

*Vincent F. Papalia*
VINCENT F. PAPALIA
United States Bankruptcy Judge