FILED
Jeanne A. Naughton, CLERK
NOVEMBER 22, 2022
United States Bankruptcy Court
Newark, NJ
By: *Juan Filgueiras, Deputy*

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| In Re<br><br>TRI HARBOR HOLDINGS CORPORATION, *et al.*,[1]<br><br>Debtor. | Case No.:   19-13448 (VFP)<br><br>Chapter:   11 |
| KAVOD PHARMACEUTICALS LLC (*f/k/a* RISING PHARMACEUTICALS, LLC, *f/k/a* RISING PHARMACEUTICALS, INC.) and TRI HARBOR HOLDINGS CORPORATION (*f/k/a* ACETO CORPORATION),<br><br>Plaintiffs,<br><br>v.<br><br>SIGMAPHARM LABORATORIES, LLC,<br><br>Defendant. | Adv. Pro. No.: 19-2053 (VFP)<br><br>Judge Vincent F. Papalia |

**MEMORANDUM OPINION DENYING WITHOUT PREJUDICE SIGMAPHARM'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE PENDING RESULTS OF EVIDENTIARY HEARING TO BE COMBINED WITH TRIAL**

| | |
|---|---|
| **LOWENSTEIN SANDLER LLP**<br>**Attorneys for Plaintiffs, Kavod Pharmaceuticals LLC (*f/k/a* Rising Pharmaceuticals, LLC, *f/k/a* Rising Pharmaceuticals, Inc.) and Tri Harbor Holdings Corporation (*f/k/a* Aceto Corporation)**<br>Reynold Lambert, Esq.<br>Wojciech F. Jung, Esq.<br>Gavin J. Rooney, Esq.<br>One Lowenstein Drive<br>Roseland, New Jersey 07068 | **ELLIOTT GREENLEAF, P.C.**<br>**Attorneys for Defendant,**<br>**Sigmapharm Laboratories, LLC**<br>Henry F. Siedzikowski, Esq.<br>Andrew Estepani, Esq.<br>Timothy Myers, Esq.<br>Elliott Greenleaf, P.C.<br>925 Harvest Drive, Ste. 300<br>Blue Bell, PA 19422 |

---

[1] The Liquidating Debtors in the chapter 11 cases and the last four digits of each Liquidating Debtor's taxpayer identification number are as follows: Tri Harbor Holdings Corporation (f/k/a Aceto Corporation) (0520); Tri Harbor Chemical Holdings LLC (f/k/a Aceto Agricultural Chemicals LLC, f/k/a Aceto Agricultural Chemicals Corporation) (3948); Tri Harbor Realty LLC (f/k/a Aceto Realty LLC) (7634); Kavod Pharmaceuticals LLC (f/k/a Rising Pharmaceuticals, LLC, f/k/a Rising Pharmaceuticals, Inc.) (7959); Kavod Health LLC (f/k/a Rising Health, LLC) (1562); Kavris Health LLC (f/k/a Acetris Health, LLC) (3236); KAVACK Pharmaceuticals LLC (f/k/a PACK Pharmaceuticals, LLC) (2525); Arsynco, Inc. (7392); and Acci Realty Corp. (4433).

**HONORABLE VINCENT F. PAPALIA**
**United States Bankruptcy Judge**

## I.     INTRODUCTION

This matter comes before the Court on the motion (the "Motion") filed by defendant Sigmapharm Laboratories, LLC ("Sigmapharm") for: (i) financial and other sanctions for alleged spoliation of evidence by plaintiffs, which are two of the nine jointly administered Debtor-entities, Kavod Pharmaceuticals LLC, f/k/a Rising Pharmaceuticals, LLC f/k/a Rising Pharmaceuticals, Inc. ("Rising"), and Tri Harbor Holdings Corp., f/k/a Aceto Corporation ("Aceto") (collectively, the "Plaintiffs"); and (ii) an evidentiary hearing on the Motion. Sigmapharm asserts that Plaintiffs destroyed or have withheld certain documents that they were required to maintain and produce under the audit and related provisions of the parties' June 22, 2006 *Master Product Development and Collaboration Agreement,* the Court Orders described below and the common law duty to preserve documents and information relating to an actual or reasonably foreseeable lawsuit.[2] The Plaintiffs filed an objection that denies Plaintiffs' allegations in all material respects and asserts that the Motion is untimely. Sigmapharm has filed a reply.

## II.    JURISDICTIONAL STATEMENT

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the Standing Orders of Reference entered by the United States District Court on July 10, 1984 and amended on September 18, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) [claims allowance] and (O). In addition, a Bankruptcy Court has "jurisdiction to interpret and enforce its own prior orders." *Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 151 (2009) (in that case, a Confirmation Order entered ten (10) years earlier). Venue is proper in this Court under 28 U.S.C. § 1408. The court issues the following findings of fact and conclusions of law pursuant to Fed. R.

---

[2] Sigmapharm Br., at 1, Dkt. No. 133.

Bankr. P. 7052. To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

### III.    STATEMENT OF RELEVANT FACTS AND PROCEDURE

#### A. Preliminary Statement

The dispute between the parties arises from a June 22, 2006 *Master Product Development and Collaboration Agreement* (the "Agreement") for producing, marketing and sharing profits from the sale of pharmaceuticals.  Other details concerning the Agreement and the relationship between the parties are included in this Court's October 5, 2021 Opinion that granted in part and denied in part the parties' separate motions for summary judgment.  *Kavod Pharmaceuticals LLC v. Sigmapharm Labs., LLC (In re Tri Harbor Holdings Corp.)*, 2021 WL 4877265 (Bankr. D.N.J. Oct. 5, 2021) (the "Opinion").[3]  The findings of fact and conclusions of law from the Opinion are incorporated herein by reference.  To the extent that this summary deviates from the Opinion, the Opinion controls.

Among the claims that the October 5, 2021 Opinion (and October 6, 2021 Order) left for trial are those included in Sigmapharm's Third Counterclaim of its August 19, 2019 Answer to the Plaintiffs' Complaint.  The Third Counterclaim sought: (i) to compel Plaintiffs to make their books and records available for Sigmapharm's inspection; and (ii) to complete an audit of the parties' profit-sharing under the Agreement as mandated by §§ 1.36, 1.37, 5.3.4, 8.6, 12.5.3 of the Agreement (generally, the "Audit Requirements") and as compelled by certain Court Orders described *infra*.[4]  Section 8.6 of the Agreement ("Maintenance of Record; Audits") provided:

---

[3] The Court signed the Opinion on October 5, 2021 and the accompanying Order on October 6, 2021 but deferred docketing them until October 18, 2021 to give the parties the opportunity to seek redaction of references to evidentiary material that they filed under seal.  Neither party requested any redaction.

[4] Aug. 19, 2019 Answer and Counterclaim ¶¶ 120-29, Dkt. No. 5.  As explained in the October 5, 2021 Opinion, the Third Counterclaim also incorporated by reference or by Exhibit:  Sigmapharm Claim Nos. 155-2 and 162-1; Sigmapharm's March 23, 2018 Complaint filed in *Sigmapharm Labs., LLC v. Rising Pharmaceuticals, Inc. & Aceto*

> During the term of this Agreement and for a period of at least seven (7) years after the date of termination of this Agreement, each Party shall keep complete and accurate records of all expenses incurred by it under this Agreement, which expenses are to be reimbursed by one or both of the other Parties.[5]

The October 5, 2021 Opinion (and October 6, 2021 Order) provided in relevant part:

> 4. The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff[s'] motion for summary judgment to disallow certain elements of Sigmapharm's Claim Nos. 155-2 (which pertains to Aceto) and 162-1 (which pertains to Rising) as follows:
>
> . . .
>
> (B) The Court **GRANTS IN PART** Plaintiffs' motion for partial summary judgment that disgorgement is not an available remedy for breach of the Agreement; provided, however, that this relief is granted **WITHOUT PREJUDICE** to Plaintiffs' claims for damages resulting from any breach of the Agreement, including (without limitation) Plaintiffs' alleged failure to: (i) allow the audit; (ii) provide appropriate backup documentation; (iii) maintain necessary and transparent books and records; or (iv) properly perform the administrative duties under the Agreement, including those that gave rise to the administrative fee paid to Rising pursuant to the Agreement.[6]

A July 22, 2022 Sixth Supplemental Joint Scheduling Order required the parties to file motions *in limine* by August 12, 2022, originally returnable on October 4, 2022, and fixed an October 13, 2022 conference to schedule trial dates beginning October 24, 2022 through December 2, 2022.[7] The parties timely filed four (4) *in limine* motions. The Court rescheduled the return date of the *in limine* motions (along with the scheduling conference) to October 18, 2022 and then to November 9, 2022.

Sigmapharm filed the instant Motion on September 22, 2022, to be returnable at the same time as the *in limine* motions, and this Motion was adjourned to be heard at the same time as those

---

*Corp.*, Dkt. No. 2:18-cv-1238 (E.D. Pa.) (the "District Court," or the "District Court Action"); Sigmapharm's Statement of Claims in the Arbitration ordered by the District Court under Arbitration Case No. 01-18-0002-4042; the October 26, 2018 District Court Order that compelled arbitration and stayed the District Court Action (including Sigmapharm's demand for an audit and for a declaration of rights) but compelled Plaintiffs to preserve documents, "which might arguably be relevant to the audit provision" (internal citation omitted).

[5] Sigmapharm Br., Agreement § 8.6, Ex. 5, Dkt. No. 133.

[6] *Kavod*, 2021 WL 4877265, at *45; Oct. 6, 2021 Order ¶ 4(B), Dkt. No. 69. The Court notes that the word "Plaintiffs" in line 4 of paragraph 4(B) should be "Sigmapharm's."

[7] July 22, 2022 6th Supplemental JSO, Dkt. No. 111.

motions. The concluding paragraph of Sigmapharm's brief seeks damages in "the full amount of $4 million of available funds for Sigmapharm's Proofs of Claims and its Counterclaims."[8] That figure refers to the aggregate $4 million reserve created under the parties' *Stipulation And Consent Order* entered on December 12, 2021 in the main bankruptcy case.[9] The sole decretal paragraph of Sigmapharm's proposed Order on this Motion expands the relief requested and states in full:

> It is hereby **ORDERED** that Sigmapharm's Motion for Sanctions for Spoliation of Evidence and For an Evidentiary Hearing is **GRANTED. JUDGMENT** is hereby entered in favor of Sigmapharm and against [Plaintiffs] on all counts of [Plaintiffs'] Adversary Complaint and Sigmapharm's Counterclaims. [Plaintiffs'] Objections to Sigmapharm's Proofs of Claims are **OVERRULED**. [Plaintiffs] shall remit to Sigmapharm the Sigmapharm Rising Cash Reserve and the Sigmapharm Aceto Cash Reserve (as set forth in [the December 12, 2021 Stipulation and Consent Order]) within (2) two days of the entry of this Order.[10]

Because this Motion overlaps in substantial part -- if not entirely -- with the essence of Sigmapharm's affirmative claims for damages arising from Plaintiffs' alleged breach of the Audit Requirements of the Agreement and Plaintiffs' defenses to those claims and seeks to add new theories of claims and damages ("spoliation") to Sigmapharm's existing claims based on the same or very similar underlying allegations, the Court will deny Sigmapharm's Motion, without prejudice to its rights to raise these claims again at trial, subject to any objections by Plaintiffs, including as to the timing of the Motion.

B. <u>Alleged Facts and Past Procedure Relevant to the Spoliation Motion</u>

Sigmapharm alleges at the core of its Motion that Plaintiffs have not produced, for a period of seven (7) years (since Sigmapharm's first demand in late 2015 for Plaintiffs to comply with the Audit Requirements to the present) adequate, neutral and/or third-party proofs of various expenses

---

[8] Sigmapharm Br., at 36, Dkt. No. 133.
[9] The full title of this December 12, 2021 Stipulation and Consent Order is *Stipulation And Consent Order Regarding Liquidating Debtors' Renewed Motion Seeking (I) Estimation of Claim Nos. 155 And 162 Filed By Sigmapharm Laboratories, LLC For Plan Reserve And Distribution Purposes And (II) Modification Of Prior Consent Order Related Thereto*, Main Dkt. No. 1503.
[10] Sigmapharm Br., Form Order, Ex. 1, Dkt. No. 133.

5

and deductions that reduced the parties' shared net profits under the Agreement.[11] Sigmapharm alleges that Plaintiffs' failure or inability to produce these records violates:

(i) the October 26, 2018 Order issued by the District Court in the Eastern District of Pennsylvania compelling Plaintiffs to preserve records;[12]

(ii) the June 7, 2021 Order issued by this Court enforcing the Audit Requirements of the Agreement;[13] and

(iii) the duty to preserve documents and information relating to pending or reasonably foreseeable litigation.[14]

In support of its claims, Sigmapharm also relies heavily on the December 18, 2020 deposition testimony of Eugene Hughes Sr., who served as Vice President of Finance for Rising Pharmaceuticals, Inc. from June 12, 2017 to April 19, 2019 and who described the type of document(s) that he deemed necessary to support the expenses and deductions that Sigmapharm questioned.[15] Sigmapharm correlates its demands with Mr. Hughes's December 18, 2020 testimony as follows:

---

[11] *Kavod*, 2021 WL 4677265, at *6 (for initial audit demands);
[12] Sigmapharm Br., Oct. 26, 2018 Order, Ex. 2, Dkt. No. 133. It is not clear why Sigmapharm believes that the Bankruptcy Court has direct authority to enforce the October 26, 2018 Order issued by the Eastern District of Pennsylvania (perhaps Sigmapharm surmises that the incorporation of the October 26, 2018 Order in its August 19, 2019 Counterclaim makes it enforceable in this case).
[13] June 7, 2021 Order, Dkt. No. 64.
[14] Sigmapharm Br., 24-25, Dkt. No. 133.
[15] May 5, 2021 Decl. of Eugene Hughes ¶ 1, Dkt. No. 52 (for Mr. Hughes's corporate status)

| Category | Hughes Dep. | Hughes Description[16] |
|---|---|---|
| Returns | 231:16-232:25 | Certificates of Destruction.[17] |
| CMS | 119:6-20<br>222:2-8 | Medicaid state invoice.<br>Validation of Medicaid state invoice against the price published by Rising.<br>Hard copy from accounts payable files.[18] |
| Price differential | 225:4-19 | [not clear from excerpt] Data collected in iContracts is used to compare wholesale cost to retail price offer. |
| Rebates | 226:2-227:17 | Customer contract is first source for determining rebate.<br>A product-specific rebate is memorialized in a pricing letter. |
| Chargeback | 211:2-24 | A pricing letter would memorialize a "pricing event" between Rising and a customer, compared to published prices in pricing tables on iContracts. |
| | **303-304** | [Pages 303-304 were omitted from Exhibits. Sigmapharm represents that Mr. Hughes testified that a chargeback would be supported by a credit memo with a copy of a check.] |

Although the details are not completely clear from the deposition pages isolated by Sigmapharm, Mr. Hughes did testify that there should have been at least certain backup documents or information (often, if not always, in paper form) and not just data entries to justify the expenses and deductions noted above.

Sigmapharm also complains that Plaintiffs have refused to provide any backup documents for requested transactions that occurred after Debtors/Plaintiffs sold to Shore Suven Pharma, Inc. ("Shore Suven") on April 19, 2019 the pharmaceutical business that Plaintiffs had operated with Sigmapharm. Although the Shore Suven Asset Purchase Agreement (the "APA") did not seem to expressly include the transfer of books and records relating to the Sigmapharm relationships, and Plaintiffs did not assume and assign the Agreement to Shore Suven, Plaintiffs have apparently

---

[16] These are not exact quotes but paraphrasing of the cited sections of the December 18, 2020 Hughes Deposition Transcript at Sigmapharm Br., Ex. 23, Dkt. No. 133.
[17] Sigmapharm also referenced Hughes Dep. Tr. 325 in the "Returns" row but did not produce that page.
[18] Although Hughes appeared to testify that all this reconciliation and comparison could be done on "iContracts," he also indicated that there was paper backup.

7

transferred those books and records to Shore Suven nonetheless. Plaintiffs raise the April 19, 2019 closing of the Shore Suven sale as the basis for not producing supporting documents after April 19, 2019 on the grounds that Plaintiffs transferred their *liabilities* to customers under the Agreement to Shore Suven, *infra*, and that they are not seeking as damages those post-closing liabilities. In their response, Plaintiffs also assert that they kept copies of all Sigmapharm-related records that could reasonably be duplicated and contracted with Shore Suven for continued access to everything else related to Sigmapharm.

The relevant sections of the March 31, 2019 Amended and Restated APA docketed independently on March 31, 2019 (the original APA having been attached to Debtors' March 8, 2019 Sale Motion as Exhibit B) stated in most relevant part:

> 1.2 <u>Excluded Assets</u>. Notwithstanding the provisions of Section 1.1, nothing herein contained shall be deemed to sell, transfer, assign or convey the Excluded Assets to Buyer, and Sellers shall retain all right, title and interest to, in and under the Excluded Assets. For all purposes of and under this Agreement, the term "Excluded Assets" shall mean any right, title or interest in, to or under any of the following assets: . . .
>
> (b) any Contracts not listed or described on Schedule 1.1(b) (the "Excluded Contracts"); . . .
>
> (i) all receivables (other than Accounts Receivables), claims or causes of action related primarily to any Excluded Asset or Excluded Liability, including any such item to the extent arising under any guarantee, warranty, indemnity or similar right in favor of any Seller in respect of any Excluded Asset or Excluded Liability;
>
> (m) all rights, claims and causes of action relating to any Excluded Asset or any Excluded Liability, and any proceeds thereof; . . .
>
> (s) all Inventory that is expired as of the Agreement Date; and
>
> (t) all other assets set forth on Schedule 1.2(t) [not attached].[19]

---

[19] Mar. 31, 2019 Amended and Restated APA, Main Dkt. No. 258; Debtors' Mar. 7, 2019 Sale Motion, Shore Suven APA, Ex. B, Main Dkt. No. 109. Corporate books and records were excluded at 1.2(f), but these would not seem to be germane to the contested transfers.

Sigmapharm cites the "Appendix," a short paragraph attached to the document titled "Sigmapharm's Sample Requests: Index of Documents Produced by Rising to Date; As of March 1, 2021" (the "Sampling Index") as evidence of Rising's improper transfer of records to Shore Suven.[20] On this ledger of 399 entries, Sigmapharm isolates thirteen (13) (and only thirteen (13)) identified as "Post-Sale").[21] For each of these, Rising does not provide a supporting document but writes, "See Appendix."[22] The Appendix is a single footnote or legend at the end of the Sampling Index and states in full:

> On April 10, 2019, the Bankruptcy Court approved the sale of substantially all of Rising's assets to Shore Suven Pharma, Inc. ("Shore Suven"), pursuant to that certain Amended and Restated Asset Purchase Agreement, dated as of March 31, 2019 (the "APA"). [Chapter 11 Cases, Docket No. 372]. Under the APA, Shore Suven paid $15 million in cash and assumed certain liabilities, including $122 million of accrued payables. [*See* APA § 1.3(c); APA, Schedule 1.3(c) at Rising_SP_00085144]. The liabilities assumed by Shore Suven included the remaining liabilities Rising owed to its customers for the Sigmapharm products, including liabilities for returns, Medicaid, and rebates. [*See* APA, Schedule 1.3(c) at Rising_SP_00085144*;* Rising_SP_00049249; Rising_SP_00049250; Rising_SP_ 00085208; RISING_SP_00092055; RISING_SP_00091985; RISING_SP_ 00090833].[23]

Plaintiffs' response is a mixture of factual allegation and legal argument and, like Sigmapharm's, includes prior grievances (some of which included previously unknown disclosures concerning Plaintiffs' relationship to the data sought by Sigmapharm, as described above). Plaintiffs also argue that Sigmapharm's Motion is an amalgam of prior motions, some of which the Court denied (as in the May 18, 2021 Order denying without prejudice Sigmapharm's motion to compel discovery from Shore Suven);[24]

Also, as is noted above, in response to Sigmapharm's allegation that Plaintiffs transferred significant financial records to Shore Suven, Plaintiffs' Counsel states that Rising *electronically*

---

[20] Sigmapharm Br., at 18, Dkt. No. 133.
[21] Sigmapharm Br., at 18; Sampling Index, Ex. 29, Dkt. No. 133. This thirteen (13) entries are 171, 173, 300, 311, 321, 329, 364-366, 370, 392-394.
[22] Sigmapharm Br., Sampling Index, Ex. 29, Dkt. No. 133.
[23] Sigmapharm Br., Sampling Index, Ex. 29, Dkt. No. 133.
[24] Pls.' Obj. ¶¶ 2, 13, Dkt. No. 134; Mar. 19, 2021 Sigmapharm Cross-motion, Dkt. No. 30; May 18, 2021 Order, Dkt. No. 54.

9

*duplicated any and every record that it gave to Shore Suven* that it could reasonably have copied and that Plaintiffs and Shore Suven have entered multiple amendments to the March 31, 2019 APA to extend the period through which they must retain records through the present (as governed most recently by the July 11, 2022 Amendment No. 7 to the Amended and Restated APA).[25] Plaintiffs' Counsel quotes and reiterates its March 24, 2021 statement objecting to Sigmapharm's motion to compel Shore Suven for the point that both Plaintiffs and Shore Suven have access to significant business records:

> Prior to the closing of the Amended and Restated Asset Purchase Agreement with Shore Suven dated as of March 31, 2019 (the "APA"), Plaintiffs copied all documents and data that could reasonably be copied, including Plaintiffs' servers. For those items for which it was not feasible or reasonable to copy, Plaintiffs negotiated a contractual right under the APA to access documents and data acquired by Shore Suven, including Rising's Enterprise Resource Planning ("ERP") systems and hard-copy documents stored offsite at Iron Mountain. (APA § 6.2(e), (f).)[26]

Plaintiffs concur that the Debtors did not assume and assign the June 22, 2006 Agreement to Shore Suven in the April 19, 2019 sale on the basis that the Agreement had been "terminated" more than one year before (that is, on March 23, 2018).[27]

After the parties entered the June 10, 2020 sampling protocol, Plaintiffs charge Sigmapharm for delaying until October 1, 2020 its production of a Sampling Index from which Plaintiffs could work.[28] As a consequence, by the time it undertook the sampling, Rising had no employees and had to retain its eventual forensic expert, Alvarez & Marsal, as well as Eugene Hughes and Shore Suven to answer the sampling request.[29]

In the course of pursuing spoliation, Sigmapharm's reply brief delves even more deeply into issues that should and will be reserved for trial (e.g., analysis of the reports of Plaintiffs'

---

[25] Pls.' Obj. ¶ 30; July 11, 2022 Amendment No. 7, Ex. K (filed under seal), Dkt. No. 134, referring to the Mar. 31, 2019 Amended and Restated APA, Main Dkt. No. 258.
[26] Pls.' Obj. ¶ 30, Dkt. No. 134, quoting Mar. 24, 2021 Pls.' Obj., at 10, Dkt. No. 34.
[27] Pls.' Obj. ¶ 31, Dkt. No. 134.
[28] Pls.' Obj. ¶¶ 13-16, Dkt. No. 134.
[29] Pls.' Obj. ¶ 40, Dkt. No. 134.

forensic expert; further narrative of Plaintiffs' alleged obstruction; complaints about non-production of specific documents, all of which are disputed by Plaintiffs in every material respect).[30]

## IV. LEGAL STANDARDS AND ANALYSIS

"Spoliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably for[e]seeable litigation.'" *Mosaid Techs. Inc. v. Samsung Elecs. Co., Ltd.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004); *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (citing *Black's Law Dictionary* 1401 (6th ed. 1990). Courts emphasize that spoliation encompasses both: (i) affirmative destruction; and (ii) failure to preserve. *Philips Elecs. N.A. Corp. v. BC Tech.*, 773 F. Supp. 2d 1149, 1194 (D. Utah 2011). "In most cases, the duty to preserve is triggered by the filing of a lawsuit, but that duty may arise even before a lawsuit is filed if a party has notice that future litigation is likely." *Philips*, 773 F. Supp. 2d at 1195.

The Plaintiffs argue that the Third Circuit in *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 79 (3d Cir. 2012) (leaning in part on *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995)) established that the Court must find that the targeted party acted in bad faith through "actual suppression or withholding of evidence" before imposing sanctions for spoliation. *Bull*, 665 F.3d at 73-74 (the issue was whether plaintiff committed spoliation by producing copies and not originals of requested documents). The Third Circuit in *Bull* reiterated:

Spoliation occurs where:

(i) the evidence was in the party's control;
(ii) the evidence is relevant to the claims or defenses in the case;
(iii) there has been actual suppression or withholding of evidence; and,
(iv) the duty to preserve the evidence was reasonably foreseeable to the party.

---

[30] Sigmapharm Reply, Dkt. No. 140.

11

*Bull*, 665 F.3d at 73.  The Court reasoned that bad faith is a precondition to sanctioning a party for spoliation:

> [A] finding of bad faith is pivotal to a spoliation determination. This only makes sense, since spoliation of documents that are merely withheld, but not destroyed, requires evidence that the documents are actually withheld, rather than—for instance—misplaced. Withholding requires intent.

*Bull*, 665 F.3d at 79.  Plaintiffs argue that any cases cited by Sigmapharm and predating *Bull* are not authoritative on this point.[31]

Sigmapharm avers that Plaintiffs' conduct exceeded "grossly negligent" and "was concertedly intentional"; therefore, Sigmapharm does not argue whether the Court may find spoliation on mere negligence.[32] Sigmapharm cites numerous circumstantial grounds for implying bad faith.[33] *Folino v. Hines*, 2018 WL 5982448, at *3 (W.D. Pa. Nov. 14, 2018) (citing *Bull*, 665 F.3d at 79) (a "finding of bad faith is pivotal to a spoliation determination" and "[a] finding of intent to deprive may be based on circumstantial evidence") (other internal citation omitted); *Bozic v. City of Wash., Pa.*, 912 F. Supp. 2d 257, 269 (W.D. Pa. 2012) (after *Bull*, a party can demonstrate bad faith by showing that the targeted party acted with "reckless disregard for the consequences of an intentional and conscious destruction of evidence, previously specially preserved for purposes of subsequent litigation, at a time when litigation is necessarily foreseeable");[34] *Brown v. Certain Underwriters at Lloyds, London*, 2017 WL 2536419, at *4 (E.D. Pa. June 12, 2017), *aff'd*, 777 F.3d. App'x 34 (3d Cir. 2019) (targeted party's failure to explain loss of cellular phone

---

[31] Pls.' Br. ¶ 54, Dkt. No. 134.  Plaintiffs also focus on the standards and sanctions set forth in Fed. R. Civ. P. 37(e) ("Failure to Preserve Electronically Stored Information") ("ESI"), but it is not at all clear that Sigmapharm's requests for documents and information are limited to ESI.  Pls.' Br. ¶¶ 48-49, Dkt. No. 134.
[32] Sigmapharm Br., at 25, Dkt. No. 133.
[33] Sigmapharm Br., at 27-28, Dkt. No. 133.
[34] The Court in *Bozic v. City of Wash., Pa.*, 912 F. Supp. 2d 257, 269-70 (W.D. Pa. 2012), decided the same year as *Bull*, did a quick and thorough job of canvassing opinions that attempted to interpret and to apply it, finding three (3) unpublished and non-precedential Third Circuit cases reaching mixed results on intent: "[a]lmost all of the district court cases applying *Bull* of which this Court is aware have declined to find spoliation where the party's conduct was no worse than negligent, or where the evidence was lost in the normal course of daily business or other similar activity."

or to take any steps to preserve information on it enabled counterparty to carry its burden that target had "suppressed or withheld evidence").

> When the Court imposes sanctions for spoliation, the court analyzes:
>
> (1) the degree of fault of the party who altered or destroyed the evidence;
> (2) the degree of prejudice suffered by the party seeking sanctions; and
> (3) whether there is a lesser sanction that will avoid substantial unfairness to the aggrieved party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

*Bull*, 665 F.3d at 73 n.5 (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)) (paragraphing added in part).

> Sanctions for spoliation are meant to serve three (3) functions at once:
>
> (i)   a remedial function by leveling the playing field or restoring the prejudiced party to the position it would have been without spoliation;
>
> (ii)  a punitive function, by punishing the spoliator for its actions; and
>
> (iii) a deterrent function, by sending a clear message to other potential litigants that this type of behavior will not be tolerated and will be dealt with appropriately if need be.

*Centimark Corp. v. Pegnato & Pegnato Roof Mgmt., Inc.*, 2008 WL 1995305, at *9 (W.D. Pa. May 6, 2008) (quoted, paragraphing added), *citing Mosaid*, 348 F. Supp. 2d at 335. The Court in *Jacobs v. City of Pittsburgh*, 143 F. Supp. 3d 307, 311 (W.D. Pa. 2015) identified as potential sanctions for spoliation:

> (i)   dismissal of a claim . . .
> (ii)  judgment in favor of the prejudiced party,
> (iii) suppression of evidence,
> (iv)  an adverse inference instruction that the spoiled [spoliated] evidence was harmful to the offending party's case,
> (v)   fines, and
> (vi)  attorneys' fees and costs.

*Jacobs*, 143 F. Supp. 3d at 311 (quoted, paragraphing added). The Court in *Mosaid*, 348 F. Supp. 2d at 335, called the fourth sanction the "spoliation inference."

13

As a sanction for spoliation, Sigmapharm ultimately seeks (i) judgment; (ii) an adverse inference; or, if the Court can grant neither (iii) an evidentiary hearing before the Court takes further action in the adversary proceeding.[35]

Plaintiffs argue that Sigmapharm's Motion is untimely and could be denied on that basis alone.[36] *Larios v. Lunardi*, 442 F. Supp. 3d 1299, 1302-1306 (E.D. Calif. 2020), *aff'd*, 856 F. App'x 704 (9th Cir. 2021) (observing that parties should raise spoliation claims "as soon as reasonably possible after [uncovering] the facts that underlie the motion" and denying spoliation motion filed after close of discovery and nine (9) months after discovering the alleged spoliation) (internal citations omitted). Plaintiffs cite a sequence of cases in which Courts denied spoliation motions within weeks (or even a few months) of trial as "simply too late." *Weber Mfrg. Techs., Inc. v. Plasan Carbon Composites, Inc.*, 2016 WL 8114507, at *4 (E.D. Mich. July 26, 2016) (Court denied spoliation motion filed over a year after discovery closed and within three (3) months of trial); *TFG-North Carolina, L.P. v. Performance Fibers, Inc.*, 2011 WL 13238434, at *3 (D. Utah Jan. 10, 2011) (Court denied spoliation motion filed after due date for dispositive motions, after final pretrial conference and three weeks before trial). In response, Sigmapharm argues that it was not in a position to file the Motion earlier because of Plaintiffs' continuing production of documents after discovery deadlines had passed. The Court will not deny the Motion on this ground alone, but finds that this is another area that involves disputed and mixed questions of fact and law that cannot be resolved on the current record. However, as part of its proofs, Sigmapharm will have to show that it did not, in fact, wait too long in bringing this Motion.

In this case, and as noted above, there is significant, if not complete, overlap between Sigmapharm's spoliation claims and its affirmative claims that Plaintiffs breached the Audit

---

[35] Sigmapharm Br., at 33-35, Dkt. No. 133.
[36] Pls.' Br. ¶ 44, Dkt. No. 134.

14

Case 19-02053-VFP    Doc 153    Filed 11/22/22    Entered 11/22/22 18:01:37    Desc Main
Document    Page 15 of 16

Requirements of the Agreement, as well as Plaintiffs' defenses to those claims. Further, to find by clear and convincing evidence that Plaintiffs acted in bad faith and/or with a reckless disregard for their obligations to preserve documents and other evidence, the Court will require testimony and/or other evidence that would satisfy that heavy burden, particularly because of the overlap between factual and legal issues underlying the merits of this case and Sigmapharm's spoliation claims (as was the case with Sigmapharm's motions to exclude the audit packages and certain documents created post-litigation by Plaintiffs). The need for that testimony and evidence to determine these issues is heightened in this case by the significant sanctions Sigmapharm asks this Court to impose -- ranging from outright dismissal of Plaintiffs' affirmative claims and judgment in favor of Sigmapharm (for $4 million) -- to adverse inferences. Relatedly, the Court would have to determine whether the alleged failure to satisfy the Audit Requirements of the Agreement could lead to more or different damages than would be allowed in a typical breach of contract case. However, given the advanced stage of these proceedings and the timing of the filing of this Motion, what this Court will not do is to delay trial of this case pending resolution of this Motion, especially considering the substantive and substantial overlap between the issues on this Motion and the merits of the entire case, as noted above.

In sum, the Court will deny Sigmapharm's Motion without prejudice and subject to an evidentiary hearing to be combined with the trial for the reasons previously stated above and in the Court's related recent decisions that similarly denied without prejudice Sigmapharm's *in limine* motions seeking to exclude evidence of documents created after the start of this litigation and the audit packages.

15

## V. CONCLUSION

For all the foregoing reasons, the Court will deny without prejudice Sigmapharm's Motion for Sanctions for Spoliation of Evidence, pending the results of an evidentiary hearing that will be combined with the trial of this Adversary Proceeding. All rights and objections of the parties with respect to the matters at issue on this Motion are preserved.

A conforming Order is being entered contemporaneously with this Opinion.

Date:  November 22, 2022

*Vincent F. Papalia*
VINCENT F. PAPALIA
United States Bankruptcy Judge